UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| PLAINTIFF JUSTINE L., on Behalf of Herself and All Others Similarly Situated, | ) ) ) | **FILED: MARCH 13, 2009**<br>Case No.:     09CV1588 |
|  | ) | JUDGE HIBBLER |
|  | ) | <u>CLASS ACTION</u>    MAGISTRATE JUDGE VALDEZ |
| Plaintiff, | ) ) | COMPLAINT     CH |
| vs. | ) |  |
| HEALTH CARE SERVICE CORPORATION, | ) ) |  |
|  | ) | <u>Demand for Jury Trial</u> |
| Defendant. | ) ) ) ) ) |  |

Plaintiff Justine L., by and through her undersigned attorneys, based on her individual experiences and the investigation of counsel, alleges on behalf of herself and on behalf of the proposed plaintiff Class as defined herein against Health Care Service Corporation as follows:

## <u>SUMMARY OF THE CASE</u>

1.     Plaintiff is and at all relevant times has been a member of a group health plan insured and administered by BlueCross BlueShield of Texas, which is a division of Health Care Service Corporation ("HCSC").

2.     Plaintiff received reduced health insurance benefits as a result of HCSC breaching its obligations to her. Specifically, HCSC systematically underpaid Plaintiff and other HCSC health plan members in commercial health plans ("HCSC members") for out-of-network medical, surgical, dental and other services (including, but not limited to, anesthesia, lab work, durable medical equipment, pharmaceuticals, chiropractic and acupuncture, therapy and other necessary care).

1

3.     Plaintiff states claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff's class claims are further defined herein.

4.     Defendant is America's fourth largest health insurer. (http://www.hcsc.com/about-hcsc/about-hcsc.html (last viewed February 4, 2009).) Defendant insures and administers commercial health benefits, including those of Plaintiff, in Illinois, Texas, New Mexico and Oklahoma. HCSC is an ERISA fiduciary as to all of its insured members because it has discretionary authority to decide claims for benefits and, in fact, does so, and thereby owed fiduciary duties to Plaintiff and members of the Class at all relevant times.

5.     Plaintiff has been under-reimbursed by HCSC for services provided to her by an out-of-network health care provider. The ERISA Class that Plaintiff seeks to represent includes HCSC members who have received reimbursements that are less than the amount HCSC was contractually obligated to pay for out-of-network services. Although Plaintiff is and was entitled by her contract with HCSC to choose out-of-network providers for health care services, HCSC discouraged the use of out-of-network providers by, among other things, improperly lowering out-of-network reimbursements and thereby increasing unpaid amounts for which Plaintiff and other HCSC members are financially responsible.

6.     HCSC permits its members to receive health care services either from providers who have contracted with HCSC to provide services at discounted rates ("in-network" providers) or to use non-contracted ("out-of-network") providers. For some plans, such as Point of Service plans ("POS") or Preferred Provider Organization plans ("PPO"), HCSC members have an express right to use out-of-network providers at any time. For other plans, including Health Maintenance Organization ("HMO") plans, HCSC members can use out-of-network providers in emergencies, when they are out of the area or when no in-network provider is qualified or

available to perform the necessary service. When HCSC members receive out-of-network services, HCSC reimburses the out-of-network providers based on the lesser of the billed charge or the usual, customary and reasonable ("UCR") amount for that service.

7.      HCSC often refers to UCR as the "allowed charge." HCSC states in communications with HCSC members that its members are financially responsible for any difference between UCR (the so-called "allowed charge") and the provider's actual (billed) charge for out-of-network services.

8.      HCSC's Evidences of Coverage state that the HCSC Member is financially responsible for any part of a charge of this sort above the UCR amount determined by HCSC. How HCSC determines UCR is thus a critical component of each member's health benefits.

9.      Through this action, Plaintiff challenges HCSC's systematic and improper diminution of its members' out-of-network reimbursements and its breaches of its various obligations under ERISA.

10.     HCSC improperly reduces its members' out-of-network reimbursements by using databases that are owned and operated by a third party, Ingenix, Inc. ("Ingenix"). Ingenix is owned by America's largest health insurance company, UnitedHealth Group. These databases are known as the Prevailing Healthcare Charges System ("PHCS") and Medical Data Research ("MDR") (collectively, "Ingenix databases"). These databases are fundamentally flawed and do not accurately reflect actual prevailing charges for health care services. Nonetheless, HCSC uses these databases as a reimbursement rate-setting tool to the detriment of its members.

11.     HCSC has breached its obligations under ERISA by using the Ingenix databases to make UCR determinations. HCSC uses the Ingenix databases to define UCR and thus determine reimbursement rates on out-of-network health care claims even though the databases

are inherently flawed and invalid for UCR and systematically skew UCR amounts downward, causing financial losses to Plaintiff and others like her. The flaws in the Ingenix data are alleged with particularity below.

12.     "Adverse benefit determination" is an ERISA term of art that is used when an insurance payor such as HCSC makes a decision to deny, reduce, terminate or not pay for all or part of a health benefit. An adverse benefit determination acts as an exclusion from coverage. When HCSC determines whether or not to pay for out-of-network medical services, it must do so consistent with its fiduciary duties under ERISA, which include adherence to the terms of the plan, that is the insurance contracts with its members, and acting solely in the interest of its members.

13.     As shown here, HCSC's out-of-network adverse benefit determinations to Plaintiff and the Class violated HCSC's obligations under ERISA. Plaintiff and the Class seek payment of unpaid amounts caused by HCSC's out-of-network adverse benefit determinations for the three years preceding the date of complaint and prospectively, together with interest dating from the date of the original out-of-network adverse benefit determinations at issue and other appropriate equitable relief to remedy HCSC's breach of its health care contracts and violation of its fiduciary duties under ERISA, including injunctive relief requiring HCSC to discontinue the use of Ingenix databases.

## JURISDICTION AND VENUE

14.     ERISA governs the rights and duties of insurance companies and HCSC members of employer sponsored health care plans. 29 U.S.C. § 502, 29 U.S.C. § 1132. This Court has jurisdiction under 29 U.S.C. § 502(e) and 29 U.S.C. § 1132(e).

15.     Venue is appropriate here for Plaintiff's ERISA claims under 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) because (i) HCSC resides, is found, has an agent, and transacts business in this district and (ii) HCSC conducts a substantial amount of business in this district and insures and administers group health here. HCSC is "found" in this District because it maintains its headquarters at 300 East Randolph Street, Chicago, Illinois 60601. HCSC administers group health plans in this District because, on information and belief, HCSC maintains the data centers and operating systems used by its BlueCross BlueShield Divisions (Illinois, New Mexico, Oklahoma, and Texas) to process and decide claims for benefits in this District.

## PARTIES

16.     **Plaintiff Justine L.** Plaintiff formerly worked for a law firm in Texas. Incident to her employment there, Plaintiff received group health insurance from HCSC via its division BlueCross BlueShield of Texas. Her group health coverage is subject to ERISA.

17.     **Defendant Health Care Services Corp.** HCSC is a Mutual Legal Reserve Company headquartered in Chicago, IL. It has 59 offices in Illinois, Texas, New Mexico, Oklahoma, Ohio and Colorado, including its headquarters office in this District. HCSC has approximately 12.4 million members or insureds. It offers health insurance products through its divisions BlueCross BlueShield of Illinois, BlueCross BlueShield of New Mexico, BlueCross BlueShield of Oklahoma, and BlueCross BlueShield of Texas. According to its financial statement, HCSC underwrites and administers health and dental insurance business in Illinois, New Mexico, Oklahoma, and Texas and does business in those states, respectively, as BlueCross BlueShield of Illinois, BlueCross BlueShield of New Mexico, BlueCross BlueShield of Oklahoma, and BlueCross BlueShield of Texas. These BlueCross BlueShield Divisions are

consolidated within HCSC, that is, they are wholly owned by HCSC and not separately incorporated.

## GROUNDS FOR RELIEF

### Plaintiff's Group Health Plan

18.     Plaintiff's group health plan permits Plaintiff to choose out-of-network doctors for health care.

19.     Plaintiff sought and received out-of-network medical services. Over a period of several months, she received various diagnostic tests and therapies to treat her cancer. Most of these services were out-of-network.

20.     On information and belief, HCSC has made at least one out-of-network/UCR benefit determination adversely to Plaintiff through use of the Ingenix databases. Plaintiff has incurred tangible financial losses due to HCSC's Ingenix-related adverse benefit determinations.

21.     Plaintiff appealed this adverse benefit determination to HCSC in accordance with its contractually established appeal procedures. HCSC denied Plaintiff's appeal of this claim underpayment. Plaintiff has thus exhausted her available administrative remedies concerning HCSC's adverse benefit determinations.

22.     Plaintiff, through counsel, sought all records pertaining to her benefit determination. Plaintiff requested all documents, information, and materials submitted, considered, or generated in the course of investigating, evaluating, and deciding her claim. Further, her counsel traveled to Richardson, Texas, where, Plaintiff's plan documents state that Plaintiff and/or her legal representatives may review her claims file. On January 23, 2009, Plaintiff's counsel appeared in Richardson and there informed employees of HCSC that he intended to review her claims file pursuant to Plaintiff's plan documents. There Plaintiff's

counsel was informed that Plaintiff's records were not at the location designated in the plan document, but, instead, were located hundreds of miles away. Plaintiff's counsel then requested from HCSC a copy of Plaintiff's claims file. As of the date of filing this complaint, HCSC has not provided these records or any other documents, information, and materials submitted, considered, or generated in the course of investigating, evaluating, and deciding Plaintiff's claim.

**<u>HCSC's Breach of Contract and Violation of Its ERISA Fiduciary Obligations</u>**

23.     Upon enrollment in HCSC's health plans, Plaintiff and the Class received and entered into a contract called an Evidence of Coverage. The Evidence of Coverage sets forth the benefits Plaintiff and members of the Class are entitled to receive from HCSC.

24.     The Evidence of Coverage provides that HCSC Members are entitled to UCR benefits when they use out of network providers.

25.     For the reasons set forth here, HCSC has breached the Evidence of Coverage in adjudicating benefit claims made by Plaintiff and Class Members.

26.     HCSC is a fiduciary for Plaintiff and the Class because it decides claims for benefits. *Ruiz v. Continental Casualty Co.*, 400 F.3d 986 (7th Cir. 2004).

27.     HCSC is obligated to abide by the specific contractual provisions of group health plans, including Plaintiff's group health plan, under ERISA.

28.     HCSC may not apply any out-of-network adverse benefit determinations if they are not authorized or disclosed in a HCSC Member's Evidence of Coverage.

29.     As an ERISA fiduciary, HCSC is obligated to tell HCSC Members about the legal requirements affecting their benefits entitlements; HCSC systematically fails to do this.

30.     As an ERISA fiduciary, HCSC is obligated to fully inform HCSC Members of material facts related to their benefits and must comply with federal regulations governing claims procedures both as to initial claim denials and appeals.

31.     HCSC's Evidences of Coverage fail to explain sufficiently, if at all, the basis for its out-of-network adverse benefit determinations and fail to cite the plan provisions HCSC relies upon in making these adverse decisions.

32.     HCSC auto-adjudicates and makes adverse benefit determinations for out-of-network claims based on the Ingenix databases either without knowing the data or the methodology used by Ingenix to describe supposedly prevailing health care charges or, alternatively, with the knowledge that Ingenix's data is flawed and/or that its methodology for describing supposedly prevailing health care charges is flawed.

33.     HCSC fails to provide UCR data when requested, in violation of federal law.

34.     HCSC fails to advise HCSC members about the disclaimer Ingenix applies to its database, which by its terms prohibits the direct use of the Ingenix databases as a payor's UCR standard, as explained below. HCSC auto-adjudicates out-of-network claims (and auto-adjudicated Plaintiff's out-of-network claim) using the Ingenix databases in violation of this prohibition. Furthermore, HCSC misrepresents the nature, accuracy, function and source of the Ingenix data to its members.

35.     HCSC failed to provide a "full and fair review" of claims determinations to Plaintiff and other HCSC members, and HCSC's appeals process therefore violates federal employee benefits law.

36.     HCSC systematically under-pays claims for benefits using Ingenix data so that it can increase its profits.

37.     Plaintiff challenges HCSC's application of rules and policies in making out-of-network adverse benefit determinations that are not authorized by Evidences of Coverage, and

challenges Defendant's violation of its fiduciary duties and its routine failure to comply with ERISA.

## UCR AND THE INGENIX DATABASES

38.     HCSC uses the Ingenix databases to make UCR determinations. HCSC obtains Ingenix data from Ingenix and loads the data onto its internal claims-processing platforms. HCSC's claims processors access that data and resolve claims automatically in a process called auto-adjudication.

39.     Ingenix produces two cycles of Ingenix data a year, which include medical, surgical, anesthesia, and dental data and Health Care Financing Administration data concerning common procedure coding system services ("HCPCS").

40.     The Ingenix databases are purportedly designed to collect and report actual charge data by health care providers for out-of-network health care services from which UCR amounts can be determined. For some services, the Ingenix databases feature "derived data." Derived data uses relative values and averages charges for a number of procedures in the same "bodily area" as the procedure for which a derived amount is calculated.

41.     The Ingenix databases are based on charge data contributed to Ingenix by health plans, like United Healthcare (the parent company of Ingenix) and other insurance payors (which also use the final published data to price out-of-network claims as UCR).

42.     Ingenix extensively edits the charge data contributed by these data contributors, skewing the data downward to make it appear as if the amounts health care providers actually charge patients for health care services are much lower than they actually are. Further, data contributors, that is, health insurers like HCSC, extensively pre-edit the charge data prior to sending the data to Ingenix and contribute less-than-complete data to Ingenix, causing further downward skewing of the data to the detriment of health plan members like Plaintiff who obtain

out-of-network health services covered by Ingenix-using health plans like HCSC. HCSC knew or should have known of these defects in the Ingenix data.

43. Whenever HCSC uses the Ingenix databases as the method to determine UCR, HCSC relies on the Ingenix data and gives no consideration to the increased severity or complexity of a specific case in determining reimbursement for the health care services in question. HCSC systematically failed to disclose this critical information to Plaintiff and other HCSC Members and to health care providers and regulators.

44. Ingenix informed its data users (such as HCSC) that it does not endorse, approve or recommend the use of Ingenix data for UCR. Ingenix data is produced with the following disclaimer:

> The Ingenix data, whether charge data or conversion factor data, are provided to subscribers for informational purposes only. Ingenix, Inc. disclaims any endorsements, approval, or recommendation or particular uses of the data. There is neither a stated nor an implied 'reasonable and customary' charge (either actual or derived). . . . Any interpretation and/or use of the data by the subscriber is solely) and exclusively at the discretion of the subscriber.

Ingenix also informed data users (including HCSC) that they cannot "represent" the Ingenix data **other than** as described in the disclaimer.

45. HCSC was aware of this disclaimer but failed to advise its HCSC Members of the disclaimer and both used and represented the Ingenix data inconsistently with the disclaimer.

46. HCSC applies the Ingenix data by auto-adjudication.

47. By systematically making UCR determinations without valid data to justify reimbursing Plaintiff and others amounts for out-of-network health services that are less than the actual amounts billed by out-of-network health care providers, HCSC has violated its obligation to comply with Evidences of Coverage upon which Plaintiffs and other HCSC Members are entitled to rely.

48.     The language used to define UCR may differ somewhat across HCSC's various Evidences of Coverage. While the wording used to define UCR may vary, though, the meaning as interpreted and applied by HCSC here, is the same.

49.     Ingenix was aware of the pre-editing and other improper practices engaged in by its data contributor health plans. Nonetheless, Ingenix failed to audit its data contributor health plans or take other steps to ensure completeness and accuracy of their data. In addition, Ingenix extensively edited this data. The aforementioned acts and omissions rendered the Ingenix data flawed and invalid.

50.     First, during the Class Period, starting three years prior to the filing of the complaint to the present, HCSC improperly instructed or allowed its claims personnel to use Ingenix data from a different geographic area if there was no Ingenix provider charge data available for the geographic area where a particular service was rendered to a HCSC member.

51.     Next, during the Class Period, HCSC improperly caused or allowed outdated versions of the Ingenix databases to be used for UCR determinations for HCSC members.

52.     During the Class Period, HCSC also improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that Ingenix had manipulated its databases by deleting from its data sets valid "high" charges by health care providers and deleting significantly more "high" charges than "low" charges.

53.     During the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that Ingenix had deleted from its databases provider charges that with so-called health care claim coding "modifiers," which indicate procedures or services with special complications. Health care provider charges featuring such modifiers are usually higher than provider charges without modifiers.

54.     During the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that Ingenix pooled data for its databases from dissimilar providers (such as nurses, physician assistants and physicians).

55.     During the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that Ingenix failed to audit the data it received from data contributor health plans to ensure that the health plans have submitted all appropriate data and that they had not improperly reported to Ingenix for use in its databases negotiated or discounted rates that providers charged for health care services rather than charges actually billed by providers.

56.     During the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that some Ingenix data contributors deleted "high" provider charges for health care services from the data they submitted to Ingenix for use in the Ingenix databases.

57.     During the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that Ingenix used a deficient methodology to "derive" additional provider charges in the databases beyond the charges actually reported by Ingenix data contributor health plans to Ingenix. Ingenix's use of defective data to "derive" such additional provider charges caused the resulting rates to be defective and improper for use in setting reimbursements for health care services.

58.     In sum, during the Class Period, HCSC improperly used the Ingenix databases to set reimbursement rates for out-of-network claims knowing that these databases were flawed in the aforementioned ways – and thus that these databases, when used as a reimbursement tool by

HCSC, predictably and improperly would result in adverse benefit determinations damaging Plaintiff and other HCSC members.

59.     When deciding a claim for benefits for out-of-network benefits, HCSC operates under a conflict of interest for several reasons. First, every dollar paid to a claimant is one less dollar for HCSC, so HCSC systematically and without justification reduced the value of out-of-network benefits through the use of Ingenix products. Second, HCSC's core product is its network of healthcare providers, which network HCSC attempts to preserve by discouraging use of out-of-network providers through systematically and without justification reducing the value of out-of-network benefits when it uses Ingenix to arbitrarily diminish the value of such benefits.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on her own behalf and on behalf of a class defined as:

> All persons in the United States who are, or were members in any employer welfare plan insured and administered by HCSC and subject to ERISA who received medical services or supplies from an out-of-network provider and received reimbursement that was less than the provider's billed charge.

61.     Plaintiff brings ERISA claims against HCSC on her own behalf and on behalf of the Class to recover benefits due Class members under the plan, to enforce and clarify their rights under ERISA § 502(a)(l)(B), 29 U.S.C. §1132(a)(l)(B), and to remedy HCSC's failure to provide a "full and fair review" of the decisions denying claims under ERISA §503, 29 U.S.C. §1133. Further, the Class alleges that HCSC is a fiduciary that has violated its fiduciary duty of loyalty and care under ERISA §§ 404(a)(1)(B) and (D), by relying, among other things, on Ingenix databases that are invalid for the purpose of determining UCR reimbursement, by making out-of-network adverse benefit determinations that systematically reduced

reimbursement without any supporting disclosure or contractual authority and by failing to provide required data and other information to HCSC members.

62.     HCSC has violated its fiduciary duties of care and loyalty to its HCSC members by using undisclosed reimbursement rules that are unauthorized by a HCSC member's Evidence of Coverage. HCSC made misstatements to HCSC members that were intended to, and/or did in practice, discourage HCSC members from understanding the claims adjudication basis used in HCSC's out-of-network adverse benefit determinations.

63.     HCSC acted and continues to act as an adversary to its HCSC members, in violation of its fiduciary obligations to them.

64.     HCSC discouraged claims appeals by its members by providing insufficient information about its out-of-network adverse benefit determinations and by failing meaningfully to tell HCSC members about their appeal rights.

65.     The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of thousands of employees and their dependents who are participants and HCSC members in group health plans insured, offered or administered by HCSC. The precise number of members in the Class is within HCSC's sole custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class.

66.     Common questions of law and fact include:

• Whether HCSC is a fiduciary;

• Whether HCSC calculated Class members' out-of-network benefits accurately when it used Ingenix;

• Whether the use of Ingenix varied in HCSC's administration of its four BlueCross BlueShield divisions;

• The standard of review applicable to HCSC's adverse benefit determinations;

- Whether HCSC had a conflict of interest when deciding claims for out-of-network benefits;

- Availability of injunctive relief;

- Availability of monetary equitable relief such as disgorgement.

67.     The named Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, HCSC has breached its statutory and contractual obligations to Plaintiff and the Class through and by a uniform pattern or practice as described above.

68.     The named Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action and ERISA litigation and has no interests antagonistic to or in conflict with those of the Class. For these reasons, the named Plaintiff is an adequate class representative.

69.     The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for HCSC as to the Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Given the uniform policies and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

71.     Common fact and legal issues exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including those class claims, issues and defenses listed above.

## CLAIMS FOR RELIEF

## COUNT I

### CLAIM FOR BENEFITS
### UNDER ERISA §502(a)(1)(B)

72.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth therein.

73.     HCSC is liable for a breach of its obligations to pay HCSC members that are insured by, funded by or administered by HCSC pursuant to the terms of their group health plans. HCSC breached the HCSC members' contracts of insurance by using flawed and invalid Ingenix databases to calculate UCR and is liable to HCSC members whenever HCSC (or its third party vendors) determined UCR based on such data.

74.     Each and every time HCSC calculated UCR using Ingenix data that was also outdated, HCSC violated the contractual rights of members of its health plans. In addition, the use of outdated data by HCSC violates ERISA.

75.     Plaintiff is owed interest back to the date her claim was originally submitted to HCSC for out-of-network benefit determination.

76.     Plaintiff and the Class are entitled to benefits wrongfully withheld and/or restitution from HCSC, as well as declaratory and injunctive relief related to enforcement of the terms of Plaintiff's health plan, and to clarify future benefits. HCSC is liable to Plaintiff and the Class for unpaid benefits, interest, attorneys' fees, and such other penalties as this Court deems just, under ERISA §502(a)(l)(B), 29 U.S.C. §1132(a)(l)(B). In addition, Plaintiff and the Class

seek costs, prejudgment interest and other appropriate equitable relief, including the issuance of appropriate declaratory and injunctive relief against HCSC.

## COUNT II

### FAILURE TO PROVIDE FULL & FAIR REVIEW
### AS REQUIRED BY ERISA

77.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

78.     HCSC functions as the "plan administrator" within the meaning of ERISA for Plaintiff and the Class. Plaintiff and the Class are therefore entitled to receive a "full and fair review" of all claims denied by HCSC and are entitled to assert claims under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) for a failure to comply with these requirements.

79.     Although HCSC was obligated to do so, HCSC failed to provide a "full and fair review" of denied claims pursuant to ERISA §503, 29 U.S.C. §1133 (and the regulations promulgated thereunder) for Plaintiff and the Class by making out-of-network adverse benefit determinations that are inconsistent with the terms of Plaintiff's Evidence(s) of Coverage, by failing to disclose the "specific reasons" for out-of-network adverse benefit determinations, as well as by failing to disclose data and/or the methodology it relied on in making out-of-network adverse benefit determinations. HCSC misrepresented appeal-related facts to HCSC members in appeals, thereby violating federal law.

80.     In discouraging appeals, HCSC further failed to comply with federal law.

81.     HCSC members' appeals are deemed exhausted by virtue of Plaintiff's appeal of her out-of-network claim and by virtue of the invalid Ingenix data used by HCSC and HCSC's failure to provide reasonable claims procedures.

82.     Plaintiff and the Class have been harmed by HCSC's failure to provide a "full and fair review" of appeals submitted by Plaintiff and the Class under ERISA §503, 29 U.S.C. §1133, and by HCSC's failure to disclose information relevant to HCSC members' benefits in violation of ERISA. Plaintiff and the Class are entitled to statutory penalties, and injunctive and declaratory relief to remedy HCSC's continuing violation of these provisions.

## COUNT III

### FAILURE TO PROVIDE AN ACCURATE
### EVIDENCE OF COVERAGE AND TO MAKE REQUIRED DISCLOSURES

83.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

84.     HCSC's disclosure obligations under ERISA include furnishing accurate materials summarizing its group health plans under ERISA § 102, U.S.C. §1022, and supplying additional information to HCSC members, such as Plaintiffs and the Class, under ERISA §104(b)(4). 29 U.S.C. § 1024(b)(4).

85.     HCSC's failure to supply this information is redressable under ERISA §502(c), 29 U.S.C. §1132(c).

86.     HCSC's failure to disclose material information about its out-of-network adverse benefit determinations, its use of flawed and invalid Ingenix data, and its material omissions in reimbursement policy violate ERISA and its implementing regulations, which obligate fiduciaries such as HCSC to provide such information to HCSC members.

87.     Plaintiff and the Class have been proximately harmed by HCSC's failure to comply with ERISA §102, 29 U.S.C. §1022 and with ERISA §104(b)(4), 29 U.S.C. §1024(b)(4), in an amount to be determined at trial, and are also entitled to injunctive and declaratory relief to remedy HCSC's continuing violation of these provisions.

## COUNT IV

**VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE**

88.     The allegations contained in this complaint are realleged and incorporated by reference as if fully set forth herein.

89.     HCSC acted as a fiduciary to Plaintiff and the Class in connection with HCSC members' group health plans, as such term is understood under ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

90.     As a fiduciary of group health plans under ERISA, HCSC must act for the exclusive purpose of providing benefits (duty of loyalty), with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character (duty of prudence), and act in accordance with the documents and instruments governing the plan (duty to follow the terms of the plan). ERISA §404(a)(1)(A)(i), (B) and (D), 29 U.S.C. §1104(a)(1)(A)(i), (B) and (D). In failing to act prudently, and in failing to act in accordance with the documents and instruments governing the plan, HCSC violated its fiduciary duty of care.

91.     HCSC violated its fiduciary duty of loyalty by making out-of-network adverse benefit determinations that were unauthorized by Evidences of Coverage and other group health plan materials and that benefited HCSC at the expense of HCSC members, by failing to inform HCSC members of flaws in the Ingenix databases that make their use inappropriate to calculate UCR reimbursement and by making representations about out-of-network benefits that were untrue.

92.     HCSC's Evidences of Coverage violate federal law and breach its fiduciary duties to its plan members.

93. Plaintiff is entitled to assert a claim for relief for HCSC's violation of its fiduciary duties under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), including restitution, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in her favor against Defendant as follows:

A. Declaring that HCSC has violated its fiduciary duties including the duties of loyalty and care to Plaintiff and the Class, and awarding appropriate relief including civil penalties, restitution, interest declaratory and injunctive relief to Plaintiff and the Class, and removing HCSC as a fiduciary that has systemically breached its fiduciary obligations;

B. Declaring that HCSC has breached the terms of its Evidences of Coverage and other group health plan documents and awarding unpaid benefits to Plaintiff and the Class, as well as awarding injunctive and declaratory relief based on HCSC's use of out-of-network adverse benefit determinations undisclosed and unauthorized by Evidences of Coverage and group health plan summary documents;

C. Declaring that HCSC has breached the terms of HCSC member Evidences of Coverage and group health plan summary documents by lowering reimbursement in the undisclosed and unauthorized ways detailed herein, and awarding declaratory and injunctive relief to remedy such breaches;

D. Awarding Plaintiff and the Class the value of their improperly denied benefits, plus attorneys' fees, costs, and interest;

E. Declaring that HCSC has failed to provide a "full and fair review" to Plaintiff and the Class under ERISA §503, 29 U.S.C. §1133, and awarding compensatory, injunctive,

declaratory and other equitable relief to Plaintiff and the Class to ensure compliance with ERISA and ERISA regulations;

F.     Declaring that HCSC has violated its disclosure obligations under ERISA, including under § 04(b)(4), 29 U.S.C. §1024(b)(4) and ERISA §102, 29 U.S.C. §1022, for which Plaintiff and the Class are entitled to statutory penalties, injunctive, declaratory and other equitable relief;

G.     Preliminarily and permanently enjoining HCSC from using the Ingenix databases, or from making UCR determinations in the absence of valid and reliable data substantiating the lesser-adjudicated claims amounts;

H.     Preliminarily and permanently enjoining HCSC from using or causing others to use outdated Ingenix data in connection with payment of out-of-network benefit claims by HCSC members;

I.     Preliminarily and permanently enjoining HCSC from applying out-of-network adverse benefit determinations where the HCSC members' Evidences of Coverage and group health plan summary documents do not disclose or authorize them;

J.     Preliminarily and permanently enjoining HCSC from discouraging appeals and/or deciding appeals in a manner inconsistent with federal and state law;

K.     Preliminary and permanently enjoining HCSC from discouraging out-of-network care or placing undisclosed obstacles in the path of HCSC members seeking to access out-of-network care;

L.     Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable counsel fees, costs and expenses in amounts to be determined by the Court;

M.     Awarding interest from date of initial out-of-network adverse benefit determinations on all unpaid amounts;

N.      Awarding prejudgment interest; and

O.      Granting such other and further relief as is just and proper.

## **JURY DEMAND**

Plaintiff demands trial on all issues so triable.

DATED:  March__13,__2009


_____ /s/ Elizabeth Hoskins Dow _____


Elizabeth Hoskins Dow, #6216262
Bailey & Glasser, LLP
1003 Western Avenue
Joliet, IL 60435
(815)740-4034
Email: ldow@baileyglasser.com

Brian A. Glasser (*to be admitted pro hac vice*)
Michael L. Murphy (*to be admitted pro hac vice*)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV  25301

Gregory Y. Porter (*to be admitted pro hac vice*)
Bailey & Glasser LLP
601 Pennsylvania Ave., NW
Suite 900, South Bldg.
Washington, DC 20004

Todd M. Schneider (*to be admitted pro hac vice*)
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 2000
San Francisco, California  94104

Garrett W. Wotkyns (*to be admitted pro hac vice*)
Schneider Wallace Cottrell Brayton Konecky LLP
7702 E. Doubletree Ranch Road, Suite 300
Scottsdale, Arizona  85258

Edwin R. Lamberth (*to be admitted pro hac vice*)
Steven L. Nicholas (*to be admitted pro hac vice*)
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL. 36604

Andrew S. Friedman (*to be admitted pro hac vice*)
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012

Mark A. Chavez (*to be admitted pro hac vice*)
Jonathan E. Gertler (*to be admitted pro hac vice*)
Chavez & Gertler LLP
42 Miller Avenue
Mill Valley, California 94941

*Attorneys for Plaintiffs*