## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JUSTINE LEONARDO,          )
                               )
         Plaintiff,     )
                               )     Case No. 1:09-cv-01588
v.                          )
                               )     Hon. William J. Hibbler
HEALTH CARE SERVICE   )
CORPORATION,          )
                               )
         Defendant.    )
                               )

## APPENDIX OF UNREPORTED CASES CITED IN
## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
## TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**LIST OF UNREPORTED CASES CITED IN DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1. *In re Citigroup Pension Plan ERISA Litigation; This Document Relates to: All Actions,* 241 F.R.D. 172 (S.D. N.Y. 2006)

2. *George, et al. v. Kraft Foods Global, Inc., et al. v. Kraft Foods Global, Inc., et al.*, 2008 U.S. Dist. LEXIS 22126 (N.D. Ill. Mar. 20, 2008)

3. *Gittings v. Tredegar Film Products-Lake Zurich, LLC, et al.*, 2008 U.S. Dist. LEXIS 91138 (N.D. Ill. Nov. 10, 2008)

4. *Hedeen v. Aon Corporation et al.*, 2004 U.S. Dist. LEXIS 21706 (N.D. Ill. Oct. 27, 2004)

5. *Heroux v. Humana Insurance Company, et al.*, 2005 U.S. Dist. LEXIS 11712 (N.D. Ill. June 8, 2005)

6. *Jurgovan v. ITI Enterprises, et al.*, 2004 U.S. Dist. LEXIS 11489 (N.D. Ill. June 23, 2004)

7. *Kendall v. Employees' Retirement Plan of Avon Products, et al.*, 2007 U.S. Dist. LEXIS 68743 (S.D. N.Y. Sept. 14, 2007)

8. *Miceli v. Aetna Life Insurance Company, et al.*, 2006 U.S. Dist. LEXIS 8270 (N.D. Ill. Mar. 1, 2006)

9. *Moffat, et al. v. Unicare Midwest Plan Group 314541, et al.*, 2005 U.S. Dist. LEXIS 14849 (N.D. Ill. July 25, 2005)

10. *Moore, et al. v. Fox Chevrolet, Oldsmobile, Cadillac, Inc., et al.*, 2007 U.S. Dist. LEXIS 21252 (N.D. N.Y. Mar. 26, 2007)

11. *Mote v. Aetna Life Insurance Company, et al.*, 2006 U.S. Dist. LEXIS 80733 (N.D. Ill. Nov. 3, 2006)

12. *Roarty v. AFA Protective Systems, Inc., et al.*, 2008 U.S. Dist. LEXIS 75745 (E.D. N.Y. Sept. 30, 2008)

13. *Spangler, et al. v. Altec International Limited Partnership, et al.*, 1999 U.S. App. LEXIS 2114 (7th Cir. Feb. 9, 1999)

14. *Whitcher v. Meritain Health, Inc.*, 2009 U.S. Dist. LEXIS 52450 (S.D. Ill. June 22, 2009)

15. *White, et al. v. Sundstrand Corporation, et al.*, 2000 U.S. Dist. LEXIS 7273 (N.D. Ill. May 23, 2000)

# UNREPORTED CASE NO. 1

**In re CITIGROUP PENSION PLAN ERISA LITIGATION; THIS DOCUMENT RELATES TO: ALL ACTIONS**

**MASTER FILE: 05 Civ. 5296 (SAS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**241 F.R.D. 172; 2006 U.S. Dist. LEXIS 92000; 39 Employee Benefits Cas. (BNA) 2039**

**December 19, 2006, Decided**
**December 19, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion denied by In re Citigroup Pension Plan ERISA Litig., 2007 U.S. Dist. LEXIS 27004 (S.D.N.Y., Apr. 4, 2007)

**PRIOR HISTORY:** In re Citigroup Pension Plan ERISA Litig., 470 F. Supp. 2d 323, 2006 U.S. Dist. LEXIS 89565 (S.D.N.Y., 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The court previously granted summary judgment in favor of plaintiffs, current and former employees, on their claims that a cash balance pension plan violated 29 U.S.C.S. § 1054(b)(1), (b)(1)(H)(i), and (h) of the Employee Retirement Income Security Act of 1974 (ERISA) and ordered defendants, an employer and an administration committee, to reform the plan to comply with ERISA. Before the court was plaintiffs' motion for class certification.

**OVERVIEW:** The court previously held that the pension plan unlawfully applied the fractional test for monitoring compliance with accrual rates and that defendants failed to provide proper notice of plan amendments. Pursuant to Fed. R. Civ. P. 23, plaintiffs sought certification of a class consisting of all individuals who were participants in the plan at any time during the class period and their beneficiaries and estates. Defendants did not dispute that the proposed class was sufficiently numerous or that there were questions of law common to the proposed class. The court held that the typicality requirement was met because all absent members suffered the same ERISA violations. The adequacy requirement was satisfied because plaintiffs' interests were commensurate with those of the proposed class. The court concluded that the class action could be maintained under Rule 23(b)(1)(A), which addressed inconsistent dispositions, because the class members were entitled to similar forms of relief. The class action could also be maintained under Rule 23(b)(2) because even in the absence of possible monetary recovery, reasonable plan participants would bring the suit to compel reformation of the plan.

**OUTCOME:** The court granted certification of the proposed class consisting of all individuals who were participants in the plan at any time during the class period, their beneficiaries and estates, and those who were subject to the plan's cash balance formula pursuant to ERISA.

**CORE TERMS:** class certification, certification, class members, notice, injunctive relief, formula, pension plans, injunctive, monetary, accrual, declaratory relief, proposed class, typicality, pension, class action, monetary relief, citation omitted, beneficiary, fractional, adequacy, prayer, summary judgment, quotation marks, declaratory, equitable, statutory violations, commonality, declaration, retirement, purported

**LexisNexis(R) Headnotes**

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Accrual***
[HN1]Section 204(b)(1) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1054(b)(1), requires pension plans to adopt one of three alternative accrual rules designed to prevent plans from backloading benefits.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Participation***
[HN2]Section 3(7) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1002(7), defines a benefit plan "participant" as an employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > General Overview***
[HN3]Congress intended the statutory scheme in the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., in conjunction with state law, to afford broad protection.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Standing***
[HN4]Plaintiffs have standing to sue if they are within the zone of interests articulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits***
[HN5]Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1132(a)(1)(B), provides that a participant or beneficiary of an ERISA plan may bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

***Civil Procedure > Class Actions > Certification***
***Civil Procedure > Class Actions > Prerequisites > General Overview***
***Evidence > Procedural Considerations > Burdens of Proof > General Overview***
[HN6]Fed. R. Civ. P. 23 governs class certification. To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a). Plaintiffs bear the burden of demonstrating that the class meets these requirements -- commonly referred to as numerosity, commonality, typicality, and adequacy.

***Civil Procedure > Class Actions > Prerequisites > Numerosity***
[HN7]The numerosity requirement mandates that a class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

***Civil Procedure > Class Actions > Prerequisites > Commonality***
[HN8]Commonality requires a showing that common issues of fact or law affect all class members. Fed. R. Civ. P. 23(a)(2).

***Civil Procedure > Class Actions > Prerequisites > Typicality***
[HN9]Typicality exists where the named plaintiffs' claims and the absent class members' claims arise from the same course of events, and where each class member makes similar legal arguments to prove a defendant's liability.

***Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation***
[HN10]The adequacy requirement demands that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

***Civil Procedure > Class Actions > Prerequisites > General Overview***
[HN11]Although Fed. R. Civ. P. 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts. This implied requirement is often referred to as ascertainability.

***Civil Procedure > Class Actions > Prerequisites > Maintainability***
[HN12]In addition to showing that a proposed class satisfies the four prerequisites of Fed. R. Civ. P. 23(a), plaintiffs must also show that the class is maintainable under Rule 23(b). A class satisfies this requirement if it fits into one of the three alternative categories delineated by Rule 23(b)(1), (2), and (3). A class may be certified under more than one category.

***Civil Procedure > Class Actions > Certification***

[HN13]Fed. R. Civ. P. 23(b)(1)(A) permits certification where multiple suits could create a possibility of incompatible adjudications or establish incompatible standards to govern a defendant's conduct. Rule 23(b)(1)(B) is more specialized; it covers situations where individual actions would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Injunctions > General Overview*
[HN14]Under Fed. R. Civ. P. 23(b)(2), class litigation is appropriate where the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. In this context, declaratory relief corresponds to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Damages > Monetary Damages*
*Civil Procedure > Remedies > Injunctions > General Overview*
[HN15]Although Fed. R. Civ. P. 23(b)(2) was designed with an eye towards equitable relief, certification of a class seeking both equitable and monetary relief may be appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case. In assessing whether Rule 23(b)(2) applies, a district court's first inquiry is whether even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought. The court's next inquiry is whether the injunctive or declaratory relief would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

*Civil Procedure > Class Actions > Certification*
[HN16]District courts may certify classes only after assessing all the relevant evidence admitted at the class certification stage, and finding that each of the Fed. R. Civ. P. 23 requirements has been met. Furthermore, such

determinations can be made only if the court resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met. A court's obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue -- even where the two are identical. In making this determination, courts should refrain from considering aspects of the merits unrelated to a Rule 23 requirement.

*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN17]Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims.

*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
[HN18]The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. Courts are required to ask whether a plaintiff's interests are antagonistic to the interest of other members of the class.

*Civil Procedure > Class Actions > General Overview*
*Civil Procedure > Pretrial Matters > Consolidation of Actions*
[HN19]Unlike the class action device, consolidation does not merge suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.

*Civil Procedure > Class Actions > Certification*
[HN20]There is no real litigation significance to whether a court certifies a class under Fed. R. Civ. P. 23(b)(1)(A) or (b)(1)(B) or both. Certification under either of these two provisions will not trigger any special class provisions in other parts of Rule 23 relating to notice or right of exclusion, and each subdivision will permit class suits seeking injunctive relief or damages or both. Court certification of a class under either Rule 23(b)(1)(A) or (b)(1)(B) makes no difference.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Declaratory Relief*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN21]Where a pension plan is found unlawful under the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., a participant's claim to recover benefits is neither restitutionary nor equitable, but it is declaratory.

**COUNSEL:** [**1]  For Plaintiffs: Edgar Pauk, Esq., New York, New York; Brad N. Friedman, Esq., Milberg Weiss Bershad & Schulman, LLP, New York, New York; William D. Frumkin, Esq., Sapir & Frumkin LLP, White Plains, New York; Richard S. Schiffrin, Esq., Joseph H. Meltzer, Esq., Edward W. Ciolko, Esq., Schiffrin & Barroway, LLP, Radnor, Pennsylvania.

For Defendants: Myron Rumeld, Esq., Proskauer Rose LLP, New York, New York.

**JUDGES:** Shira A. Scheindlin, U.S.D.J.

**OPINION BY:** Shira A. Scheindlin

**OPINION**
[*174]

**OPINION AND ORDER**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I. INTRODUCTION**

Michael Lonecke, Raymond Duffy, Anne Nelson, Robert S. Fash and Craig A. Harris, on behalf of themselves and a class of similarly situated individuals ("plaintiffs"), filed consolidated actions against Citigroup Inc., and its Plans Administration Committee ("defendants"), alleging that the Citibuilder Cash Balance Plan ("Plan") violates the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. This ruling assumes familiarity with the Court's previous ruling on the parties' cross-motions for summary judgment, which describes the ways in which the Plan's [**2] design and execution violate ERISA. [1] By Opinion and Order, the Court granted summary judgment in plaintiffs' favor on Counts I, III, V and VII of their Consolidated Class Action Amended Complaint ("Complaint"), [2] denied defendants' motion for summary

judgment, and directed defendants to reform the Plan to comply with ERISA.

1   *See In re Citigroup Pension Plan ERISA Litig.*, No. 05 Civ. 5296, 470 F. Supp. 2d 323, 2006 U.S. Dist. LEXIS 89565, 2006 WL 3613691 (S.D.N.Y. Dec. 12, 2006) (*"Citigroup I"*).
2   Count I of the Complaint alleges that the Plan is impermissibly backloaded in violation of ERISA. *See* ERISA § 204(b)(1); 29 U.S.C. § 1054(b)(1). Count III alleges that the Plan unlawfully applies the fractional test for monitoring compliance with statutorily mandated accrual rates. *See id.* Count V alleges that the Plan is age-discriminatory in violation of ERISA. *See* ERISA § 204(b)(1)(H)(i); 29 U.S.C. § 1054(b)(1)(H)(i). Count VII alleges that defendants failed to provide Plan participants proper notice of amendments made to the Citigroup Pension Plan in 2000 and 2002, as required by section 204(h) of ERISA, 29 U.S.C. § 1054(h).

[**3]  [*175] In this Opinion, I address plaintiffs' motion for class certification, filed August 25, 2006. For the reasons stated, class certification is granted.

**II. BACKGROUND**

**A. Citigroup's Cash Balance Plan**
[3]

3   For a thorough discussion of how cash balance plans work, see Dan M. McGill, et al., *Fundamentals of Private Pensions* 262-64 (8th ed. 2005) ("McGill").

Both parties have agreed to all material facts. [4] The named plaintiffs are present or former employees of either Smith Barney or Citibank, N.A., both of which are divisions of Citigroup Inc. ("Citigroup"). [5] They all accrued benefits under the Plan during all or part of the period since January 1, 2000 ("class period"). [6] Two named plaintiffs were vested participants at the time their employment terminated. [7]

4   *See* Joint Stipulations ("Joint Stips.").
5   *See id.* PP 1-6.
6   *See id.* P 7. The cash balance plan at issue here is one of three pension plans presently comprising the Citigroup Pension Plan. *See id.* P 8.
[**4]
7   *See id.* P 7.

**1. January 1, 2000 Cash Balance Amendment**

In a meeting on October 19, 1999, Citigroup's Board of Directors ("the Board") voted to incorporate a "cash balance design" into the Citigroup Pension Plan. [8] At this meeting, the Board did not discuss specific provisions of the newly adopted cash balance amendment ("CBA"), such as how it would calculate benefits. In fact, provisions of the amendment setting forth the Plan's formula in detail were not produced in an executed Citibuilder Retirement Plan document until May 27, 2001. [9]

8 *Id.* P 16. Minutes from the Board meeting state that the Board adopted a cash balance formula "on substantially the terms as previously presented to the Board," which referred to a presentation on employee benefits given to the Board on March 16, 1999, by Paul J. Collins, Vice Chairman of Citigroup. Minutes of the 10/19/99 Board meeting ("10/19/99 Minutes"), Ex. 4 to Joint Stips. Collins' presentation included a report on how a cash balance formula could be incorporated into the Citigroup Pension Plan. *Id. Accord* Joint Stips. P 16.

[**5]

9 *See* Joint Stips. P 18; 5/27/01 Action of Senior Human Resources Officer Michael Schlein ("Schlein Action"), Ex. 7 to Joint Stips. The 2000 CBA was also described in a summary plan description dated January 1, 2001, but this document was not made available to employees until June 2001. *See* Joint Stips. P 18.

However, after the Board's vote, and prior to the CBA's effective date of January 1, 2000, plan participants did receive a summary notice of the new pension formula. [10] This notice was a letter mailed to all effected employees dated December 9, 1999, from Tim Peach, Director of Retirement Benefits. [11] Attached to the letter was a document entitled -- in large boldfaced letters -- "The Citigroup Pension Plan Notice of Significant Reduction in Benefit Accruals for Certain Employees of Citigroup Inc. and its Subsidiaries." [12] The document contained an overview of how the cash balance formula would work, as well as a table listing the percentages of salaries that would be credited to accounts annually, based on an employee's age and years of service. [13] Most importantly, the notice [**6] neither included nor summarized Plan Article 4.1(e), which adopts the "fractional rule" as the Plan's mechanism for complying with ERISA's minimum benefit accrual rates, and is the linchpin of plaintiffs' actuarial claims. [14]

10 *See* 12/9/99 Letter and Attachments from Tim Peach ("December 1999 section 204(h) notice"), Ex. 16 to Joint Stips.
11 *See id.*

12 *Id.* At least one named plaintiff, Lonecke, recalls receiving this notice at his residence in late 1999. *See Joint Stips.* P 31.
13 *See* December 1999 section 204(h) notice.
14 *See* [HN1]ERISA § 204(b)(1); 29 U.S.C. § 1054(b)(1) (requiring pension plans to adopt one of three alternative accrual rules designed to prevent plans from backloading benefits).

[*176]

## 2. January 1, 2002 CBA

The 2002 CBA incorporated the same cash balance regime adopted in 2000, but recalibrated the range of benefit credits that would be allotted annually to employees' hypothetical accounts. Specifically, it lowered the [**7] floor from 2% to 1.5% of compensation for participants under age twenty-nine in their first five years of credited service. It also lowered the ceiling from 7% to 6% of compensation for participants fifty-five years or older with fifteen or more years of credited service ("2002-Present Benefit Credits"). [15] The application of the fractional rule under Article 4.1(e) remained unchanged.

15 *See* Joint Stips. PP 24-25.

The first and only communication about this amendment to Plan participants which preceded its effective date, January 1, 2002, and which conceivably met statutory notice requirements, was an information package dated December 2001. [16] However, as with the December 1999 section 204(h) notices, there is no mention of the Plan's application of the fractional rule. [17] The named plaintiffs do not recall receiving these packages, nor do they recall being aware in December 2001 that the 2002 CBA "might substantially reduce benefit accruals for themselves or others." [18]

16 *See id.* PP 35-36; ERISA § 204(h); 29 U.S.C. § 1054(h).
[**8]
17 *See* Joint Stips. PP 35-36.
18 *Id.* P 37. Defendants stipulate that had plaintiffs been aware of the implications of the 2002 CBA, they would have initiated legal action earlier than they did. *See id.*

Plaintiffs filed their Complaint on September 21, 2005, alleging numerous ERISA violations. Their prayer for relief includes injunctive and declaratory relief as well as monetary damages. [19]

19 *See* Complaint PP 32-42, "Prayer For Relief" (A)-(F).

## III. APPLICABLE LAW

## A. Plan "Participants" Under ERISA

As a preliminary matter, plaintiffs seek certification of a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of all individuals who were "participants" in the Plan at any time during the class period, "their beneficiaries and Estates, and those who are subject to the Plan's cash balance formula [] pursuant to ERISA. [**9] " [20] [HN2]Section 3(7) of ERISA defines a benefit plan "participant" as an

> employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit . . . . [21]

[HN3]

"Congress intended the statutory scheme [in ERISA], in conjunction with state law, to afford broad protection." [22] [HN4]Plaintiffs have standing to sue if they are "within the 'zone of interests'" articulated by the statute. [23]

20 Plaintiffs' Motion for Class Certification ("Pl. Mem.") at 1-2.

21 29 U.S.C. § 1002(7).

22 Mullins v. Pfizer, Inc., 23 F.3d 663, 667-68 (2d Cir. 1994) (concluding it would be unfair to bar plaintiff, who had terminated participation in his pension plan in reliance on misleading statements made by plan administrators, from pursing an ERISA action for fraudulent misrepresentation).

23 Id. (citation omitted). See also [HN5]ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) (providing that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

### [**10] B. Rule 23(a) Class Certification Requirements

[HN6]Rule 23 of the Federal Rules of Civil Procedure governs class certification. To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a). Plaintiffs bear the burden of demonstrating that the class meets these requirements -- commonly referred to as numerosity, [*177] commonality, typicality, and adequacy. [24] [HN7]The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." [25] [HN8]Commonality requires a showing that common issues of fact or law affect all class members. [26] [HN9]Typicality exists where the named plaintiffs' claims and the absent class members' claims arise from "the same course of events," and where each class member makes "similar legal arguments" to prove defendant's liability. [27] [HN10]The adequacy requirement demands that "the representative parties will fairly and adequately protect the interests of the class." [28] Finally, [HN11]although "'Rule 23(a) does not expressly require that a class be definite in order to be certified[,] a requirement that there be an identifiable class has been implied by the courts. [**11] '" [29]

24 See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 573 (2d Cir. 2000).

25 Fed. R. Civ. P. 23(a)(1).

26 See Fed. R. Civ. P. 23(a)(2); see also Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

27 Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001) (quoting Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)).

28 Fed. R. Civ. P. 23(a)(4).

29 In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323, 336 (quoting Zapka v. Coca-Cola Co., No. 99 Civ. 8238, 2000 U.S. Dist. LEXIS 16552, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000)). This implied requirement is often referred to as "'ascertainability.'" Id. (quoting Van West v. Midland Nat'l Life Ins. Co., 199 F.R.D. 448, 451 (D.R.I. 2001)).

### C. [**12] Rule 23(b) Class Certification Requirements

[HN12]In addition to showing that the proposed class satisfies the four prerequisites of Rule 23(a), plaintiffs must also show that the class is "maintainable" under Rule 23(b). A class satisfies this requirement if it in fits into one of the three alternative categories delineated by Rule 23(b), subdivisions (1), (2), and (3). [30] A class may be certified under more than one category. [31]

30 The named plaintiffs originally moved for class certification pursuant to all three subdivisions of Rule 23(b). By letter to the Court dated 12/12/06, plaintiffs formally requested to withdraw their motion for certification under Rule 23(b)(3); the Court granted this request without prejudice and with leave to replead should it become necessary to do so.

31 *See, e.g., Richards v. Fleetboston Fin. Corp.,
No. 04 Civ. 1638, 238 F.R.D. 345, 2006 U.S.
Dist. LEXIS 77154, 2006 WL 2979373 (D. Conn.
Oct. 16, 2006)* (granting class certification pursu-
ant to Rule 23(b)(1)(A) and Rule 23(b)(2)).

[HN13]Rule 23(b)(1)(A) [**13] permits certifica-
tion where multiple suits "could create a possibility of
incompatible adjudications" or "establish incompatible
standards to govern [defendants'] conduct." [32] Rule
23(b)(1)(B) is more specialized; it covers situations
where individual actions "would create a risk of . . . ad-
judications with respect to individual members of the
class which would as a practical matter be dispositive of
the interests of the other members not parties to the adju-
dications or substantially impair or impede their ability
to protect their interests." [33]

32    1966 Advisory Committee Note to Rule
23(b). *See* Fed. R. Civ. P. 23(b)(1)(A).
33    Fed. R. Civ. P. 23(b)(1)(B).

[HN14]Under Rule 23(b)(2), class litigation is ap-
propriate where "the party opposing the class has acted
or refused to act on grounds generally applicable to the
class, thereby making appropriate final injunctive relief
or corresponding declaratory relief with respect to [**14]
the class as a whole." [34] The Advisory Committee Note
suggests that in this context, "[d]eclaratory relief 'corre-
sponds' to injunctive relief when as a practical matter it
affords injunctive relief or serves as a basis for later in-
junctive relief." [35]

34    Fed. R. Civ. P. 23(b)(2).
35    1966 Advisory Committee Note to Rule
23(b)(2).

[HN15]Although subdivision (b)(2) was designed
with an eye towards equitable relief, certification of a
class seeking both equitable and monetary relief may be
appropriate "in light of the relative importance of the
remedies sought, given all of the facts and circumstances
of the case." [36] The Second Circuit [*178] has instructed
that in assessing whether subdivision (b)(2) applies, a
district court's first inquiry is whether "'even in the ab-
sence of possible monetary recovery, reasonable plain-
tiffs would bring the suit to obtain the injunctive or de-
claratory relief sought.'" [37] The court's next inquiry is
whether "'the injunctive or declaratory [**15] relief
would be both reasonably necessary and appropriate
were the plaintiffs to succeed on the merits.'" [38]

36    *Parker v. Time Warner Cable,* 331 F.3d 13,
20 (2d Cir. 2003) (quotation marks and citation
omitted).
37    *Id.* (quoting *Robinson,* 267 F.3d at 164).
38    *Id.*

## D. Standard of Proof

The Second Circuit recently articulated the requisite
standard of proof for class certification in *Miles et al. v.
Merrill Lynch et al. ("Miles").* [39] [HN16]District courts
may now certify classes only after assessing "all the rele-
vant evidence admitted at the class certification stage,"
and finding that "each of the Rule 23 requirements has
been met." [40] Furthermore,

> such determinations can be made only if
> the [court] resolves factual disputes rele-
> vant to each Rule 23 requirement and
> finds that whatever underlying facts are
> relevant to a particular Rule 23 require-
> ment have been established and is per-
> suaded to rule, based on the relevant facts
> and the applicable [**16] legal standard,
> that the requirement is met. [41]

A court's "obligation to make such determinations is not
lessened by overlap between a Rule 23 requirement and a
merits issue" -- even where the two are "identical." [42] In
making this determination, courts should refrain from
considering "aspect[s] of the merits unrelated to a Rule
23 requirement." [43]

39    *See* ___ F.3d ___, No. 05-3349-cv, 471 F.3d 24,
2006 U.S. App. LEXIS 29859, 2006 WL
3499937 (2d Cir. Dec. 5, 2006).
40    2006 U.S. App. LEXIS 29859 [WL] at *15.
41    *Id.*
42    *Id.*
43    *Id.*

## IV. DISCUSSION

### A. Rule 23(a)

#### 1. Numerosity and Commonality

Defendants do not dispute that plaintiffs' proposed
class is sufficiently numerous under Rule 23(a)(1). Al-
though the exact identity and number of class members
remains unknown, the record shows that there are thou-
sands of potential class members. [44] Nor do defendants
dispute that the proposed class meets the commonality
requirement of Rule 23(a)(2). Questions of law common
to the potential [**17] class include whether the cash
balance formula complies with ERISA, whether Plan
participants received adequate notice of the 2000 and
2002 CBAs, and whether benefits under the Plan accrue
at a rate that discriminates on the basis of age. [45]

44  *See* Pl. Mem. at 7 (noting that mailing lists obtained during discovery identify thousands of Plan participants during the relevant period).

45  *See id.* at 8.

## 2. Typicality

Because all absent class members were participants of the same cash balance plan and suffered the same ERISA violations the typicality requirement is also satisfied. All named plaintiffs' claims allege ERISA violations that affect the pensions of all Plan participants during the class period. Their claims arise from "'the same course of events'" -- the same unlawful accrual formula -- and each participant makes the same "'legal arguments to prove the defendant[s'] liability.'" [46] Although the amount of harm suffered by individual class members depends on several factors, such [**18] as age and length of service, [HN17]"differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." [47]

46  *Robinson,* 267 F.3d at 155 (quoting *Marisol A.,* 126 F.3d at 376 (typicality exists where plaintiffs' legal arguments are "similar").

47  *Ouellette v. International Paper Co.,* 86 F.R.D. 476, 480 (D. Vt. 1980) (citing *Sanders v. Faraday Labs., Inc.,* 82 F.R.D. 99, 101 (E.D.N.Y. 1979) (concluding that "[p]roof of defendant's liability . . . will benefit all members of the proposed classes," and "that the damages, if any, may reach a de minimis level at some point among the class members does not make the named plaintiffs' claims atypical")).

[*179] Defendants allege that plaintiffs have not proved typicality because their claims "hinge on a demonstration of 'likely prejudice,' which will be based on facts and circumstances unique to each . . . purported class member. [**19] " [48] Defendants presented the identical argument in their motion for summary judgment, and it is no more convincing here than it was there. [49] Even assuming that all of plaintiffs' claims require a showing of likely prejudice, plaintiffs have certainly met this requirement. I need not make "individualized assessments into each potential class member's proof and defenses, as the 'likely prejudice' showing [is] satisfied by the terms of the plan itself." [50] The defects in the Plan's accrual formula and in the section 204(h) notices were themselves "significant enough to establish a presumption of likely prejudice," common to all potential class members, and "this presumption has not been rebutted." [51]

48  *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") at 6-7 (citing *Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 137 (S.D.N.Y. 2003)).

49  [EDITOR'S NOTE: TEXT WITHIN THESE SYMBOLS [O> <O] IS OVERSTRUCK IN THE SOURCE.]

*See id.* (citing Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 24-25). Defendants reassert that plaintiffs have failed to proffer evidence showing that they were harmed by any inadequacies in the section 204(h) notices. However, as I held in my earlier ruling, the record indicates that Plan participants were indeed "deprived of the opportunity to take timely action in response to the purported "amendment[O> ; <O]" adopting the Plan's unlawful application of the fractional rule. *Citigroup I,* 2006 U.S. Dist. LEXIS 89565, 2006 WL 3613691, at * 10 (quotation marks and citation omitted). "S[O> [s] <O]uch action might have included seeking injunctive relief, altering their retirement investment strategies, or perhaps considering other employment." *Id.*

[**20]

50  *Richards,* 2006 U.S. Dist. LEXIS 77154, 2006 WL 2979373, at *3.

51  *Id.* (citing *Frommert v. Conkright,* 433 F.3d 254, 267 (2d Cir. 2006)). *Accord Piazza v. EBSCO Indus.,* 273 F.3d 1341 (11th Cir. 2001); *Petrolito v. Arrow Fin. Servs., LLC,* 221 F.R.D. 303, 313 (D. Conn. 2004) (discussing the maintainability of "a (b)(1)(A) ERISA suit involving the application of an ERISA-covered plan to a number of employees").

## 3. Adequacy

The record demonstrates that plaintiffs' interests are commensurate with those of the proposed class. [52] Defendants argue, without specificity, that adequacy is lacking because "the named Plaintiffs have already conceded facts that preclude them from prevailing on the claims they purport to assert on behalf of the purported class members." [53] This argument appears to be completely baseless as defendants never identify the alleged concessions. In fact, plaintiffs' claims are premised on the same Plan provisions and ineffective section 204(h) notices that give rise to the claims of absent class members, and plaintiffs state [**21] claims to pension benefits to which the potential class members are also entitled. Plaintiffs have clearly satisfied the adequacy requirement.

52  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625-26, 117 S. Ct. 2231, 138 L. Ed. 2d

689 (1997) ([HN18]"The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001) (requiring courts to "ask whether plaintiff's interests are antagonistic to the interest of other members of the class") (quotation marks and citation omitted).

53 Def. Mem. at 8. The cases defendants cite in support of this argument are predicated on easily distinguishable facts. *See, e.g., Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003) (denying certification where many members of purported class of employees had signed binding releases with varying terms, waiving their right to recover ERISA benefits, thereby subjecting them to unique defenses).

[**22] **B. Class Certification Under Rule 23(b)**

**1. Rule 23(b)(1)**

The proposed class is well-suited for certification under Rule 23(b)(1). The language of subdivision (b)(1)(A), addressing the risk of "inconsistent adjudications," speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to "treat the members of the class alike." [54] The proposed [*180] class members number in the thousands; they all suffered the same statutory violations and are therefore entitled to similar forms of relief, including reformation of the Plan to comport with ERISA.

54 *Amchem*, 521 U.S. at 614 (quotation marks and citation omitted). *Accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-47, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999); *Richards*, 2006 U.S. Dist. LEXIS 77154, 2006 WL 2979373, at *8-9; 2 *Newberg on Class Actions* § 4.8 at 26 (4th ed. 2002) ("Newberg") (offering examples of the applicability of Rule 23(b)(1)(A) to cases where defendant had a statutory obligation to treat all class members alike).

[**23] In opposition, defendants assert that there is no reason to believe that multiple actions will be brought for these violations in the absence of class certification, or that multiple actions would produce inconsistent results. [55] They argue that in the year that has passed since the commencement of this action, there have been no additional complaints, nor were any previous complaints filed in the five year history of the cash balance plan. [56]

However, as other courts have noted, the fact that only a limited number of plaintiffs have come forward can weigh significantly in favor of class certification. [57] Additionally, "[t]he Second Circuit itself, in several opinions . . . has noted that the absence of other lawsuits is meaningless in determining the interest of absent class members in the controversy." [58]

55 *See* Def. Mem. at 10-11.
56 *See id.*
57 *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[T]he fact that Gary Plastic was the only plaintiff to come forward and seek to represent the class weighs in favor of certification . . . .").
[**24]
58 2 Newberg § 4.6 at 21-22 (citing *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968)).

Because the claims here are premised on statutory violations caused by the terms of the Plan, and because plaintiffs seek injunctive relief -- including the retroactive reformation of the Plan and recalculation of benefits -- inconsistent dispositions of these claims by different courts "could create an untenable situation." [59] Thus, class certification under 23(b)(1)(A) is appropriate.

59 *Richards*, 2006 U.S. Dist. LEXIS 77154, 2006 WL 2979373, at *9.

Defendants also argue, unpersuasively, that this Court's previous Consolidation Order weighs against class certification. [60] However, [HN19]unlike the class action device, consolidation "does not merge the suits into a single cause, or change [**25] the rights of the parties, or make those who are parties in one suit parties in another." [61] Although other claimants have not yet come forward, plaintiffs have adequately alleged that many similarly-situated Plan participants suffered the same statutory violations. In light of my previous ruling, there is little doubt that in the absence of class certification, others would be encouraged to commence litigation. [62]

60 *See* Def. Mem. at 10.
61 *In re Community Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 298 (3d Cir. 2005).
62 Plaintiffs also argue for certification under Rule 23(b)(1)(B). *See* Pl. Mem. at 12-13; Plaintiffs' Reply Memorandum of Law in Further Support of their Motion for Class Certification at 6-7.

But the "historical antecedents" of this subdivision suggest that it was designed for "class actions . . . involving, for instance, 'claimants to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, [and] proceeds of a ship sale in a maritime accident suit.'" *Dobson v. Hartford Life & Accident Ins. Co.,* No. 99 Civ. 2256, 2006 U.S. Dist. LEXIS 14922, 2006 WL 861021, at *7 (D. Conn. Mar. 31, 2006) (quoting *Ortiz,* 527 U.S. at 834). Given that the classic cases suitable for Rule 23(b)(1)(B) certification are limited fund cases, and that plaintiffs have not established a basis for going beyond this rationale, and because I find certification proper under an alternative subdivision of Rule 23(b), I limit certification under Rule 23(b)(1) to subdivision (A). *See Ortiz,* 527 U.S. at 834; *see also* 2 Newberg § 4.8 at 30 ([HN20]"There is no real litigation significance whether the court certifies the class under Rule 23(b)(1)(A) or (b)(1)(B) or both. Certification under either of these two provisions will not trigger any special class provisions in other parts of Rule 23 relating to notice or right of exclusion, and each subdivision will permit class suits seeking injunctive relief or damages or both. Court certification of a class under either Rule 23(b)(1)(A) or (b)(1)(B) makes no difference.").

[**26] **2. Rule 23(b)(2)**

Class certification here also falls squarely within the purview of Rule 23(b)(2), [*181] because I find that "even in the absence of possible monetary recovery, reasonable [Plan participants] would bring the suit to obtain the injunctive [and] declaratory relief" plaintiffs seek. [63] For even if they were somehow precluded from monetary recovery, reasonable Plan participants would bring suit to enjoin the Plan's application of the fractional rule and to compel a reformation of the Plan to comply with ERISA's minimum rates of benefit accrual. Additionally, I find plaintiffs' prayers for relief -- including monies prescribed by the recalculation of benefits under a statutorily compliant formula -- to be both reasonably necessary and appropriate "in light of the facts and circumstances of the case." [64] In other words, given the import and necessity of plaintiffs' prayers for declaratory and injunctive relief, they "predominate" over other prayers for relief under *Robinson.* [65]

63 *Parker,* 331 F.3d at 20 (quotation marks and citation omitted).

64 *Id. Accord Richards v. FleetBoston Fin. Corp.,* 235 F.R.D. 165, 174 (S.D.N.Y. 2006) (certifying, under Rule 23(b)(2), a class of plan beneficiaries seeking monetary and injunctive relief for ERISA violations); *Amara v. CIGNA Corp.,* No. 3:01CV2361, 2002 U.S. Dist. LEXIS 25947, 2002 WL 31993224, at *4 (D. Conn. Dec. 20, 2002) (holding that claims seeking equitable relief under ERISA section 502(a), 29 U.S.C. § 1132(a), warranted class certification under 23(b)(2) "because they seek injunctive relief, pursuant to ERISA, generally applicable to the entire class").

[**27]

65 *See* 267 F.3d at 164.

Defendants assert that Rule 23(b)(2) certification is unavailable to plaintiffs with respect to certain statutory violations because plaintiffs seek "restitutionary relief" in the form of "the greater of the benefit calculated under the pre-cash balance formula or the cash balance formula." [66] This argument misses the mark because it is well established that a prayer for monetary relief in addition to equitable relief will not defeat a Rule 23(b)(2) class action. [67] While it is true that Plan participants are suing to recover benefits, the primary relief being sought is declaratory. Indeed,

> [w]hat is sought is a declaration that [Citigroup's] method of computing [accrued benefits] is unlawful. That is a ground common to all the members of the class . . . . True, the declaration sought and obtained [is] merely a prelude to a request for damages . . . . [b]ut a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the [**28] suit as one for declaratory relief. The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration. [68]

Here, because the recalculation and crediting of withheld pension benefits will be "the direct, anticipated consequence" of my previous ruling, the suit can be maintained under Rule 23(b)(2). [69]

66 Def. Mem. at 12 (arguing that (b)(2) certification is unavailable on plaintiffs' inadequate section 204(h) notice claims). Defendants' characterization of the monetary relief being sought as "restitutionary" is inaccurate. As Judge Richard Posner recently observed, [HN21]where a pen-

sion plan is found unlawful under ERISA, a participant's claim "to recover benefits" is neither restitutionary nor equitable, "but it is declaratory." *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 763-64 (7th Cir. 2003) (citing *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213-14, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002); *Honolulu Joint Apprenticeship & Training Comm. v. Foster,* 332 F.3d 1234, 1237-38 (9th Cir. 2003)).

[**29]

67  *See Robinson,* 267 F.3d at 164 (holding that certification of a class pursuant to Rule 23(b)(2) is appropriate even where a claim seeks both injunctive relief and non-incidental monetary damages); *FleetBoston,* 235 F.R.D. at 174 (certifying a class of pension beneficiaries under subdivision(b)(2) in light of the "'relative importance of the remedies sought'") (quoting *Parker,* 331 F.3d at 20); *see also Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir. 2001) (concluding that in order to *not* predominate, monetary relief must be "incidental," meaning that "damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief . . . .'" (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998)).

68  *Berger,* 338 F.3d at 764.

69  *Id.* Moreover, it is not uncommon, for purposes of (b)(2) certification, for courts to treat injunctions requiring the payment of monies unlawfully withheld as *injunctive* -- rather than monetary -- relief. *See, e.g., Berger,* 338 F.3d at 763-

64 (holding that pension beneficiaries' suit to recover benefits was maintainable as a class action under 23(b)(2)); *FleetBoston,* 235 F.R.D. at 174 (certifying a class under 23(b)(2) where plaintiff sought injunctive and monetary relief on grounds substantially similar to those articulated by the Citigroup plaintiffs); *Walsh v. Northrup-Grumman Corp.,* 162 F.R.D. 440, 448 (E.D.N.Y. 1995) (finding that a claim was for injunctive relief, not monetary damages, for 23(b)(2) purposes, where plaintiffs requested the court to restore them to their positions prior to a merger, including back pay and restitution of benefits).

[*182]

[**30] **V. CONCLUSION**

For the foregoing reasons, certification of the proposed class is granted pursuant to Rule 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to close this motion [Docket No. 39]. A conference is scheduled for January 2, 2007, at 4:30 p.m., at which the parties should be prepared to discuss the scope of the class and the possible need for subclasses.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: New York, New York

December 19, 2006

# UNREPORTED CASE NO. 2

**GERALD GEORGE, et al. Plaintiffs, vs. KRAFT FOODS GLOBAL, INC., et al. Defendants. -AND- GEORGE PIRO, et al. Plaintiffs, vs. KRAFT FOODS GLOBAL, INC, et al. Defendants.**

No. 07 C 1713, No. 07 C 1954

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

2008 U.S. Dist. LEXIS 22126; 43 Employee Benefits Cas. (BNA) 1673

**March 20, 2008, Decided**
**March 20, 2008, Filed**

**SUBSEQUENT HISTORY:** Class certification granted by, Class certification denied by George v. Kraft Foods Global, Inc., 2008 U.S. Dist. LEXIS 60567 (N.D. Ill., July 17, 2008)

**PRIOR HISTORY:** George v. Kraft Foods Global, Inc., 2007 U.S. Dist. LEXIS 18650 (S.D. Ill., Mar. 16, 2007)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, employees, sued defendants, an employer and plan fiduciaries, for alleged violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq. Defendants moved to strike the employees' demand for a jury trial, on the ground that neither § 502(a)(2) nor § 502(a)(3) of ERISA granted a right to a jury trial, and that plaintiffs had no right to a jury trial under the Seventh Amendment.

**OVERVIEW:** The employees alleged defendants paid service providers excessive and unreasonable fees and expenses, which were not incurred solely for the benefit of the ERISA plan and its participants and which were not disclosed. The employees argued that the United States Supreme Court decision in Great-West employed an analysis that required the instant court to conclude that the employees' ERISA § 502(a)(2) claim was a legal one for which they had a right to a jury. For several reasons, the court found that the employees' reliance on Great-West was misplaced. For example, employees placed too much weight on the Supreme Court's statement that restitution was considered legal when a plaintiff sought to obtain a judgment imposing personal liability on a defendant to pay money, and too little on the

accompanying portion of the analysis observing that such claims were viewed essentially as actions at law for breach of contract. The Great-West analysis did not hold that a claim for restitution by a plan fiduciary for breach of fiduciary duty was a legal rather than equitable claim. ERISA § 502(a)(2) did not implicitly provide a statutory grant of a right to jury trial for the employees' claim.

**OUTCOME:** The court granted the motion to strike the employees' jury demand brought by the employer and plan fiduciaries.

**CORE TERMS:** jury trial, fiduciary, restitution, equitable, fiduciary duties, equitable relief, beneficiary, constitutional right, personal liability, restore, experienced, direct result, equitable remedies, contractual obligation, personally liable, excessive, reimburse, providers, confer, breach of contract, equitable rights, equitable claim, injunctive relief, declaratory relief, attorney's fees, legal remedy, legal claims, line of authority, medical expenses, sum of money

**LexisNexis(R) Headnotes**

**Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions**
[HN1]The Seventh Amendment to the United States Constitution provides that, in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. This constitutional grant of the right to a jury trial extends beyond the specific common law causes of action recognized in 1791.

*Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions*
[HN2]The <u>Seventh Amendment</u> confers the right to a jury trial in suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.

*Civil Procedure > Equity > Adequate Remedy at Law*
[HN3]To determine if a cause of action involves legal rather than equitable rights: First, courts compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, courts examine the remedy sought and determine whether it is legal or equitable in nature. The second part of the analysis, the nature of the remedy, is more important than the first.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN4]The Employee Retirement Income Security Act's (ERISA) fiduciary responsibility provisions codify and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law of trusts.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Jury Trials*
[HN5]Damages, the traditional form of relief offered in the courts of law, are not available under Section 502(a)(2) of the Employee Retirement Income Security Act (ERISA), <u>29 U.S.C.S. § 1132(a)(2)</u>, which would eliminate any constitutional right to a jury trial under ERISA § 502(a)(2) as well. All courts within the Seventh Circuit have held that claims under ERISA § 502(a)(2) are legal claims, for which there is no right to a jury trial.

*Civil Procedure > Equity > Relief*
*Contracts Law > Remedies > Restitution*
[HN6]The United States Supreme Court explains that restitution can be either a legal or an equitable remedy. Restitution is a legal remedy when a plaintiff seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money, as in a breach of contract. By contrast, restitution is an equitable remedy where money or property identified as belonging in

good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN7]Section 502(a) of the Employee Retirement Income Security Act, <u>29 U.S.C.S. § 1132(a)(2)</u>, allows a participant, beneficiary or fiduciary to bring an action for appropriate relief under <u>29 U.S.C.S. § 1109</u>. <u>Section 1109(a)</u>, in turn, provides that a fiduciary who breaches any of the responsibilities placed upon fiduciaries shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, <u>29 U.S.C.S. § 1109(a)</u>. Losses to the plan may result from a breach of fiduciary duty that involves fiduciaries personally profiting from misconduct, or where malfeasance or nonfeasance by the fiduciary results in losses to the plan that wind up in the hands of others. An action for a restitution against the transferee of tainted ERISA plan assets is appropriate equitable relief, and that a beneficiary may maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Restitution*
[HN8]What Section 502(a)(2) of the Employee Retirement Income Security Act, <u>29 U.S.C.S. § 1132(a)(2)</u>, allows is for a participant to have a means of restoring the money or property to the plan by holding the fiduciary responsible, without having to sue the transferee.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
[HN9]Further evidence that claims under <u>29 U.S.C.S. § 1109(a)</u> - and thus under Section 502(a)(2) of the Employee Retirement Income Security Act, <u>29 U.S.C.S. §</u>

1132(a)(2) - are equitable, and not legal, is found in the fact that beneficiaries who file suit to hold fiduciaries personally liable under 29 U.S.C.S. § 1109(a) are not entitled to monetary recovery themselves, but may only seek a recovery that inures to the benefit of the Plan as a whole. This point has been cited as a basis for concluding that legal relief is not available under 29 U.S.C.S. § 1109.

***Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Jury Trials***
[HN10]Even if a right to a jury trial is not guaranteed by the Seventh Amendment, one may be extended by Congress if it chooses to do so under a particular statutory scheme. However, the Employee Retirement Income Security Act does not contain any language that expressly confers a right to a jury trial.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > General Overview***
[HN11]The Employee Retirement Income Security Act is a comprehensive and reticulated statute.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview***
[HN12]The six carefully integrated civil enforcement provisions found in § 502(a) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1132(a)(2), as finally enacted provide strong evidence Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Jury Trials***
[HN13]Any attempt to engraft the right to jury trial onto Section 502(a)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1132(a)(2), as a matter of statutory grant is undermined by the legislative history of ERISA § 502(a)(2).

**COUNSEL:** [*1] For Gerald George, Cathy Dunn, Timothy Streff, Andrew Swanson, individually and as representatives of a class of similarly situated persons, Plaintiffs: Matthew H. Armstrong, LEAD ATTORNEY, Schlichter Bogard & Denton LLP, St. Louis, MO; Nelson G. Wolff, LEAD ATTORNEY, Daniel V. Conlisk,

Schlichter Bogard & Denton, Louis, MO; Jerome J Schlichter, Belleville, IL.

For Kraft Foods Global, Inc., Kraft Foods Global, Inc. Administrative Committee, Benefits Investment Committee, Jim Dollive, all in their capacities as members of the Benefits Investment Comittee, Karen May, all in their capacities as members of the Benefits Investment Comittee, Marc Firestone, all in their capacities as members of the Benefits Investment Comittee, Pamela King, all in their capacities as members of the Benefits Investment Comittee, Defendants: Ian H. Morrison, LEAD ATTORNEY, Kelly Ann Powis, Ronald J. Kramer, Seyfarth Shaw LLP, Chicago, IL.

For Service List, Defendant: Jerome J Schlichter, LEAD ATTORNEY, Schlichter, Bogard & Denton, Belleville, IL.

For George Pino, Sandra Baldi, Individually And On Behalf Of All Others Similarly Situated, Plaintiffs: Andrae P Reneau, LEAD ATTORNEY, Edward Anthony Wallace, LEAD ATTORNEY, Wexler Toriseva Wallace LLP, Chicago, IL; Stephen J. Fearon, Jr., Squitieri & Fearon, LLP, New York, NY; Thomas J. McKenna, Gainey & McKenna, New York, NY.

For Doe Defendants 1-10, Defendant: Ian H. Morrison, Seyfarth Shaw LLP, Chicago, IL.

**JUDGES:** SIDNEY I. SCHENKIER, United States Magistrate Judge.

**OPINION BY:** SIDNEY I. SCHENKIER

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, individually and as representatives of a putative class, [*2] have filed this action against Kraft Foods Global, Inc, Kraft Foods Global Inc. Administrative Committee, Benefits Investment Committee, and Jim Dollive, Karen May, Marc Firestone, and Pamela King, in their capacities as members of the Benefits Investment Committee, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiffs allege that in managing a 401(k) retirement plan ("the Plan"), defendants paid service providers excessive and unreasonable fees and expenses, which were not incurred solely for the benefit of the Plan and its participants and which were not disclosed to the participants. Plaintiffs allege that in connection with these payments, defendants breached their fiduciary duties to the Plan in various ways and seek relief pursuant to Sections 502(a)(2) and 502(a)(3)

of ERISA. *See* 29 U.S.C. §§ 1132(a)(2), (a)(3). For their claim under Section 502(a)(2) (Count I), plaintiffs seek to have the defendants "restore to the Plan the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and [to hold the defendant] liable for any other available and appropriate equitable relief, including [*3] prospective injunctive relief and declaratory relief, and attorney's fees" (Compl. at P106). For their claim under Section 502(a)(3) (Count II), plaintiffs seek "an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets," and an award of injunctive and other appropriate equitable relief (Compl. at PP 117, 119). Plaintiffs seek a jury trial "of all counts so triable" (Compl. at Prayer for Relief).

Defendants have moved to strike the plaintiffs' demand for a jury trial, on the ground that neither Section 502(a)(2) nor Section 502(a)(3) grants a right to a jury trial, and that plaintiffs have no right to a jury trial under the Seventh Amendment (doc. # 95). For the reasons that follow, we agree, and grant the motion to strike.

## I.

We begin our analysis with plaintiffs' principal argument: that they have a constitutional right to a jury trial on their ERISA claim under Section 502(a)(2). [HN1]The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." This constitutional [*4] grant of the right to a jury trial extends beyond the specific common law causes of action recognized in 1791. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564-65, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990) (*citing Parsons v. Bedford,* 28 U.S. 433, 3 Pet. 433, 7 L. Ed. 732 (1830); *Tull v. United States,* 481 U.S. 412, 417, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. 2d 988(1959)). [HN2]The Seventh Amendment confers the right to a jury trial in suits "in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera v. Nordberg,* 492 U.S. 33, 41, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989) (*citing Parsons v. Bedford,* 28 U.S. 433, 3 Pet. 433, 447, 7 L. Ed. 732 (1830)).

In *Granfinanciera,* the Supreme Court quoted the two-part test articulated in *Tull v. United States,* 481 U.S. 412, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987), [HN3]to determine if a cause of action involves legal rather than equitable rights: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Sec-

ond, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera,* 492 U.S. at 42 (quoting *Tull,* 481 U.S. at 417-18). [*5] *Granfinanciera* makes clear that the second part of the analysis, the nature of the remedy, is more important than the first. *Id.*

Plaintiffs do not address the first prong of the *Granfinanciera* test, and thus effectively concede that the first prong of that test weighs against their claim for a jury trial under Section 502(a)(2). Indeed, that concession is required by the uniform line of authority that [HN4]"the Act's fiduciary responsibility provisions 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'" *Firestone Tire & Rubber Company v. Bruch,* 489 U.S. 101, 110, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (quoting H.R. Rep. No. 93-533) (internal citations omitted) (alterations in original); *see also McDougall v. Pioneer Ranch Ltd. Partnership,* 494 F.3d 571, 576 (7th Cir. 2007) ("'ERISA's antecedents are equitable' not legal") (quoting *Mathews v. Sears Pension Plan,* 144 F.3d 461, 468 (7th Cir. 1998)).

Plaintiffs base their constitutional argument on the proposition that the remedy they seek under Section 502(a)(2) is legal in nature, and that they therefore satisfy the second (and more important) factor under the *Granfinanciera* test. For the reasons that [*6] follow, we disagree.

## A.

In their claim under Section 502(a)(2), plaintiffs seek an order requiring defendants to "restore to the Plan the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and [to hold defendants] liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees" (Compl. at P 606). Plaintiffs assert that their demand that plaintiffs "restore to the Plan the losses it experienced" is a request for a legal remedy, for which they have a constitutional right to a jury trial.

In making this argument, plaintiffs run head long into nearly 30 years of Seventh Circuit authority holding that there is no right to a jury trial under ERISA. Many of the Seventh Circuit cases make this holding in the context of claims under 502(a)(1)(B) of ERISA. *See, e.g., Patton v. MFS/SON Life Financial Distributions, Inc.,* 480 F.3d 478, 484 (7th Cir. 2007); *Wardle v. Central States, Southeast and Southwest Area Pensions Fund,* 627 F.2d 820, 829-30 (7th Cir. 1980), *Mathews v. Sears Pension Plan,* 144 F.3d 461, 468 (7th Cir. 1998). However, at least one Seventh Circuit decision held [*7] that [HN5]damages, "the traditional form of relief of-

fered in the courts of law," *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry,* 494 U.S. 558, 570, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990), are not available under *Section 502(a)(2), Plummet v. Fluid Pump Service, Inc.,* 124 F.3d 849, 863 (7th Cir. 1997), which would eliminate any constitutional right to a jury trial under *Section 502(a)(2)* as well. Following this appeals court authority, all courts within the Seventh Circuit likewise have held that claims under *Section 502 (a)(2)* are legal claims, for which there is no right to a jury trial. *See, e.g., Abbott v. Lockheed Martin Corp.,* No. 06-701, 2007 U.S. Dist. LEXIS 58930, *7-8 (S.D. Ill. Aug. 13, 2007); *Spano v. The Boeing Co.,* No. 06-743, 2007 U.S. Dist. LEXIS 28774, *30-36, 38-39 (S.D. Ill., Apr. 17, 2007); *Benjamin v. Marshall P. Morris, Ltd. Profitsharing Plan and Trust,* No. 97 C 6714, 1998 U.S. Dist. LEXIS 8358, *17 (N.D. Ill., May 20, 1998). This line of authority, without more, would be fatal to plaintiffs' claim for a jury on their *Section 502(a)(2)* claim.

**B.**

But, plaintiffs claim that there is more. Plaintiffs argue that the decision in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002), [*8] employs an analysis that requires us to conclude that plaintiffs' *Section 502(a)(2)* claim is a legal one for which they have a right to a jury. In order to assess that argument, we begin with a discussion of the *Great-West* decision.

*Great-West* involved a provision in an ERISA plan that required beneficiaries to reimburse the plan for monies advanced for medical expenses if they later recovered money from a third party. Knudson, a plan beneficiary, was injured in a car accident, and Great-West Life & Annuity Insurance Company covered her medical expenses on behalf of her husband's health and welfare plan. Knudson filed a tort suit against a third party, and recovered a sum of money in a settlement agreement. Great-West then filed an ERISA claim under *Section 502(a)(3)*, seeking to compel Knudson to reimburse the plan by paying a portion of her settlement.

The Supreme Court held that Great-West could not seek relief under *Section 502(a)(3)*, which only allows for equitable relief, whereas the relief Great-West sought - while couched as an injunction to compel Knudson to make a payment - was legal. *534 U.S. at 210-11.* The Court explained that "the imposition of personal liability on respondents [*9] for a contractual obligation to pay money," *id. at 221*, was relief that was typically "not available in equity." *Id. at 211.* Since *Section 502(a)(3) of ERISA* permits only equitable relief, *id. at 209-10*, Great-West's action was not authorized by that section. *Id. at 221.*

In the course of its analysis, the Supreme Court rejected Great-West's argument that its claim was permissible under *Section 502(a)(3)* because it sought equitable restitution. *534 U.S. at 212.* [HN6]The Supreme Court explained that restitution can be either a legal or an equitable remedy. Restitution is a legal remedy when a plaintiff seeks "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money," as in a breach of contract. *Id. 213.* By contrast, restitution is an equitable remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore the plaintiff particular funds or property in the defendant's possession." *Id. at 214.*

Plaintiffs [*10] argue that, because they are seeking to impose personal liability on the defendant under *Section 502(a)(2)*, under the *Great-West* analysis the relief they seek is legal restitution and they therefore are entitled to a jury trial. For several reasons, we find that plaintiff's reliance on *Great-West* is misplaced.

*First*, we disagree that the *Great-West* analysis of the distinction between legal and equitable restitution advances plaintiff's claim here for a jury trial. In our judgment, plaintiff places too much weight on the Supreme Court's statement that restitution is considered legal when a plaintiff seeks to obtain a judgment imposing personal liability on a defendant to pay money, and too little on the accompanying portion of the analysis observing that "[s]uch claims were viewed essentially as actions at law for breach of contract. . . ." *Great-West,* 534 U.S. at 213. That was the factual situation in *Great-West:* the insurance company was seeking to enforce the indemnity clause of a contract requiring Knudson to reimburse the plan for monies the plan had advanced. Great-West's claim for recovery was not premised on Knudson having breached any fiduciary duty to the plan, but rather on [*11] an alleged breach of her contractual obligation. In this case, we have the converse situation: plaintiffs do not seek to hold defendants personally liable pursuant to a contract, but instead because of their roles as fiduciaries (*see* Compl. P 106 (alleging that defendants "are liable to restore to the Plan the loses it experienced as a direct result of Defendants' breaches of fiduciary duty . . ."))). This distinction is important, because historically courts have considered a claim for breach of fiduciary duty to be a matter for courts of equity. *See, e.g., Abbott,* 2007 U.S. Dist. LEXIS 58930, *6; *Donovan v. Robbins,* 579 F. Supp. 817, 821 (N.D. Ill. 1984). The *Great-West* analysis does not suggest (much less hold) that a claim for restitution by a plan fiduciary for breach of fiduciary duty is a legal rather than equitable claim.

*Second,* the relationship between Section 502(a)(2) and Section 1109(a) of ERISA further underscores the equitable nature of the relief plaintiff seeks. [HN7]Section 502(a) allows a participant, beneficiary or fiduciary to bring an action "for appropriate relief under Section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a), in turn, provides that a fiduciary [*12] who breaches any of the responsibilities placed upon fiduciaries "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach,... and shall be subject to such other equitable or remedial relief as the court may deem appropriate,..." 29 U.S.C. § 1109(a). "Losses to the plan" may result from a breach of fiduciary duty that involves fiduciaries personally profiting from misconduct (which is not alleged here), or where malfeasance or nonfeasance by the fiduciary results in losses to the plan that wind up in the hands of others (such as, alleged here, service providers). In *Great-West,* the Supreme Court reiterated its earlier holding that "'an action for a restitution against the transferee of tainted Plan assets' is 'appropriate equitable relief,'" and that a beneficiary may "'maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of)....'" 534 U.S. at 215 (quoting *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 250-51, 253, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000)). Thus, in our case, if plaintiffs sued the service providers to whom the fiduciaries allegedly paid excessive amounts, [*13] that would be an equitable claim. [HN8]What Section 502(a)(2) allows is for a participant to have a means of restoring the money or property to the plan by holding the fiduciary responsible, without having to sue the transferee. We are not persuaded that a suit against the fiduciary who allegedly made the excessive payment is a claim for legal relief, when the claim against the recipient of those payments to recover the money would be equitable. We see nothing in the *Great-West* analysis that requires that result.

*Third,* [HN9]further evidence that claims under Section 1109(a) - and thus under Section 502(a)(2) - are equitable, and not legal, is found in the fact that beneficiaries who file suit to hold fiduciaries personally liable under Section 1109(a) are not entitled to monetary recovery themselves, but may only seek a recovery that inures to the benefit of the Plan as a whole. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985). This point has been cited as a basis for concluding that "legal relief is not available under Section 1109." *Grodsky v. Benefit Trust Life Ins.,* No. 89 C 463, 1990 U.S. Dist. LEXIS 2324, *7 (N.D. Ill. Mar. 5, 1990). At a minimum, the Supreme Court's [*14] interpretation of Section 1109(a) in *Massachusetts Mutual Life* creates further distance between a claim under Section 502(a)(2), and

the kind of suit to enforce contractual obligations that provided the context for the Supreme Court's discussion of restitution in *Great-West.*

*Fourth,* in a related vein, we note that the *Great-West* decision involved a claim under Section 502(a)(3), and did not involve or discuss claims under Section 502(a)(2). In light of the foregoing analysis, we are unwilling to presume that the Supreme Court in *Great-West* intended, *sub silentio,* to overturn the many appeals court decisions holding that there is no right to a jury trial under Section 502(a). We are especially reluctant to do so in light of the fact that since *Great-West,* the Seventh Circuit twice has stated (albeit without citation to *Great-West,* and in cases involving provisions other than Section 502(a)(2)) that there is no jury trial right for ERISA claims. *McDougall v. Pioneer Ranch Ltd. Partnership,* 494 F.3d 571, 576 (7th Cir. 2007) ("[t]he general rule in ERISA cases is that there is no right to a jury trial"); *Patton v. MFS/SUN Life Financial Distributions, Inc.,* 480 F.3d 478, 484 (7th Cir. 2007) [*15] (in ERISA cases, "the plaintiff has no right to a jury trial"). District court decisions within this Circuit likewise have declined to read *Great-West* as authorizing the right to a jury trial in Section 502(a) claims. *See Jetseck v. Prudential Ins. Co. of America,* No. 07 C 3753, Slip. Op. at 5, 2007 U.S. Dist. LEXIS 84438 (N.D. Ill. Nov. 15, 2007) (Section 502(a)(1)(B) claim); *Abbott,* 2007 U.S. Dist. LEXIS 58930, *6 (Section 502(a)(2) claim); *Spano,* 2007 U.S. Dist. LEXIS 28774, *33-37 (Section 502(a)(2) claim). We have considered the authorities cited by plaintiff, including *Bona v. Barasch,* No. 01 Civ. 2289, 2003 U.S. Dist. LEXIS 4186, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003), a post *Great-West* decision that extended a right to jury trial in a Section 502(a)(2) case, but we do not find them persuasive.

Thus, for the foregoing reasons, we hold that under the *Granfinanciera* test, plaintiffs' claim under Section 502(a)(2) is an equitable one for which there is no constitutional right to a jury trial. [1]

> 1 Plaintiffs offer no argument or authority that they have a constitutional right to a jury trial under Section 502(a)(3). Indeed, they would be hard pressed to do so in light of well-settled Supreme Court authority holding that relief available [*16] under Section 502(a)(3) is limited to "those categories of relief that were *typically* available in equity ...." *Bruns v. Hewitt Associates,* 508 U.S. 248, 256, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993) (italics in original). This proposition was reaffirmed in *Great-West,* the lead authority that plaintiffs advance in support of their claim to a jury trial under Section 502(a)(2). 534 U.S. at 210.

## II.

[HN10]Even if a right to a jury trial is not guaranteed by the Seventh Amendment, one may be extended by Congress if it chooses to do so under a particular statutory scheme. However, ERISA does not contain any language that expressly confers a right to a jury trial.

Nonetheless, plaintiff argues (in passing) that in enacting ERISA, Congress implicitly conferred the right to a jury trial under Section 502(a)(2) - but not Section 502(a)(3) - because Congress authorized legal relief under that section (Pls.' Opp. at 13). For the reasons explained above, we reject the proposition that Section 502(a)(2) authorizes a plaintiff to seek legal relief, as well as the proposition that the particular relief plaintiffs seek here is legal.

Moreover, plaintiffs' suggestion that Congress implicitly intended to confer the right to jury trial is at odds [*17] with Supreme Court's observation that [HN11]ERISA is a "comprehensive and reticulated" statute. *Nochman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359, 361, 100 S. Ct. 1723, 64 L. Ed. 2d 354 (1980); *see also Massachusetts Mut. Life*, 473 U.S. at 146 ("[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme"). In *Massachusetts Mutual Life*, the Supreme Court pointed to the care and detail that went into the drafting of ERISA in rejecting plaintiff's contention that Section 1109(a) creates an implied right of action for claims by beneficiaries to seek damages that would go to the beneficiary (instead of to the plan). The Supreme Court observed that [HN12]"[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life*, 473 U.S. at 146 (emphasis in original).

[HN13]Any attempt to engraft the right to jury trial onto Section 502(a)(2) as a matter of statutory grant is further undermined by the legislative history of Section 502(a)(2). [*18] While under an early version of Section 1109(a) (which Section 502(a)(2) allows a participant to enforce) provided expressly for "legal or equitable" relief, the final bill that was passed omitted any reference to legal relief. *See Massachusetts Mut. Life*, 473 U.S. at 145-46 and n.14. The Seventh Circuit has recognized that congressional silence on the right to a jury trial in ERISA reflects an intent that claims brought under the statute be equitable in nature. *Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 527 (7th Cir. 1986). The fact that the express reference to legal relief originally contained in Section 1109(a) fell to the cutting room floor before the statute was passed is even more damaging to plaintiffs' statutory jury trial claim, as it suggests that Congress in fact was not silent on whether Section 1109(a) would include legal claims, but purposefully declined to include those claims under the statute.

Accordingly, we hold that Section 502(a)(2) does not implicitly provide a statutory grant of a right to jury trial for plaintiffs' claim here.

## CONCLUSION

For the foregoing reasons, the motion to strike the plaintiffs' jury demand (doc. [*19] # 95) is granted. [2]

> 2  Plaintiffs make an alternative request asking the Court to empanel an advisory jury (Pls.' Opp. at 14-15). The Court denies this motion without prejudice; we consider it premature to determine at this time whether to empanel an advisory jury for trial. Plaintiff's may renew this request closer to the trial date.

/s/ Sidney I. Schenkier

**SIDNEY I. SCHENKIER**

**United States Magistrate Judge**

Dated: March 20, 2008

# UNREPORTED CASE NO. 3

DALE C. GITTINGS, Plaintiff, v. TREDEGAR FILM PRODUCTS-LAKE ZU-RICH, LLC, et al., etc., Defendants.

No. 08 C 4972

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2008 U.S. Dist. LEXIS 91138

November 10, 2008, Decided
November 10, 2008, Filed

**CORE TERMS:** plan administrator, ex-employer's, proper party, failed to raise, presentment

**COUNSEL:** [*1] For Dale C Gittings, Plaintiff: Stephen P. Carponelli, LEAD ATTORNEY, Carponelli & Krug, P.C., Chicago, IL; Erin Buck Kaiser, Joseph E Urani, Kimberly A Carr, Best, Vanderlaan & Harrington, Chicago, IL; Ross Stephen Carponelli, Carponelli & Krug, Chicago, IL.

For Tredegar Film Products, a division of Tredgar Corporation, Defendant: William Francis Dugan, LEAD ATTORNEY, Colin Michael Connor, Seyfarth Shaw LLP, Chicago, IL.

For Sun Life Assurance Company of Canada, doing business as Sun Life Financial, Defendant: Mark E Schmidtke, LEAD ATTORNEY, Eric P. Mathisen, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Chicago, IL.

**JUDGES:** Milton I. Shadur, Senior United States District Judge.

**OPINION BY:** Milton I. Shadur

**OPINION**

*MEMORANDUM ORDER*

In this action brought by Dale Gittings ("Gittings") against both his ex-employer Tredegar Film Products-Lake Zurich, LLC [1] ("Tredegar") and ERISA plan administrator Sun Life Assurance Company of Canada ("Sun Life"), Tredegar has filed its Answer, including affirmative defenses, and Sun Life has just filed its Amended Answer to Gittings' Complaint. This memorandum order

is issued sua sponte to raise a question as to the propriety of bringing an ERISA claim against Sun Life.

1 Gittings' [*2] Complaint identified the ex-employer as "Tredegar Film Products, a division of Tredegar Corporation," but the ex-employer's Answer has moved for substitution of the proper corporate name, set for presentment November 17, 2008.

Although its view does not appear to be shared universally among the other Courts of Appeals around the country, our Court of Appeals takes the position that absent special circumstances the proper defendant in an employee's lawsuit seeking the payment of ERISA benefits is the employee benefit *plan* rather than the plan administrator. Here is what that court said in *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610-11 (7th Cir. 2007), affirming this Court's dismissal of the employee's claims against the insurance company that was acting as plan administrator:

Finally, Mote contends that the district court erred by dismissing her claims against Aetna upon its finding that Aetna was not a proper party to the action. She asserts that she should be able to sue both her employer's ERISA plan (i.e., the Plan) and the Plan's administrator, Aetna. Generally, in a suit for ERISA benefits, the plaintiff is "limited to a suit against the Plan." *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004). [*3] While we have allowed plaintiffs in ERISA cases to sue an ERISA plan administrator in some limited instances, the operative facts of those cases differ from those in

this case. For instance, in *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997), we permitted a plaintiff to sue the plan administrator to recover ERISA benefits because the employer failed to raise the issue in the district court and the plan documents referred to the employer and the plan interchangeably. Neither of those pivotal facts is present here. Similarly, in *Mein v. Carus Corp.*, 241 F.3d 581 (7th Cir. 2001), we allowed a plaintiff to sue his employer to recover ERISA benefits because the employer and the plan were closely intertwined. *Id.* at 584-85. We are not faced with that situation in this case, since Aetna was not Mote's employer and the Plan's policy distinguishes between the Plan, the employer, and Aetna. We thus find that the district court did not err in dismissing Aetna from the suit because it was not a proper party to the action.

This action is scheduled for presentment of the motion referred to in n.1 at 9:15 a.m. November 17. At or before that time Gittings' counsel will be expected [*4] to address the issue raised by this memorandum order.

In the meantime Sun Life, which has somewhat inexplicably failed to raise the issue discussed in this memorandum order, has filed an Amended Answer that is permeated with two problematic features:

1. Many of its paragraphs--all of those in which it seeks to get the benefit of a deemed denial under Fed. R. Civ. P. 8(b)(5)--simply do not track the plain dictate of that Rule (see, as just one example, Amended Answer P3). In that respect Sun Life's counsel should read App. P1 to *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 278 (N.D. Ill. 2001).

2. In the numerous paragraphs of the Amended Answer that deny the corresponding averments by Gittings, Sun Life flat-out "denies the allegations." By contrast, the many paragraphs that contain admissions state that Sun Life "admits the *material* allegations" (emphasis added). Is the reader expected to guess whether Gittings has also made any allegations that are not "material," so as to be excluded from Sun Life's admissions?

If Sun Life remains in the case it will have to replead, and this Court will enter an appropriate order setting the conditions for such repleading. That subject too [*5] will await the disposition of the issue identified earlier in this memorandum order.

/s/ Milton I. Shadur

Milton I. Shadur

Senior United States District Judge

Date: November 10, 2008

# UNREPORTED CASE NO. 4

ALAN HEDEEN, Plaintiff, v. AON CORPORATION; and THE PRUDENTIAL IN-
SURANCE COMPANY OF AMERICA, Defendant.

No. 04 C 3360

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

2004 U.S. Dist. LEXIS 21706; 34 Employee Benefits Cas. (BNA) 1155

October 27, 2004, Decided
October 28, 2004, Docketed

**DISPOSITION:** Motion to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee ap-
plied for benefits under a long-term disability plan pro-
cured and administered by defendant employer and un-
derwritten by defendant insurer. The employee filed an
action under 29 U.S.C.S. §1132 of the Employee Re-
tirement Income Security Act (ERISA), 29 U.S.C.S. §§
1001-1461, after his claim for benefits was denied. The
insurer moved to dismiss two counts of the complaint
pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The employee mistakenly failed to enroll
in the plan. The employer agreed to accept his untimely
enrollment but informed him that his coverage would not
be effective until the insurer approved the enrollment.
The benefits form that the employee submitted stated
that he was "currently covered" under the plan. A month
later, the employee was placed on medical leave; he was
later denied benefits under the plan on the ground that he
had failed to provide evidence of insurability as required
by the plan's policy. The employee exhausted his admin-
istrative remedies and then filed the suit. The court found
that the plan's enrollment's provisions were unambigu-
ous; they required the employee to give evidence of in-
surability due to his untimely enrollment. The em-
ployee's 29 U.S.C.S. § 1132(a)(2), (3), claims failed be-
cause he was not asserting the § 1132(a)(2) claim on the
plan's behalf and the § 1132(a)(3) claim was duplicative
of his direct claim for benefits under § 1132(a)(1)(B).
The insurer was not estopped from denying benefits
based upon the enrollment form's coverage statement.
The form was generated by the employer; it was not act-
ing as the insurer's agent in administering the plan.

**OUTCOME:** The court granted the insurer's dismissal
motion and dismissed the counts in the employee's com-
plaint that alleged an estoppel claim and that sought
remedies against the insurer based upon breach of fiduci-
ary duty and the denial of benefits under the plan.

**CORE TERMS:** long-term, enrollment, disability, cov-
erage, equitable relief, misrepresentation, insurability,
beneficiary's, enroll, fiduciary duty, fiduciary, ambigu-
ous, holders, enrolled, disability benefits, submit evi-
dence, administering, unambiguous, procuring, estoppel,
carrier, insured, insurer's, employee benefits, retroactive,
short-term, elections, federal common law, disability
insurance, benefit plans

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Failures to State Claims*
[HN1]The purpose of a Fed. R. Civ. P. 12(b)(6) motion
to dismiss is to test the sufficiency of the complaint, not
to decide the merits. In considering a motion to dismiss,
the court accepts all well-pleaded allegations as true and
draw all reasonable inferences in the plaintiff's favor. A
motion to dismiss should be granted only when it appears
beyond a doubt that plaintiff can prove no set of facts
that would entitle him to relief.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement In-
come Security Act (ERISA) > Civil Claims & Remedies
> Causes of Action > Breach of Fiduciary Duty*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*

[HN2]An unspecified claim alleging violations of § 1132 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. §§ 1001-1461, codified at 29 U.S.C.S. § 1132, can be construed in three ways: (1) as a claim for benefits under an ERISA plan's policy pursuant to 29 U.S.C.S. § 1132(a)(1)(B); (2) as a claim for breach of fiduciary duty under 29 U.S.C.S. § 1132(a)(2); or (3) as a claim for equitable relief for breach of fiduciary duty under 29 U.S.C.S. § 1132(a)(3).

*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Plan Establishment*

[HN3]Employee benefit plans under are governed by written instruments. 29 U.S.C.S. § 1102(a)(1). In interpreting these instruments, the district court applies federal common law rules of contract interpretation. It interprets ERISA plans in an ordinary manner, like a person of average intelligence and experience would. In interpreting these plans, the court must first determine whether the contract is ambiguous. If the court decides that the contract is unambiguous, it may construe the plan as a matter of law.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > Disabilities*
*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Proof > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > General Overview*

[HN4]Where an employee has not met a condition precedent to coverage under a group long-term disability policy, his claim for benefits must be dismissed.

*Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*

[HN5]Contract language is ambiguous if it is susceptible to more than one reasonable interpretation.

*Contracts Law > Contract Interpretation > General Overview*
*Contracts Law > Defenses > Ambiguity & Mistake > General Overview*
*Contracts Law > Formation > Ambiguity & Mistake > General Overview*

[HN6]While the terms in insurance contracts should be interpreted in favor of the insured, the United States District Court for the Northern District of Illinois, Eastern Division, refuses to artificially create ambiguity where none exists.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Personal Liability*

[HN7]Section 1132(a)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. §§ 1001-1461, provides that a civil action may be brought by the Secretary of Labor or by a participant, beneficiary or fiduciary for appropriate relief under § 1109 of ERISA. 29 U.S.C.S. § 1132(a)(2). Section 1109(a) of ERISA, as incorporated into 29 U.S.C.S. § 1132(a)(2), states that a breaching fiduciary shall be personally liable to make good to the plan any losses to the plan resulting from such breach. 29 U.S.C.S. § 1109(a). Thus, only the plan itself, not an individual participant or beneficiary, can recover under 29 U.S.C.S. § 1132(a)(2). The United States Supreme Court has held that recovery for violation of § 1132(a) inures only to the plan, not to the individual participant or beneficiary.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*

[HN8]Where an employee seeks to recover only for himself and not for an Employee Retirement Income Security Act, 29 U.S.C.S. §§ 1001-1461, plan, his claim under 29 U.S.C.S. § 1132(a)(2) must be dismissed.

*Civil Procedure > Equity > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN9]29 U.S.C.S. § 1132(a)(3) authorizes an individual claim for appropriate equitable relief. The United States Supreme Court has limited the circumstances in which equitable relief is appropriate and has noted that where Congress elsewhere provides adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief will not be appropriate. When a direct claim for benefits under § 1132(a)(1)(B) is available, a plaintiff cannot seek the same relief under § 1132(a)(3). Other courts in the Northern District of Illinois have reached this conclusion as well.

*Labor & Employment Law > Disability & Unemployment Insurance > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General Overview*
[HN10]Where an employee seeks to recover benefits under a long-term disability plan pursuant to 29 U.S.C.S. § 1132(a)(1)(B), any claim under § 1132(a)(3) is duplicative.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Real Property Law > Zoning & Land Use > Comprehensive Plans*
[HN11]Several courts in other circuits, including the United States Courts of Appeals for the Fourth, Fifth, and Eleventh Circuits, have found that a claim under 29 U.S.C.S. § 1132(a)(1)(B) need not be successful in order to preclude a claim under § 1132(a)(3). While the United States Courts of Appeals for the Seventh Circuit has not addressed this issue, a well-reasoned opinion issued by a judge in the Northern District of Illinois has followed this approach. Accordingly, the United States District Court for the Northern District of Illinois, Eastern Division, holds that the dismissal of an employee's claim under § 1132(a)(1)(B) does not transform a duplicative claim under § 1132(a)(3) into a viable remedy.

*Contracts Law > Consideration > Enforcement of Promises > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*

[HN12]The United States Courts of Appeals for the Seventh Circuit has laid out four requirements for an Employee Retirement Income Security Act, 29 U.S.C.S. §§ 1001-1461, estoppel claim: (1) a knowing misrepresentation by the defendant; (2) made in writing; (3) with reasonable reliance by the plaintiff on that misrepresentation; (4) to his detriment.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN13]A misrepresentation by anyone is not sufficient for estoppel under the Employee Retirement Income Security Act, 29 U.S.C.S. §§ 1001-1461, it must be made by the defendant.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN14]In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district court may consider any exhibits attached to the complaint.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > Preemption*
*Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws*
[HN15]The Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. §§ 1001-1461, has been held to preempt state laws regarding agency. Because ERISA does not specifically address agency principles, courts should look to federal common law in considering this issue. The United States Supreme Court has addressed this issue and has recognized that when procuring and administering an ERISA plan policy, employers act not as agents of the insurer, but for their employees or themselves. The United States Courts of Appeals for the Seventh Circuit has cited this statement with approval on this issue. More recent opinions further support this position, albeit in a less explicit manner.

**COUNSEL:** [*1]  For ALAN HEDEEN, Plaintiff: Jeffrey Grant Brown, Jeffrey Grant Brown, P.C., Chicago, IL.

For AON CORPORATION, Defendant: Jody A. Ballmer, Sonia Steele, Littler Mendelson, P.C., Chicago, IL.

For PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant: Daniel John McMahon, Rebecca Marie Rothmann, Edna Bailey, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL.

**JUDGES:** MARVIN E. ASPEN, District Judge.

**OPINION BY:** MARVIN E. ASPEN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

On May 12, 2004, Plaintiff Alan Hedeen ("Plaintiff" or "Hedeen") filed this four-count complaint against the Defendants Aon Corporation ("Aon") and The Prudential Insurance Company of America ("Prudential") alleging violations of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C.§§ 1001-1461. The violations alleged stem from Prudential's denial of Plaintiff's claim for long-term disability benefits under a group insurance policy underwritten by Prudential and procured and administered by Aon, Plaintiff's employer. Prudential filed a motion to dismiss Counts III [1] and IV of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [*2] For the reasons set forth below, we grant Prudential's motion. [2]

> 1   Count III of the Complaint applies to both Aon and Prudential.
> 2   This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 because it is brought under the laws of the United States (specifically, ERISA).

**BACKGROUND**

In considering a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations as true. Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 981 (7th Cir. 2004). Therefore, we recite the facts as Plaintiff presents them in his complaint.

Hedeen began his employment with Aon in May 2000. On his first day, Aon held a new employee orientation meeting. During this meeting, new employees were told how to enroll for certain employee benefits provided by Aon. Unfortunately, Hedeen arrived late to this meeting and missed the portion addressing the procedure for employee benefits enrollment.

In August 2000, Hedeen learned that he was supposed [*3] to have completed a benefits enrollment form within thirty days of the start of his employment with Aon. Upon realizing his error, Hedeen went to his super-

visor, who contacted Aon's employee benefits department on Hedeen's behalf. Hedeen was then instructed to file an appeal, which he did. On October 16, 2000, Aon responded to Hedeen's appeal and informed him that it was willing to accept Hedeen's benefits elections despite his untimely enrollment. Aon provided Hedeen with the appropriate enrollment forms and instructed him to complete them. Also on October 16, Aon informed Hedeen that his "benefit elections with the exception of... Long-Term Disability will be effective retroactive to June 5, 2000" and "if... Long-Term Disability [is] elected, coverage will be effective as of the date of approval by the insurance carrier."

In November 2000, Aon sent Hedeen a form listing his current benefits elections and coverage. This form contained the following sentence: "You are currently covered under the Long-term disability plan." (Compl. Ex. 1, at 2) (emphasis in original). This form further indicated that $ 11.04 was to be withheld from each of [*4] Hedeen's paychecks as his premium contribution for this coverage. Hedeen signed this form and returned it to Aon's employee benefits department. Thereafter, $ 11.04 was regularly withheld from Hedeen's paycheck for long-term disability coverage.

In December 2001, Hedeen began experiencing back pain and other related health issues. After seeing multiple physicians regarding these problems, Hedeen was placed on medical leave in October 2002. He then applied for short-term disability benefits pursuant to his group coverage; Hedeen was approved for these short-term benefits.

Unfortunately, Hedeen's condition did not improve and his short-term benefits expired in April 2003. With Aon's assistance, [3] Hedeen then applied for long-term disability benefits with Prudential. [4] On June 24, 2003, Prudential denied Hedeen's claim on the grounds that Hedeen had not provided "evidence of insurability" to Prudential as required by the Policy's enrollment and eligibility provisions. After exhausting administrative appeals with Prudential, Hedeen filed the present action.

> 3   Aon's Employee Service Center faxed Hedeen's enrollment forms to Prudential and indicated that Hedeen "was currently enrolled in [long-term disability] coverage."
> [*5]
> 4   As stated earlier, Prudential was the long-term disability insurance carrier for Aon and its employees.

**ANALYSIS**

Prudential moves to dismiss Counts III and IV of the Complaint pursuant to Rule 12(b)(6). [HN1]"The pur-

pose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)* (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)).* In considering a motion to dismiss, We accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Hernandez v. City of Goshen, 324 F.3d 535, 537 (7th Cir. 2003).* Thus, a motion to dismiss should be granted only when it appears beyond a doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Hernandez, 324 F.3d at 537.*

## I. COUNT III

Count III of the Complaint alleges violations of § 1132 of ERISA. 29 U.S.C. §1132. [*6] plaintiff does not specify under which provisions of § 1132 that Count III is brought. Count III [HN2]could be construed in three ways: (1) as a claim for benefits under the Policy pursuant to § 1132(a)(1)(B); (2) as a claim for breach of fiduciary duty under § 1132(a)(2); and (3) as a claim for equitable relief for breach of fiduciary duty under §1132(a)(3). In its Brief, Prudential argues that dismissal is warranted under any interpretation of Count III. Thus, we address each possible claim under Count III in turn.

### A. CLAIM FOR BENEFITS UNDER § 1132(a)(1)(B) OF ERISA

Prudential argues that Hedeen has failed to comply with the unambiguous enrollment procedures and conditions set forth in the above provisions and, therefore, is not entitled to benefits under the Policy. We agree.

[HN3]Employee benefit plans under ERISA are governed by written instruments. 29 U.S.C. §1102(a)(1). In interpreting these instruments, we apply federal common law rules of contract interpretation. *Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 873 (7th Cir. 2001).* Therefore, we interpret ERISA plans in an ordinary manner like a person of average intelligence and experience [*7] would. *Id.* (internal citations omitted). In interpreting these plans, we must first determine whether the contract is ambiguous. *Id.* If we decide the contract is unambiguous, we may construe it as a matter of law. *See id.*

The Policy provisions at issue state the following:

**Prompt Enrollment is Important,** so enroll on an early date. If you do so, your Employee Insurance under a Coverage will begin the first day on which you have enrolled, and:

. You are eligible for Employee Insurance; and

. You are in a Covered Class for that Insurance

. You have met any evidence requirement for Employee Insurance; and

. Your insurance is not being delayed under the Delay of Effective Date section below; and

. That Coverage is part of the Group Contract.

The Policy goes on to list the circumstances under which the evidence requirement referred to above is applicable:

When evidence is required: In any of these situations, you must give evidence of insurability. This requirement will be met when Prudential decides the evidence is satisfactory.

(1) You enroll more than 31 days after you could first be covered.

(2) You enrol after any of your [*8] insurance under the Group Contract ends because you did not make a required contribution.

(3) You have not met a previous evidence requirement to become insured under any Prudential group contract covering Employees of the Employer.

Finally, the Policy also defines the term "Covered Classes":

**Covered Classes:** The "Covered Classes" are these Employees of the Contract Holder: All U.S. Employees classified by the Contract Holder as:

1. Full-time Staff Employees who: (a) have a minimum of twenty-eight days of continuous service immediately preceding their individual effective dates of insurance and (b) who have been actively at work performing all duties of their usual occupation for 15 of the 20 working days immediately preceding their individual effective dates of insurance.

(Compl. Ex. 2, at 3, 7-8).

The enrollment provisions set forth above are unambiguous. As the Policy makes clear, the Insurance becomes effective when the beneficiary/participant (1) has

enrolled (2) is in a Covered Class and (3) has met any evidence requirement. A beneficiary must give evidence of insurability when he has enrolled more than thirty-one days after he could first [*9] be covered. Thus, it is important to determine when the employee could first be covered. The "Covered Classes" section answers this, and indicates that an employee could first be covered once he has been employed continuously for twenty-eight days by the Contract Holder (i.e., Aon). Thus, if the employee enrolls more than thirty-one days after the twenty-eighth day of his employment, he must give evidence of insurability. [5]

> 5 Phrased differently, the employee has a fifty-nine day window, beginning on the first day of his employment, in which to enroll without having to submit evidence of insurability.

Hedeen started work on May 8, 2000. He had fifty-nine days from that day to enroll in the long-term disability plan without having to submit evidence of insurability. Hedeen, however, did not enroll in the long-term disability benefits plan until at least October 16, 2000. [6] The policy required him to submit evidence of insurability. Hedeen admits that he failed to submit any such evidence. Therefore, Hedeen [*10] [HN4]has not met a condition precedent to coverage under the Policy, and his claim for benefits must be dismissed. *Prudential Mut. Life Ins. Co. v. Charter Barclay Hosp.,* 81 F.3d 53, 56 (7th Cir. 1996) (upholding denial of benefits where beneficiary did not meet policy condition of full-time employment).

> 6 Although Aon informed Hedeen that his benefits enrollment was retroactive to June 5, 2000, it specifically excluded long-term disability coverage from this retroactive application. In fact, Aon informed Hedeen that the long-term disability coverage would "be effective as of the date of approval by [Prudential]." Compl. P 19.

Plaintiff's argument that the Policy is ambiguous falls short. [HN5]"Contract language is ambiguous if it is susceptible to more than one reasonable interpretation." *Neuma,* 259 F.3d at 875. While an understanding of the enrollment procedures and conditions does require some cross-referencing between different Policy sections, we do not find the Policy to be ambiguous. [*11] Plaintiff fails to advance any plausible alternative interpretation of the relevant Policy's provisions, [7] and our own reading of the Policy likewise reveals none. Thus, while we recognize that [HN6]terms in insurance contracts should be interpreted in favor of the insured, we refuse to "artificially create ambiguity where none exists." *Hammond v. Fidelity & Guard Life Ins. Co.,* 965 F.2d 428, 430 (7th Cir. 1992).

> 7 While Plaintiff does present alternative interpretations, each of these alternatives ignores or flatly misconstrues relevant Policy provisions that refute Plaintiff's interpretation.

## B. CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER § 1132(a)(2)

Count III of the Complaint could also be read as a breach of fiduciary duty claim under §1132(a)(2). 29 U.S.C. §1132(a)(2). In support of its motion to dismiss, Prudential argues: (1) that Prudential is not a fiduciary of Hedeen's; and (2) that Hedeen cannot seek damages for himself under §1132(a)(2). We find Prudential's [*12] second argument compelling and, therefore, do not reach the issue of whether Prudential is a fiduciary.

[HN7]ERISA §1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. §1132(a)(2). Section 1109(a), as incorporated into §1132(a)(2), states that a breaching fiduciary "shall be personally liable to make good to [the] plan any losses to the plan resulting from. . . such breach. . . ." 29 U.S.C. § 1109(a). Thus, only the plan itself, not an individual participant or beneficiary, can recover under § 1132(a)(2). The Supreme Court recognized this in *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985) (holding that recovery for violation of §1132(a) inures only to the plan, not to the individual participant or beneficiary). For these reasons, because Hedeen [HN8]seeks to recover only for himself and not for the plan, his claim under § 1132(a)(2) must be dismissed.

## C. CLAIM FOR EQUITABLE RELIEF FOR BREACH OF FIDUCIARY DUTY UNDER §1132(a)(3)

Finally, Count III of the Complaint [*13] may state a claim for equitable relief for breach of fiduciary duty pursuant to §1132(a)(3). In support of its motion, Prudential argues that if the Complaint states a claim under § 1132(a)(3) it should be dismissed because (1) Prudential is not a fiduciary of Hedeen, and (2) equitable relief under § 1132(a)(3) is not proper where a direct claim for benefits is available. Since we find Prudential's second argument persuasive, we do not reach the issue of whether Prudential is a fiduciary.

We observe first that [HN9]§ 1132(a)(3) authorizes an individual claim for appropriate equitable relief. *Varity Corp. v. Howe,* 516 U.S. 489, 507-09, 134 L. Ed. 2d 130, 116 S. Ct. 1065(1996). The Supreme Court in *Varity,* however, limited the circumstances in which equitable relief is appropriate. Specifically, the Court noted

that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief in which case such relief. . . would not be 'appropriate.'" *Id.* at 515. When a direct claim for benefits under § 1132(a)(1)(B) is available, therefore, a plaintiff cannot seek the same relief under §1132(a)(3). *See id.* Other courts [*14] in the Northern District of Illinois have reached this conclusion as well. *See, e.g., Kaliebe v. Parmalat USA Corp.,* 2003 U.S. Dist. LEXIS 17415, No. 02-C-8934, 2003 WL22282379,*3-4 (N.D. Ill. 2003) (Coar, J.).

Hedeen [HN10]seeks to recover benefits under the long-term disability plan pursuant to §1132(a)(1)(B). Thus, any claim under §1132(a)(3) is duplicative. [8] Although we have already dismissed Hedeen's §1132(a)(1)(B) claim, [HN11]several courts in other Circuits have found that a claim under §1132(a)(1)(B) need not be successful in order to preclude a claim under §1132(a)(3). *Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088 (11th Cir. 2000) (finding that availability of alternate "adequate" remedy does not require an adjudication in one's favor); *Tolson v. Avondale Indus.,Inc.,* 141 F.3d 604, 610 (5th Cir. 1998) (holding that failure of §1132(a)(1)(B) claim did not make § 1132(a)(3) claim viable); *Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc.,* 102 F.3d 712, 716(4th Cir. 1996) (holding that §1132(a)(3) claim not proper even if plaintiff lacked standing to sue under §1132(a)(1)(B)). While the Seventh Circuit has not addressed [*15] this issue, a well-reasoned opinion by Judge Manning of this District has also followed this approach. *Jurgovan v. ITI Enterprises,* 2004 U.S. Dist. LEXIS 11489, No. 03-C-4627, 2004 WL 1427115 (N.D. Ill. 2004). In *Jurgovan,* the plaintiff could not recover damages under § 1132(a)(1)(B) because of the plan's insolvency; the plaintiff thus tried to bring a claim under §1132(a)(3) to avoid this effect and recover. *Id.* 2004 U.S. Dist. LEXIS 11489 at *2. In finding that §1132(a)(3) was not a proper remedy for the plaintiff, Judge Manning noted that the plaintiff could sue under §1132(a)(1)(B). Judge Manning stated that while § 1132(a)(1)(B) "is a remedy that [plaintiff] understandably does not like,... it is still a remedy nonetheless." *Id.* 2004 U.S. Dist. LEXIS 11489 at *4. Accordingly, we find that the dismissal of Hedeen's claim under §1132(a)(1)(B) does not transform his claim under §1132(a)(3) into a viable remedy. Hedeen's §1132(a)(3)claim under Count III is dismissed.

8 We further note that Hedeen has not described the form of equitable relief he is seeking under § 1132(a)(3). A fair reading of his Complaint, however, suggests that he is seeking only monetary damages for the benefits he was denied. Plaintiff

could and, as we understand his Complaint, has brought this claim under §1132(a)(1)(B).

[*16] II. COUNT IV

Under Count IV, Hedeen claims that Prudential should be estopped from denying benefits to Hedeen under the long-term disability plan. Prudential argues that Count IV should be dismissed under Rule 12(b)(6). We agree with Prudential.

In *Coker v. Trans World Airlines,* [HN12]the Seventh Circuit laid out four requirements for an ERISA estoppel claim: (1) a knowing misrepresentation by the defendant; (2) made in writing; (3) with reasonable reliance by the plaintiff on that misrepresentation; (4) to his detriment. 165 F.3d 579, 585 (1999). Hedeen's Complaint is lacking with regard to the first element.

Hedeen's estoppel claim hinges on the following statement found on the 2001 Personal Enrollment Form ("Enrollment Form"): "You are currently covered under the Long-term Disability plan." (Compl. Ex. 1, at 2) (emphasis in original). Since, as we have already discussed, Hedeen *was not* actually covered under this plan, this statement could certainly constitute a misrepresentation. However, [HN13]a misrepresentation by anyone is not sufficient for estoppel, it must be made by the defendant. *See Downs v. World Color Press,* 214 F.3d 802, 805 (7th Cir.2000). [*17] Realizing this, Hedeen advances two theories under which the statement could be attributed to Prudential: (1) Prudential actually made the statement; (2) Aon made the statement while acting as Prudential's agent. We therefore consider each of Plaintiff's theories.

First, Plaintiff argues Prudential could be the author of the statement contained in the Enrollment Form. [9] The Enrollment Form itself clearly contradicts this assertion. The Enrollment Form summarizes *all* of Hedeen's benefits under the Aon Benefit Program, not just the long-term disability plan. Prudential, the long-term disability insurance carrier, surely would not author a document describing Hedeen's medical, dental and life insurance coverage. Furthermore, the Enrollment Form contains Hedeen's Aon Employee Identification number, is captioned "Aon Benefit Program", and directs Hedeen to return the form to the Aon Employee Service Center. Thus, the form appears to be nothing more than an internal Aon document. Where the plaintiff attaches an exhibit to the complaint that clearly negates a basis for the claim, we may consider the exhibit in dismissing the claim. *Thompson,* 300 F.3d at 754.

9 As a preliminary matter, we note that, [HN14]in considering a motion to dismiss under Rule 12(b)(6), we may consider any exhibits at-

tached to the complaint. *Thompson v. Illinois Dep't of Regulation, 300 F.3d 750, 753 (7th Cir. 2000)*.

[*18] Based on the face of the form, we find that Prudential was not the form's author and, thus, did not directly misrepresent Hedeen's coverage status.

Alternatively, Hedeen asserts that the misrepresentation should be attributed to Prudential because Aon was acting as Prudential's agent when it told Hedeen that he was covered under the long-term disability plan. [HN15]ERISA has been held to pre-empt state laws regarding agency. *Unum Life Ins. Co. of America v. Ward, 526 U.S. 358, 378-79, 143 L. Ed. 2d 462, 119 S. Ct. 1380(1999)* (holding that California agency doctrine that automatically deemed the policyholder-employer an agent of the insurer was pre-empted by ERISA). Because ERISA does not specifically address agency principles, courts should look to federal common law in considering this issue. *See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1989)*.

The Supreme Court addressed this issue in *Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 81 L. Ed. 1036, 57 S. Ct. 686 (1937)*. There, the Court recognized that "when procuring [and administering] the policy, . . . employers act not as agents of the insurer, but for their employees or themselves." *Boseman, 301 U.S. at 204-05.* [*19] Shortly thereafter, the Seventh Circuit cited *Boseman* with approval on this issue. *Metro.Life Ins. Co. v. Quilty, 92 F.2d 829, 832 (7th Cir. 1937)*. More recent opinions further support this position, albeit in a less explicit manner. *See Gabler v. Minnesota Mut. Life Ins. Co.,* No. 92-C-8256, 1993 WL 433703, *4 (N.D. Ill. 1993) (Kocoras, J.) (noting that group policy holders act as agents of the insured in procuring and administering group policies); *Walley v. Agri-Mark, Inc., 2003 U.S. Dist. LEXIS 17059, 2003 WL 22244957, *2 (D. Mass. 2003)* (citing *Ward* and holding that group plan administrator is not the insurer's agent).

In the present case, therefore, we find that Aon, in procuring and administering the group insurance underwritten by Prudential, was not Prudential's agent. Without an agency relationship, any misrepresentations made by Aon cannot by imputed to Prudential. As such, Count IV fails to adequately allege that Prudential made any actionable misrepresentations. Accordingly, Count IV of the Complaint is dismissed.

## CONCLUSION

For the foregoing reasons, we grant Prudential's motion to dismiss. It is so ordered.

MARVIN E. ASPEN

United [*20] States District Judge

Dated 10/27/04

# UNREPORTED CASE NO. 5

**MAUREEN HEROUX, Plaintiff, vs. HUMANA INSURANCE COMPANY, a corporation, and THE DUVAL GROUP, LTD., an Illinois Corporation, and THE "DUVAL GROUP PLAN," an unnamed employee welfare plan, Defendants.**

No. 04 C 304

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

2005 U.S. Dist. LEXIS 11712; 35 Employee Benefits Cas. (BNA) 2367

June 8, 2005, Decided
June 8, 2005, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a former employee, sued defendants, her former employer, the employer's health plan, and a former plan administrator, alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq. The administrator filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The administrator claimed that employee failed to state her breach of fiduciary duty claims and failed to state her wrongful denial of benefits claims. The court initially held that the employee could not recover on her breach of fiduciary duty claims under 29 U.S.C.S. § 1104 because she was seeking individual relief rather than plan-wide relief, thus, precluding a claim under 29 U.S.C.S. §§ 1132(a)(2) or § 1109, and she had an adequate remedy in her claim under 29 U.S.C.S. § 1132(a)(1)(B), thus, precluding a claim under 29 U.S.C.S. § 1132(a)(3). The court then held that the employee's claims under 29 U.S.C.S. §§ 1021(a), 1022, and 1024 were sufficient because, prior to the plan's amendment, the administrator, as defined under 29 U.S.C.S. § 1002(16)(A), owed a duty to the employee to provide her with a summary plan description. The court further held that the employee's claim against the administrator under 29 U.S.C.S. § 1132(c) failed because the administrator was not the administrator of her plan at the time the condition for which she sought benefits arose, but that her 29 U.S.C.S. § 1133 claim was sufficiently stated pursuant to Fed. R. Civ. P. 8(a).

**OUTCOME:** The administrator's motion to dismiss was granted in part regarding the employee's breach of fidu-

ciary duty claims, and the employee's claims alleging failure to provide a reason or nonpretextual reason for denial of her claim. The administrator's motion to dismiss was denied in part regarding the employee's claims alleging a failure to provide a summary plan description, and alleging a failure to follow claim procedures.

**CORE TERMS:** administrator, fiduciary, plan's administrator, fiduciary duties, beneficiary, coverage, benefit plans, insurance coverage, surgery, plan participants, owed, insurance policy, failure to provide, wrongfully denied, nonpretextual, policyholder, designated, breached, claims procedures, health insurance, failed to inform, failed to provide, equitable relief, failing to provide, authenticity, referenced, purported, severance, catchall, entitle

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1]A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN2]The court may examine documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to her claim.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN3]The court may consider an exhibit that is attached to a plaintiff's complaint.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Summary Judgment > General Overview*
[HN4]A court need not treat a motion to dismiss as one for summary judgment where it confines its analysis to documents, the authenticity of which are not in doubt, which are referenced in the complaint, and are central to the plaintiff's claim.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > Loyalty*
[HN5]29 U.S.C.S. § 1104 outlines the duties and standard of care that a fiduciary owes its plan participants and beneficiaries. In particular, 29 U.S.C.S. § 1104(a)(1)(A) and (B) detail the prudent man standard of care to which fiduciaries are held, stating that fiduciaries are expected to discharge their duties for the sole purposes of providing plan participants and beneficiaries benefits and defraying expenses of administering the plan using the care, skill, diligence, and prudence that a prudent man would use under similar circumstances. 29 U.S.C.S. § 1104(a)(1). However, 29 U.S.C.S. §1104 does not grant civil enforcement for breach of fiduciary duty.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
[HN6]Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., civil enforcement is found in 29 U.S.C.S. §§ 1132(a)(2) and 1109.

*Governments > Fiduciary Responsibilities*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Personal Liability*
[HN7]29 U.S.C.S. § 1109 makes any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries' personally liable. 29 U.S.C.S. § 1109(a).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
[HN8]29 U.S.C.S. § 1132(a)(2) states that a civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under 29 U.S.C.S. § 1109. 29 U.S.C.S. §1132(a)(2).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*
[HN9]Under 29 U.S.C.S. § 1109, liability for breach of fiduciary duty runs only to the plan and not to individual participants or beneficiaries.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*
[HN10]Where an individual participant is unable to recover under 29 U.S.C.S. §§ 1132(a)(2) and 1109 for breach of fiduciary duty, she may pursue an action under the catchall claim, 29 U.S.C.S. § 1132(a)(3), which states that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. 29 U.S.C.S. § 1132(a)(3). The United States Supreme Court has found that the language and structure of 29 U.S.C.S. § 1132 creates a catchall in 29 U.S.C.S. § 1132(a)(3), which acts as a safety net offering appropriate equitable relief for injuries caused by violations that are not adequately remedied elsewhere in the provision.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*

[HN11]The catchall safety net under 29 U.S.C.S. § 1132(a)(3) is just that, and where Congress has elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate. Although the United States Court of Appeals for the Seventh Circuit has not yet addressed this issue, other courts within the Northern District of Illinois have interpreted this statement to mean that where relief may be obtained under 29 U.S.C.S. § 1132(a)(1)(B), it cannot also be sought under 29 U.S.C.S. §1132(a)(3).

*Pensions & Benefits Law > Employee Benefit Plans > Welfare Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Failures to Respond*

[HN12]29 U.S.C.S. § 1132(c) establishes a civil action for an administrator's refusal to supply requested information that an employee welfare plan's administrator is required to furnish to a participant or beneficiary under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. 29 U.S.C.S. § 1132(c).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Disclosure, Notice & Reporting > Summary Plan Description*

[HN13]29 U.S.C.S. § 1021(a) mandates that the administrator of each employee benefit plan furnish a summary plan description to each covered participant. 29 U.S.C.S. § 1021(a).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Claim Procedures*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Disclosure, Notice & Reporting > Summary Plan Description*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Funding*

[HN14]29 U.S.C.S. § 1022 details the required contents of the summary plan description, 29 U.S.C.S. § 1022, and 29 U.S.C.S. § 1024(b) sets forth the required timing and procedures for furnishing the summary plan description. 29 U.S.C.S. § 1024(b).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Disclosure, Notice & Reporting > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Funding*

[HN15]29 U.S.C.S. §§ 1021(a), 1022, and 1024(b) state that it is the responsibility of the administrator of an employee benefit plan to distribute a summary plan description to plan participants and beneficiaries.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Disclosure, Notice & Reporting > General Overview*

[HN16]29 U.S.C.S. § 1002(16)(A) defines the term administrator as: (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may be regulated to prescribe. 29 U.S.C.S. § 1002(16)(A).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Failures to Respond*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Penalties*

[HN17]Only the plan administrator may be held liable for penalties pursuant to 29 U.S.C.S. § 1132(c).

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*

[HN18]It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Summary Judgment > General Overview*

[HN19]If the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > General Overview*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Claim Procedures*
[HN20]29 U.S.C.S. § 1133 details the obligations that employee benefit plans must meet in their claims procedures. 29 U.S.C.S. § 1133. First, employee benefit plans must provide adequate notice in writing to participants and beneficiaries setting forth specific reasons for denial anytime claims for benefits under the plan have been denied. 29 U.S.C.S. § 1133(1). Second, plans must afford participants and beneficiaries reasonable opportunity for a full and fair review by the appropriate named fiduciary when a claim is denied. 29 U.S.C.S. § 1133(2).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Civil Procedure > Judgments > Relief From Judgment > General Overview*
[HN21]Fed. R. Civ. P. 8(a) only requires a short and plain statement of the court's jurisdictional grounds and of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the plaintiff seeks. Fed. R. Civ. P. 8(a).

COUNSEL: [*1] For Maureen Heroux, Plaintiff: Robert E. Oneill, Robert E O'Neill, O'Neill & Bockelman, P. C., Lake Forest, IL; Kevin E. Bry, Law Offices of Kevin E. Bry, Franklin Park, IL.

For Humana Insurance Company, a corporation, Defendant: William A. Chittenden, III, Joseph R. Jeffery, Chittenden, Murday & Novotny, LLC, Chicago, IL.

For The Duval Group Ltd, an Illinois corporation, Defendant: William A. Chittenden, III, Joseph R. Jeffery, Chittenden, Murday & Novotny, LLC, Chicago, IL; Alan Michael Kaplan, Masuda, Funai, Eifert & Mitchell, Ltd., Schaumburg, IL; William D Abbott, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, IL.

JUDGES: Judge Joan H. Lefkow.

OPINION BY: JOAN HUMPHREY LEFKOW

OPINION

MEMORANDUM OPINION AND ORDER

Plaintiff, Maureen Heroux ("Heroux"), filed a six-count Second Amended Complaint against defendants, Humana Insurance Company ("Humana"), The Duval Group Ltd. ("Duval"), and the Duval Group Plan, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101 et seq. Humana

has moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Counts I and III of Heroux's [*2] Second Amended Complaint for failure to state a claim upon which relief may be granted. The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132. For the reasons set forth below, defendant's motion is granted in part and denied in part.

MOTION TO DISMISS STANDARDS

[HN1]A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. Jackson v. E.J. Brach Corp., 176 F.3d 971, 977 (7th Cir. 1999); [*3] Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir. 1996).

ALLEGATIONS OF THE COMPLAINT

1    The facts in this section are taken from Heroux's Second Amended Complaint and from Exhibit A, which is attached to Defendant's Motion to Dismiss. Exhibit A is a copy of the Group Insurance Policy with an effective date of June 1, 2000. Humana attached Exhibit A to their Motion to Dismiss. [HN2]The court may "examine documents that a defendant attached to a motion to dismiss . . . if they are referred to in plaintiff's complaint and are central to her claim." Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002). Although a copy of the Policy was not attached to the Complaint, it was referred to therein and central to Heroux's claims.

I. Background

Heroux was employed by Duval from February 14, 1998 until April 19, 2002. (Second Amended Complaint at P 6, hereinafter "P    "). As part other employment with Duval, Heroux received health insurance [*4] coverage consisting of medical and drug coverage for illness or injury through the Duval Group Plan (the "Plan"). (P 7). The Plan is an employee welfare plan within the meaning of ERISA, adopted by Duval prior to April

2002. (P 3). Duval is the Plan's fiduciary and administrator under ERISA. (P 5).

Upon Heroux's departure from her employment with Duval, Duval purported to offer Heroux a three-month severance package that continued her health insurance benefits. (P 6). Duval led Heroux to believe that upon her leaving her employment, her medical insurance was being continued under the provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). (P 10). In order to maintain her health insurance coverage, Heroux made regular payments amounting to over $ 4,000 to Duval from the end of her employment through and including April of 2003. (PP 11, 21).

In a letter dated April 10, 2003, Duval specifically requested payment from Heroux for insurance. (Compl. Ex. B). [2] The letter informed Heroux that her health insurance coverage was expiring on April 30, 2003 and that Duval had not yet received payment for the month of April. *Id.* The letter notified Heroux that if Duval [*5] did not receive payment by April 15, 2003, Duval would end the policy effective March 31, 2003. *Id.* Duval wrote a check in the amount of $ 445.00 on April 11, 2003, which Duval cashed on April 18, 2003. (Compl. Ex. C). [3] Duval paid for Heroux's share of its group insurance policy through April 2003. (P 12).

> 2  Complaint Exhibit B is a collection letter sent to Heroux from Duval. [HN3]The court may consider this exhibit insofar as it is attached to Heroux's Complaint.*Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002); *Beanstalk Group, Inc. v. Am. Gen. Corp.,* 283 F.3d 856, 858 (7th Cir. 2002).
> 3  Complaint Exhibit C is a copy of the cashed check from Heroux to Duval. The court may consider this exhibit insofar as it is attached to Heroux's Complaint. *See Tierney,* 304 F.3d at 738; *Beanstalk Group,* 283 F.3d at 858.

## II. The Relationship Between Humana and the Plan

Initially, the Group Insurance Policy (the "Policy") for the Plan [*6] identified Humana's predecessor, Employee Health Insurance Company, as its "Administrator." [4] (P 4). The Policy defined "Administrator" as "[Humana], who performs administrative functions for the Policyholder." (Def. Motion to Dismiss, Ex. A at Duval 0006).

> 4  The Policy names Employers Health Insurance Company ("EHIC") as the "Insurer." In the Second Amended Complaint, Heroux alleges on information and belief that EHIC is Humana's predecessor. (P 8). For purposes of deciding this motion to dismiss, the court will refer to EHIC as "Humana."

On June 1, 2000, the Policy was amended to redefine Humana as "Insurer" and "Trust Administrator." [5] (Def. Motion to Dismiss, Ex. A at Duval 0023-24). "Insurer" was defined as follows:

> [Humana] in its capacity as administrator for claims determination and ERISA claims review fiduciary exercising its discretionary authority to: (1) interpret policy provisions; (2) make decisions regarding eligibility for coverage and benefits; and (3) resolve factual questions [*7] relating to coverage and benefits. [Humana] shall not be construed to be a fiduciary of the plan other than as described in this definition. [Humana] is not the Plan Administrator of the plan as that term is defined by ERISA.

(Def. Motion to Dismiss, Ex. A at Duval 0024). "Trust Administrator" was defined as Humana "in its capacity of performing administrative functions for the Policyholder." (Def. Motion to Dismiss, Ex. A at Duval 0024). Plaintiff alleges that Humana had authority to control and manage operation and administration of the Plan, in addition to possessing the discretion to grant or deny claims. (P 4). Plaintiff further alleges that Duval relied upon Humana's expertise in the control and management of operation of the Plan, thereby rendering Humana a fiduciary under ERISA. (P 4).

> 5  Heroux objects to Humana's reliance on the June 2000 amendment to the Policy, arguing without citing to any supporting case law that Humana has not established either the efficacy of the amendment or that it acted in a manner consistent with its interpretation of the purported amendment. Heroux, however, does not question the authenticity of the amendment to the Policy or the Policy itself. The court will consider the Policy, including its amendment, for purposes of deciding this motion to dismiss because the Policy's authenticity is not in doubt, it was referenced in the Second Amended Complaint, and it is central to Heroux's claims under ERISA. *See, e.g., Chemetall GMBH v. ZR Energy, Inc.,* 320 F.3d 714, 718 n.4 (7th Cir. 2003) [HN4]("The court need not have treated the motion as one for summary judgment because it confined its analysis to the two contracts, the authenticity of which is not in doubt and which were referenced in the Complaint and central to its breach of contract claim.") (citation omitted).

[*8] **III. Heroux's Claims Against Humana**

The cover pages of the Certificate of Insurance for the health insurance provided under the Plan to Heroux state that Duval is the employer, Heroux is the employee, and that the policyholder is the Trustee of the Employers Health Insurance Benefits Trust. (P 8). The certificate does not state the name of the subject plan. (P 8). During her employment with Duval, Heroux did not receive a summary plan description document, which is required under ERISA § 1022(b) to be provided and to include identification of the Plan. (P 9). Heroux received no other document while employed at Duval that identified the Plan. (P 9).

Duval had informed Humana of Duval's representations to Heroux regarding Heroux's severance package and COBRA coverage. (P 23). In a letter dated March 21, 2003, Humana approved back surgery and related services for Heroux as medically necessary and approved under Heroux's insurance plan. (Compl. Ex. D). Relying upon this letter, Heroux had back surgery at a cost in excess of $ 140,000 in April 2003. (PP 14, 21). After April 30, 2003, Duval claimed that Heroux's insurance coverage had expired prior to April 2003 and attempted [*9] to return the payments Heroux had made for insurance coverage. (P 15). Following its March 21, 2003 letter to Heroux and Heroux's back surgery, Humana claimed Heroux's coverage had expired prior to March 2003. (P 16). Both Duval and Humana have refused to pay for Heroux's back surgery and related services. (P 17).

Heroux timely appealed the refusal of her claim in compliance with the Policy's required claims procedures. (P 18). While the Policy states that Humana will provide written reasons for denial of claims for benefits, neither Humana nor Duval provided specific reasons for the denial of Heroux's claims, in writing or otherwise, until Heroux made a written demand invoking 29 U.S.C. §1133 in this litigation. (P 19). Heroux alleges that the reasons provided in response are pretextual or otherwise erroneous. (P 19). Under the contractual arrangements affecting Heroux's health insurance, Humana would have paid on the claim if such claim were allowed. (P 20).

Heroux subsequently filed this lawsuit, alleging that Humana breached its fiduciary duties to Heroux under §§ 1104 and 1132(c) of ERISA and otherwise (count 1) and that Duval breached its fiduciary duties [*10] to Heroux under §§ 1104 and 1132(c) of ERISA and otherwise (count II). Heroux further alleges that Humana wrongfully denied her benefits, apparently under §§ 1024, 1132(a)(1)(B), and 1133 (count III); that Duval wrongfully denied her benefits, apparently under §§ 1024, 1132(a)(1)(B), and 1133 (count IV); and that the Plan wrongfully denied her benefits, apparently under §§

1024, 1132(a)(1)(B), and 1133 (count V). Finally, Heroux alleges that Duval made false representations to her regarding the continuation of her coverage under COBRA and that she would be insured through April 30, 2003 or later (count VI). In its motion to dismiss, Humana argues that Heroux failed to state a claim under §§ 1104, 1132(c), or "otherwise" (count I) and that Heroux failed to state a claim under §§ 1024 and 1133 (within count III). Humana does not move for dismissal of Heroux's implicit claim under §1132(a)(1)(B) in count III.

**DISCUSSION**

Congress enacted ERISA to "protect ... the interest of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access [*11] to the Federal courts. ... The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 159 L. Ed. 2d 312, 124 S. Ct. 2488 at 2495 (2004) (internal quotations omitted). As such, ERISA carefully defines the roles and responsibilities of each party involved in the operation of employee benefit plans, and provides remedies to plan participants and beneficiaries when those duties are breached.

**I. Count I - Sections 1104 and 1132(c)**

**A. Breach of Fiduciary Duties**

In count I of the Second Amended Complaint, Heroux alleges that Humana breached the fiduciary duties it owed to Heroux as a participant in the Plan under §§ 1104 and 1132(c) of ERISA. In particular, Heroux alleges that Humana (i) failed to inform her that Duval had erroneously considered her a covered employee given the three-month severance package it offered her; (ii) failed to inform her that Duval had erroneously told Heroux her coverage was continued as COBRA coverage; and (iii) failed to inform her of her right to convert to an individual insurance policy, which may have allowed her to obtain health insurance coverage for [*12] the surgery and related services. Humana contends, however, that it cannot be held liable for the fiduciary claims Heroux alleges because (i) Heroux seeks individual relief that is not available to her under §1104 of ERISA and (ii) Heroux fails to allege sufficient facts to demonstrate that Humana owed her a fiduciary duty.

[HN5]Section 1104 of ERISA outlines the duties and standard of care that a fiduciary owes its plan participants and beneficiaries. In particular, §§ 1104(a)(1)(A) and 1104(a)(1)(B) detail the "prudent man standard of care" to which fiduciaries are held, stating that fiduciaries are expected to discharge their duties for

the sole purposes of providing plan participants and beneficiaries benefits and defraying expenses of administering the plan using the care, skill, diligence, and prudence that a prudent man would use under similar circumstances. 29 U.S.C. § 1104(a)(1). However, §1104 does not grant civil enforcement for breach of fiduciary duty.

[HN6]Civil enforcement is instead found in §§ 1132(a)(2) and 1109. See Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 992 (7th Cir. 1993) ("ERISA allows for an action to enforce [*13] and seek appropriate relief because of a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). [HN7]Section 1109 of ERISA makes 'any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries' personally liable.' Id. § 1109(a)."). [HN8]Section 1132(a)(2) states that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under [§1109]." 29 U.S.C. §1132(a)(2). [HN9]"Under Section 1109, liability for breach of fiduciary duty runs only to the plan and not to individual participants or beneficiaries." Kessen v. Plumbers' Pension Fund, Local 130, 877 F. Supp. 1198 at 1205 (N.D. Ill. 1995), citing Anweiler, 3 F.3d at 992. Because Heroux seeks individual relief rather than plan-wide relief, she cannot maintain an action under § 1132(a)(2) or § 1109.

[HN10]Where an individual participant is unable to recover under §§ 1132(a)(2) and 1109 for breach of fiduciary duty, she may pursue an action under the "catchall" claim, § 1132(a)(3), which states that a civil action may be brought "by [*14] a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." Varity Corp. v. Howe, 516 U.S. 489, 512, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996); 29 U.S.C. § 1132(a)(3). In Varity, the Supreme Court found that the language and structure of § 1132 creates a "catchall" in § 1132(a)(3), which acts as a safety net "offering appropriate equitable relief for injuries caused by violations" that are not adequately remedied elsewhere in the provision. Varity Corp., 516 U.S. at 512.

In the instant case, Heroux did not specifically seek a remedy under § 1132(a)(3). Even if she had, however, her claim would be foreclosed by the relief she seeks in count III under § 1132(a)(1)(B). According to Varity, [HN11]the catchall safety net is just that, and "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case [*15] such relief normally

would not be 'appropriate.'" Varity, 516 U.S. at 515. Although the Seventh Circuit has not yet addressed this issue, other courts within the Northern District of Illinois have interpreted this statement to mean that where relief may be obtained under § 1132(a)(1)(B), it cannot also be sought under §1132(a)(3). See, e.g., Brosted v. Unum Life Ins. Co., 349 F. Supp. 2d 1088, 1092 (N.D. Ill. 2004) (plaintiff could not maintain an action under § 1132(a)(3) when he could pursue a claim under § 1132(a)(1)(B)); Hedeen v. Aon Corp., No. 04 C 3360, 2004 U.S. Dist. LEXIS 21706, at *14 (N.D. Ill. Oct. 28, 2004) ("When a direct claim for benefits is available, therefore, a plaintiff cannot seek the same relief under § 1132(a)(3)."); Clark v. Hewitt Assoc., Inc., 294 F. Supp. 2d 946, 949-950 (N.D. Ill. 2003) (unsuccessful claim under § 1132(a)(1)(B) did not justify relief under § 1132(a)(3)). Since Heroux has an adequate remedy under another section of ERISA, she cannot maintain a claim under § 1132(a)(3).

Because Heroux cannot recover on the breach of fiduciary duty claims under §§ 1104, 1109, 1132(a)(2) [*16] or 1132(a)(3), the court need not reach the question of whether Humana owed her fiduciary duties based on these specific allegations. Defendant's motion to dismiss on the breach of fiduciary duties claims against Humana under §1104 is granted.

## B. Failure to Provide a Summary Plan Description

Heroux further alleges that Humana failed to supply her with a summary plan description as required by ERISA in §§ 1021(a), 1022, and 1024(b). [6] This claim is brought pursuant to [HN12]§ 1132(c), which establishes a civil action for an administrator's refusal to supply requested information that an employee welfare plan's administrator is required to furnish to a participant or beneficiary under ERISA. 29 U.S.C. § 1132(c).

> 6   [HN13]Section 1021 (a) mandates that the administrator of each employee benefit plan furnish a summary plan description to each covered participant. See 29U.S.C. § 1021(a). [HN14]Section 1022 details the required contents of the summary plan description. See 29 U.S.C. § 1022. Section 1024(b) sets forth the required timing and procedures for furnishing the summary plan description. See 29 U.S.C. § 1024(b).

[*17] [HN15]Sections 1021(a), 1022, and 1024(b) state that it is the responsibility of the administrator of an employee benefit plan to distribute a summary plan description to plan participants and beneficiaries. [HN16]Section § 1002(16)(A) defines the term "administrator" as

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may be regulation prescribe.

29 U.S.C. § 1002(16)(A). The June 2000 amendment to the Policy explicitly states that Humana is not the Plan Administrator under ERISA and alters Humana's identification from "Administrator" to "Trust Administrator," meaning that it performs administrative functions for the Policyholder. The Policy does not identify any other party as the Plan Administrator for ERISA purposes. Humana contends that the plan sponsor, Duval, is therefore the administrator by default under § 1002(16)(A)(ii), as Heroux claims in the alternative.

Prior to the [*18] June 2000 amendment, the Policy identified Humana as its Administrator. Section 1024(b) mandates that the administrator furnish to each participant a summary plan description within 90 days after he or she becomes a participant. 29 U.S.C. § 1024(b). Heroux started working for Duval in 1998 and was a plan participant. The June 2000 amendment to the Policy does not remove the initial duty owed to Heroux by Humana as Administrator prior to 2000. Accordingly, whether or not Humana's June 2000 amendment to the Policy renders Duval the new plan administrator by default, Humana was the administrator prior to that amendment, and, as such, owed a duty to Heroux to provide her with a summary plan description. Thus, defendant's motion to dismiss plaintiff's claim against Humana for failure to provide a plan summary document under §§ 1021(a), 1022, and 1024(b) must be denied.

C. Failure to Provide Nonpretextual Reason for Denying Claim

Heroux's further alleges that Humana failed to provide her with a reason or nonpretextual reason for denial of her claim and appeal, despite requests for this information. Heroux also asserts this claim pursuant to § 1132(c). [HN17]Only the [*19] plan administrator may be held liable for penalties pursuant to § 1132(c). See Anweiler, 3 F.3d at 994 n.5.

Heroux's claim is subject to the current definition of plan administrator under the Policy as amended in June of 2000 because the condition for which Heroux sought benefits arose in 2003. [7] The amended Policy explicitly

states that Humana is not the Plan Administrator under ERISA and names no other administrator. Because this claim is predicated on the theory that Humana is the plan administrator, then, Heroux's claim against Humana under § 1132(c) cannot stand. [8] Humana's motion to dismiss Heroux's claim against Humana for failure to provide a reason or nonpretextual reason for denial of her claim and appeal is granted.

7 Heroux argues that the amendment to the Policy does not trump the allegations in the Second Amended Complaint and implies that the court is obligated to treat as true the allegations supporting her contention that Humana was the administrator under ERISA. In deciding a motion to dismiss, however, the court is only required to treat well-pleaded allegations as true. See Hickey v. O'Bannon, 287 F.3d 656, 657 (7th Cir. 2002) ("All well-pleaded facts are taken as true and are construed in favor of plaintiff." ). Heroux's allegations with regard to Humana's status as a plan administrator are not well-pled and the court will not take them as true because they conflict with the express terms of the amended Policy, which states that Humana is not the Plan Administrator. See Northern Ind. Gun & Outdoor Shows v. City of S. Bend, 163 F.3d 449 at 454 (7th Cir. 1998) [HN18]("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

[*20]

8 Heroux also contends that because Duval does not ascribe any value to the purported amendment and because Humana's claim that it was not the plan administrator contradicts Duval's position, the court should deny Humana's motion. In support thereof, Heroux attached to her response selected interrogatory responses from Duval, as well as a letter from Duval's counsel. The court declines consideration of these documents, however, because they were not referenced in Heroux's Second Amended Complaint. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1430 (7th Cir. 1996) [HN19]("If the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment."). In addition, Duval's opinion on whether it or Humana was the plan administrator is not relevant for purposes of deciding this motion to dismiss. Here, the court is considering whether Heroux stated a claim against Humana on which relief may be granted, not whether Heroux stated a claim against Duval.

In summary, Humana's motion [*21] to dismiss the fiduciary claims brought under § 1104 is granted; Humana's motion to dismiss plaintiff's claim under § 1132(c) for failure to provide a reason or nonpretextual reason for denial of claim and appeal is granted; but Humana's motion to dismiss Heroux's claim for failure to provide a plan summary document under §§ 1021(a), 1022, and 1024(b) is denied.

## II. Count III - Sections 1024 and 1133

In count III of the Second Amended Complaint, Heroux alleges that Humana wrongfully denied her claim for benefits by failing to properly interpret coverage provisions, failing to consider evidence offered by her, failing to provide her with a full and fair review of her claim, and failing to provide her with the necessary information required under § 1133. Humana acknowledges that while Heroux does not state a claim outright under § 1132(a)(1)(B), this ERISA section is most relevant to the asserted claims. Accordingly, Humana's motion to dismiss count III excludes the claim under § 1132(a)(1)(B) and instead focuses on the claims asserted pursuant to §§ 1024 and 1133.

None of the allegations made by Heroux in count III for wrongful denial of benefits engenders a violation [*22] under § 1024. Rather, plaintiff's allegation under count I against Humana for failing to provide her a summary plan description appears to be the only claim implicating § 1024. That claim was addressed above.

The only remaining claim to be addressed in count III, then, is plaintiff's claim under § 1133. [HN20]Section 1133 details the obligations that employee benefit plans must meet in their claims procedures. 29 U.S.C. § 1133. First, employee benefit plans must provide adequate notice in writing to participants and beneficiaries setting forth specific reasons for denial anytime claims for benefits under the plan have been denied. 29 U.S.C. § 1133(1). Second, plans must afford participants and beneficiaries reasonable opportunity for a full and fair review by the appropriate named fiduciary when a claim is denied. 29 U.S.C. § 1133(2). Heroux appears to be bringing claims under both of these subsections, as she alleges that Humana failed to provide her with a full and fair review of her claim and failed to provide her with "necessary information required under 29 U.S.C. § 1133." Heroux's requested [*23] relief against Humana under this count is an order for Humana (1) to pay all monies due third party medical care providers in connection with her surgery and treatment, (2) to acknowledge that she is a covered member and pay appropriate fines and penalties under ERISA, and (3) to pay her attorneys' fees and costs. Heroux also seeks "such other relief as is just and proper."

Humana contends that the relief Heroux requested in count III is not available in a § 1133 action and that a remand to the administrator for review of her claim denial is, instead, the only available relief. Humana's analysis of the relevant case law in this area and conclusion that remand is typically the most common remedy is correct. As stated above, however, dismissal on a 12(b)(6) motion is only appropriate if it appears beyond a reasonable doubt that Heroux can prove no set of facts in support of her claim that would entitle her to relief. *Kennedy v. Nat'l Juvenile Del. Ass'n,* 187 F.3d 690, 695 (7th Cir. 1999). In addition, [HN21]Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the court's jurisdictional grounds [*24] and of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the plaintiff seeks. Fed. R. Civ. P. 8(a). Here, Heroux requests "such other relief as is just and proper." Thus, even if some of the relief requested is not available in a § 1133 action, Heroux has pled a set of facts for a cause of action arising under § 1133 that, if proven true, would entitle her to some form of relief.

Additionally, not all of the requested relief necessarily falls under the § 1133 claim, as Heroux also asserts a claim under § 1024 and an implicit claim under § 1132(a)(1)(B). Plaintiff's prayer for relief in count III does not specify which relief she anticipates for each of her separate claims. Some of the relief requested may derive from her claims under the other two subsections. Hence, given the liberal standard by which a plaintiff's pleadings must be read under a 12(b)(6) motion to dismiss, defendant's motion to dismiss plaintiff's claim against Humana for failure to follow claim procedures as designated under § 1133 must be denied.

## CONCLUSION

For the reasons stated above, Humana's motion to dismiss [*25] [# 23] is granted in part and denied in part. Humana is directed to answer Plaintiff's Second Amended Complaint on or before June 28, 2005.

Dated: June 8, 2005

Enter:

JOAN HUMPHREY LEFKOW

United States District Judge

# UNREPORTED CASE NO. 6

**DIANA JURGOVAN, Plaintiff, v. ITI ENTERPRISES, et al., Defendants.**

**03 C 4627**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 11489; 33 Employee Benefits Cas. (BNA) 1707**

**June 23, 2004, Docketed**

**DISPOSITION:** [*1] Metropolitan Life's motion to dismiss [10-1] granted. Claims against Metropolitan Life in Count I dismissed and Count II dismissed in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff ERISA plan member sued defendant insurer, alleging a claim under § 502(a)(3) of ERISA, 29 U.S.C.S. § 1132(a)(3), and a claim for equitable estoppel. The insurer moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The participant developed a serious medical condition that required surgical and medical treatment. When all of her expenses were not paid, this ERISA suit followed. The court concluded that the participant was not entitled to equitable relief under § 502(a)(3) of ERISA. The § 502(a)(3) claim against the insurer had to be dismissed because it sought relief that duplicated the relief sought in her claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C.S. § 1132(a)(1)(B). Further, she could not state a claim against the insurer for equitable estoppel. The participant alleged that the insurer knew that her ERISA plan was unfunded and that it had an obligation to tell her this critical fact so she could obtain alternate health benefits. The claim failed, however, as the alleged failure to speak was not based on written materials.

**OUTCOME:** The motion to dismiss was granted.

**CORE TERMS:** equitable relief, estoppel, misrepresentation, restitution, equitable estoppel, insolvent, catchall, unfunded, redress, Federal Rules, benefit plan, medical treatment, alternative pleading, adequate remedy, cause of action, administrator, predecessor, unavailable, processing, construing, surgical, normally, claimant, prevail, albeit, invoke, dictionary

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1]In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > General Overview*
[HN2]If a plaintiff can recover under another section of ERISA, she normally cannot seek relief under § 502(a)(3), 29 U.S.C.S. § 1132(a)(3).

*Contracts Law > Consideration > Enforcement of Promises > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Plan Amendment*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Plan Establishment*
[HN3]A cause of action for equitable estoppel in the ERISA has four elements: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on

that misrepresentation by the plaintiff; (4) to her detriment. Given this demanding standard, arguments that oral misrepresentations estop administrators from enforcing the plans' written terms have been singularly unsuccessful.

**COUNSEL:** For DIANA JURGOVAN, plaintiff: George Donnelly, Edgar P. Petti, Petti Murphy Donnelly & O'Connell, Geneva, IL.

For METROPOLITAN LIFE INSURANCE COMPANY, a corporation suc New England Mutual Life Insuraaance Co., defendant: David Joseph Novotny, Chittenden, Murday & Novotny, LLC, Chicago, IL.

**JUDGES:** Blanche M. Manning, U.S. District Judge.

**OPINION BY:** Blanche M. Manning

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diana Jurgovan was a member of an ERISA welfare benefit plan. Defendant Metropolitan Life and its predecessor provided claims processing services for the plan. Ms. Jurgovan developed a serious medical condition which required surgical and medical treatment. When all of her expenses were not paid, this ERISA suit followed. Metropolitan Life's motion to dismiss is before the court. For the following reasons, Metropolitan Life's motion is granted.

**I. Background**

The following facts are drawn from Ms. Jurgovan's complaint. Defendant Credit Services Group employed Ms. Jurgovan. Credit Services and its affiliated [*2] companies, defendants ITI Enterprises and Intercounty Title Company of Illinois, sponsored and self-funded an ERISA benefit plan which provided hospital, medical, and prescription drug benefits. Ms. Jurgovan was a member of this plan. Defendant Metropolitan Life and its predecessor in interest, New England Mutual Life, provided claims processing services for the plan. According to Ms. Jurgovan, Metropolitan Life had discretionary authority over the plan's administration. Defendant Michael Hermes was the plan administrator.

In February of 2000, Ms. Jurgovan went on maternity leave. While she was on leave, she developed a brain circulation abnormality which required surgical and other medical treatment. On June 23, 2000, before she completed her treatment, she learned that Credit Services had terminated her employment. On June 30, 2000, she received notices regarding her COBRA rights from Credit Services.

Ms. Jurgovan alleges her medical expenses were not paid because Credit Services, ITI Enterprises, and Intercounty Title Company failed to adequately fund the plan. She thus filed a two-count complaint against Credit Services, ITI Enterprises, Intercounty Title Company, Metropolitan [*3] Life, and Mr. Hermes. In Count I, she claims that the defendants knew that the plan was insolvent and had a fiduciary duty to tell her this. She alleges that she would have rearranged her treatment schedule and obtained alternative coverage if she had known that about the plan's true financial condition. She seeks restitution for the medical claims she filed with from all the defendants, jointly and severally. In Count II, which is directed solely at Metropolitan Life, Ms. Jurgovan alleges that Metropolitan Life had a common law duty to advise her of the plan's financial condition and thus is equitably estopped from contesting that it is responsible for the medical claims she filed with the plan.

**II. Discussion**

**A. Standard on 12(b)(6) Motion to Dismiss**

[HN1]In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir. 1992); *Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989).* [*4] Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1579 (7th Cir. 1991).

**B. Count I**

Metropolitan Life contends that Ms. Jurgovan is not entitled to equitable relief against it under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), because: (1) she can receive adequate relief via an action for benefits against the plan under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); and (2) in any event, her claim for restitution is in fact a claim for damages at law, which are not available under § 502(a)(3). Because the court agrees with Metropolitan Life's first argument, it will not reach its alternative contention that Ms. Jurgovan's claim for restitution pursuant to § 502(a)(3) is a claim for damages at law.

According to Metropolitan Life, Ms. Jurgovan's claims against it under § 502(a)(3) are foreclosed because adequate relief is already available via an action for benefits against [*5] the plan. In support, Metropolitan Life points to the Supreme Court's decision in *Varity*

*Corporation v. Howe,* 516 U.S. 489, 515, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996). In that case, the Court, in determining whether plaintiffs could seek relief under § 502(a)(3), stated that § 502(a)(3) was a "catchall provision [that] operate[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 490. The Court also noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case relief would normally not be 'appropriate.'" *Id.* at 515. *Varity* thus stands for the proposition that [HN2]if a plaintiff can recover under another section of ERISA, she normally cannot seek relief under § 502(a)(3).

Metropolitan Life thus vigorously contends that relief under § 502(a)(3) is unavailable because Ms. Jurgovan can seek relief under another section of ERISA -- § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In response, Ms. Jurgovan contends that a cause of [*6] action against an insolvent entity under § 502(a)(1)(B) is inadequate because, by definition, she cannot recoup any monies from a plan that has no money. To resolve this issue, the court must determine whether relief is "unavailable" (thereby making a claim under § 502(a)(3) possible) under *Varity* if a plaintiff has an actionable claim for damages under § 502(a)(1)(B) as opposed to the ability to actually collect on a judgment in her favor under that section.

The vast majority of the courts construing *Varity* have held that when a plaintiff can state a claim under § 502(a)(1)(B), then "reliance under § 502(a)(3), a catchall provision, is unnecessary and inappropriate." *Frommert v. Conkright,* 206 F. Supp. 2d 435, 439 (W.D.N.Y. 2002). Thus, the Eleventh Circuit held that an ERISA plaintiff who can state a claim for relief under § 502(a)(1)(B) cannot alternatively proceed under § 1132(a)(3) because the availability of an "adequate" remedy "does not mean, nor does it guarantee, an adjudication in one's favor." *Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088 (11th Cir. 2000).

Similarly, the Fifth Circuit found the fact that [*7] the plaintiff did not prevail on his claim under § 1132(a)(1) did not make his alternative claim under § 1132(a)(3) viable. *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 610 (5th Cir. 1998). In addition, the Fourth Circuit held that § 502(a)(3) cannot be used where a claimant lacked standing to pursue a claim for allegedly wrongfully denied benefits because ERISA provided a remedy elsewhere, albeit one that the claimant lacked standing to pursue. *Coyne & Delany Co. v. Blue Cross & Blue Shield,* 102 F.3d 712, 716 (4th Cir. 1996).

Numerous other courts have held that claims under § 502(a)(3) and § 502(a)(1)(B) are mutually exclusive. *See, e.g., Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1197 (8th Cir. 1998) (affirming the dismissal of a § 502(a)(3) claim where the plaintiff sought the same relief under § 502(a)(1)(B)); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1475 (9th Cir. 1997) (where plaintiff had sought relief under a specific section of ERISA, he could not also request relief under § 1132(a)(3) because he had an adequate remedy); *Edwards v. Akzo Nobel, Inc.,* 103 F. Supp. 2d 214, 220 (W.D.N.Y. 2000) [*8] (§ 502(a)(3) claim for recovery of benefits is improper due to availability of a remedy under § 502(a)(1)(B)); *Wyluda v. Fleet Financial Group,* 112 F. Supp. 2d 827, 832 (E.D. Wis. 2000) (rejecting § 502(a)(3) claim where the relief sought by the plaintiff under that section was no different from the relief he could seek by filing an action against the plan under a different section of ERISA).

These cases appear to doom Ms. Jurgovan's attempt to seek relief under § 502(a)(3) based on the fact that she cannot receive any money if she prevails on her § 502(a)(1)(B) claim given that the plan is insolvent. At least one court, however, held that *Varity* permits a plaintiff to recover in this circumstance. Specifically, in *Parente v. Bell Atlantic Pennsylvania,* the court found that under *Varity,* "a plaintiff is only precluded from seeking equitable relief under [§ 502(a)(3)] when a court determines that plaintiff will certainly receive or actually receives adequate relief for her injuries under [§ 502(a)(1)(B)] or some other ERISA section." 2000 U.S. Dist. LEXIS 4851, No. 99 C 5478, 2000 WL 419981 *3 (E.D. Pa. Apr 18, 2000).

In support, the court focused on the fact [*9] that in *Varity,* the Supreme Court held that there would "likely be no need for further equitable relief" under § 502(a)(3) if a plaintiff could seek relief under another section of ERISA. *Id.* According to the *Parente* court, this means that the Court did not intend to absolutely preclude relief under § 502(a)(3) if relief was also potentially available elsewhere. *Id.* The *Parente* court also focused on the use of the word "relief" in the statute, noting that "relief" means "redress" so the lack of actual recovery under a specific ERISA section allows a plaintiff to invoke the catch-all provision. 2000 U.S. Dist. LEXIS 4851, [WL] at n.11. Finally, the *Parente* court noted that alternative pleading is proper under the Federal Rules so dismissal of the § 502(a)(3) claim is improper at the motion to dismiss stage. *Id.* It thus denied a motion to dismiss the plaintiff's § 502(a)(3) claim.

The court is not persuaded by the *Parente* court's reasoning. First, its reading of *Varity* focuses on a few specific words in the opinion rather than the opinion's meaning as a whole. In *Varity,* the Court specifically described § 502(a)(3) as a "catchall provision" meant to

provide relief [*10] for injuries that ERISA "does not elsewhere adequately remedy." 516 U.S. at 490. It is true that the Court also observed that where there is an alternative source of relief, there will likely be no need for additional relief under § 502(a)(3). Id. at 515. However, the gist of Varity is that if there is an alternative remedy, then § 502(a)(3) does not come into play.Id. Thus, in Varity, the Court held that the plaintiffs could invoke § 502(a)(3) because ERISA did not provide a remedy elsewhere for their alleged injuries. Id. Here, in contrast, Ms. Jurgovan has a remedy as she can sue under § 502(a)(1)(B). It is a remedy that she understandably does not like, but it is still a remedy nonetheless.

Second, the court disagrees with the Parente court's conclusion that the word "relief" in the statute means that a plaintiff can proceed under § 502(a)(3) if another section does not guarantee that she will receive redress for her claims. See § 502(a)(3) ("a civil action may be brought . . . . to obtain other appropriate equitable relief"). Simply put, this court feels that this interpretation of the word "relief" reads too much into [*11] the statute. [1] Third, the fact that alternative pleading is proper under the Federal Rules is irrelevant under this court's interpretation of Verity because the existence of a claim for relief under § 502(a)(1)(B) (as opposed to the receipt of actual relief under than section) means that relief under § 502(a)(3) is not available as a matter of law.

> [1] The court also notes that interestingly, the word "relief" can mean many things other than "redress." See The Oxford English Dictionary Online (2004), available at http://dictionary.oed.com/ (defining "relief" as, among other things, a payment made to the overlord by the heir of a feudal tenant on taking up possession of the vacant estate, ease from, or lessening of, physical pain or discomfort, an agreeable change of object to the mind or one of the senses, a gradual widening in the bore of a gun-barrel towards the muzzle, assistance given to a person in a state of poverty or want, sustenance, help or succor, release from some occupation or post of duty, a dish succeeding another, deliverance from hardship, release from an obligation, and the giving of food to young hounds after a successful chase).

[*12] Accordingly, Ms. Jurgovan's § 502(a)(3) claim against Metropolitan Life must be dismissed because it seeks relief which duplicates the relief sought in her claim for benefits under § 502(a)(1)(B). This means that the court need not reach Metropolitan Life's alternative argument that Ms. Jurgovan's claim for restitution under § 502(a)(3) is a claim for damages at law, which are not available under § 502(a)(3).

## C. Count II

In Count II, Ms. Jurgovan alleges that Metropolitan Life knew that her ERISA plan was unfunded and that it had an obligation to tell her this critical fact so she could obtain alternate health benefits. According to Metropolitan Life, Ms. Jurgovan's estoppel claim fails because: (1) actions in ERISA cases can only be based on allegations of an intentional written misrepresentation; and (2) estoppel actions are only permissible against unfunded or insured plans, not the plan's claims processor and, in any event, Ms. Jurgovan has alleged that the plan was funded (albeit inadequately). In support, Metropolitan Life directs the court's attention to Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (1999).

In that case, the Seventh Circuit [*13] noted that "it is not easy to apply estoppel principles to ERISA cases in the face of the rule requiring modifications to plans to be in writing, 29 U.S.C. § 1102(a)(1), and the required procedures for amending plans, 29 U.S.C. § 1102(b)(3)." Id. It then conducted an exhaustive survey of cases from the Seventh Circuit and elsewhere and held that [HN3]a cause of action for equitable estoppel in the ERISA "has four elements: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment." Id. It also noted that given this demanding standard, arguments that oral misrepresentations estop administrators from enforcing the plans' written terms "have been singularly unsuccessful." Id., quoting Decatur Memorial Hospital v. Connecticut Gen. Life Ins. Co., 990 F.2d 925, 926-27 (7th Cir. 1993).

Here, the alleged failure to speak was not based on written materials. Thus, Ms. Jurgovan cannot state a claim against Metropolitan Life for equitable estoppel. See id. Ms. Jurgovan's citations to district court cases and Seventh Circuit cases which [*14] predate Coker do not alter this conclusion. In Coker, the Seventh Circuit made it clear that oral statements (or the failure to speak) cannot form the basis of an ERISA equitable estoppel claim. This court is bound to follow Coker, which helpfully synthesizes all of the prior Seventh Circuit authority on this issue and states that it is setting forth the definitive test for ERISA estoppel claims. Kelly v. Apollo Travel Services Partnership, 2000 U.S. Dist. LEXIS 12017, No. 98 C 2506, 2000 WL 1170074 *12 n.14 (N.D. Ill. Aug 16, 2000). Therefore, the court need not attempt to determine the novel issue of whether estoppel can apply to an action which does not involve an unfunded, single-employer plan.

## III. Conclusion

For the above reasons, the court grants Metropolitan Life's motion to dismiss [10-1]. Thus, the claims against Metropolitan Life in Count I are dismissed and Count II is dismissed in its entirety. Pursuant to Rule 54(b), the court certifies that there is no just reason for delay and directs the clerk to enter judgment as to Metropolitan Life. The court thanks counsel for their well-written and thoroughly researched briefs and their excellent responses to the [*15] court's request for supplemental memoranda.

DATE:

Blanche M. Manning

U.S. District Court Judge

# UNREPORTED CASE NO. 7

LEXSEE

**IRENE M. KENDALL, Personally and on Behalf of all similarly situated, Plaintiff, - against- EMPLOYEES' RETIREMENT PLAN OF AVON PRODUCTS and THE RETIREMENT BOARD, As plan administrator, Defendants.**

**03 Civ. 2518 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2007 U.S. Dist. LEXIS 68743**

**September 14, 2007, Decided**
**September 14, 2007, Filed**

**SUBSEQUENT HISTORY:** Affirmed by Kendall v. Employees Ret. Plan of Avon Prods., 2009 U.S. App. LEXIS 6402 (2d Cir. N.Y., Mar. 25, 2009)

**CORE TERMS:** retirement benefit, offset, years of service, retirement age, pension, retirement, accrual, plan year, partial, employee pension, benefit payable, accrue, injury-in-fact, disregarded, pension plan, calculating, disability, credited, employee's benefits, pension benefits, benefit plan, annual rate, current year, discontinuation, disabled, retired, Plan's Rule, standing to assert, disability benefits, anti-backloading

**COUNSEL:** [*1] For Irene M. Kendall, personally and onbehalf of all similarly situated, Plaintiff: Edgar Pauk, LEAD ATTORNEY, Law Offices of Edgar Pauk, Esq., New York, NY.

For Employees Retirement Plan of Avon Products, Retirement Board, as Plan Administrator, Defendants: Jeffrey S. Klein, LEAD ATTORNEY, Nicholas James Pappas, LEAD ATTORNEY, Weil, Gotshal & Manges LLP (NYC), New York, NY.

**JUDGES:** DEBORAH A. BATTS, United States District Judge.

**OPINION BY:** DEBORAH A. BATTS

**OPINION**

**MEMORANDUM & ORDER**

**DEBORAH A. BATTS, United States District Judge.**

Plaintiff Irene M. Kendall, personally and on behalf of all similarly situated, brings suit against Defendants Employees' Retirement Plan of Avon Products, and The Retirement Board, as plan administrator. Plaintiff's Amended Class Action Complaint ("Amended Complaint") alleges that Defendants' employee pension plan, in which Plaintiff is a participant, violates several provisions of the Employee Retirement Income Security Act ("ERISA") and other applicable regulations. Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and on the ground that Plaintiff lacks standing to assert several of the claims contained therein. For the reasons set forth, Defendants' [*2] Motion to Dismiss the Amended Complaint is GRANTED.

**I. BACKGROUND**

Plaintiff is a participant in Defendants' "Retirement Plan of Avon Products" pension plan ("the Plan"). (Amended Complaint P 6.) Under ERISA, the Plan is a defined benefit plan whose "purpose is to provide retirement income to retired participants in the Plan." (Id.) The Plan has been amended a number of times, including in 1977 and in 1994.

Plaintiff was born on September 20, 1937 and began employment with Avon ("employer") on October 9, 1967. (Id. P 11.) On May 25, 1980, Plaintiff "became totally and permanently disabled . . . and began receiving a Social Security Disability Award effective November 1, 1980." (Id.) As a result of her disability, "until her retirement on a pension," Plaintiff received long term disability benefits from her employer. (Id. P 12.) Thus, although unable to work any longer, Plaintiff "continued to accrue years of service under the terms of" Defendants' Plan. (Id.)

In 1995, Plaintiff qualified for a so-called "Rule of 85" early retirement benefit under the Plan ("Rule of 85 benefit"). (Id. P 13.) Under the Plan, the Rule of 85 benefit "provides that, when a participant's age and years of service [*3] add to 85, the participant is entitled to unreduced early retirement benefits." (Id.) Four years after qualifying for the Rule of 85 benefit, "effective August 1, 1999," Plaintiff retired. (Id. P 14.) She was credited with 31.833 years of service. (Id.) Plaintiff's employer "calculated her pension to be $ 529.78 as a single-life annuity with no survivor's benefits, equivalent to a lump sum of $ 78,093.48." (Id.) Plaintiff chose to receive her pension "partially as a lump sum and partially as an annuity, which she continues to receive to date." (Id.)

Plaintiff alleges that, but for "several ERISA violations in the terms of the Plan," the early retirement benefit pension that she accepted under the Plan should have been higher. (Id. P 15.) Exactly how much higher her pension should have been, she alleges, "will be known only after reformation of the Plan to bring it into compliance with ERISA." (Id.)

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995) [*4] (citations omitted). "The district court should grant a motion only if, after viewing the plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). A court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." First National Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994), cert. denied, 513 U.S. 1079, 115 S. Ct. 728, 130 L. Ed. 2d 632 (1995).

### B. The First Claim: Defendant's Rule of 85 Early Retirement Benefit Is Disregarded for Purposes of Measuring the Plan's Compliance with ERISA's 133 1/3 Percent Anti-Backloading Test

Plaintiff's First Claim alleges that the structure of Defendants' Plan, specifically the Plan's Rule of 85 early retirement benefit, violates ERISA's applicable "anti-backloading" provision, ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B). (Amended Complaint PP 27-30.) "Backloading" is "a term of art describing a [pension] plan's use of a benefit accrual formula that postpones the bulk of an employee's accrual to her later years of service." In re Citigroup Pension Plan ERISA Litiga-

tion, 470 F. Supp.2d 323, 333 (S.D.N.Y. 2006); [*5] see also Campanella v. Mason Tenders' District Council Pension Plan, 299 F. Supp.2d 274, 283-84 (S.D.N.Y. 2004) ("A plan 'backloads' pension benefits when it 'provide[s] inordinately low rates of accrual in the employee's early years of service when he is most likely to leave the firm and concentrat[es] the accrual of benefits in the employee's later years of service when he is most likely to remain with the firm until retirement") (quoting H.R. Rep. No. 93807 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4688). "To combat backloading, ERISA requires plans to accrue benefits relatively evenly over the course of an employee's career." In re Citigroup Pension Plan ERISA Litigation, 470 F. Supp.2d at 333. ERISA provides that pension plans must comply with at least one of three statutory tests that are designed to ensure that the rate at which an employee's benefits accrue under a pension plan is within a range that does not constitute unlawful backloading. Id.

The Parties agree that of the three statutory tests, the only one applicable to Defendants' Plan is the 133 1/3 percent test set forth in 29 U.S.C. § 1054(b)(1)(B) (the "statute"):

> A defined benefit plan satisfies the requirements [*6] of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph --
>
> (i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;
>
> (ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;
>
> (iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded; and
>
> (iv) social security benefits and all other relevant factors used to compute benefits shall be treated as remaining con-

stant as of the current year for all years af-
ter the current year.

<u>ERISA § 204(b)(1)(B)</u>; <u>29 U.S.C. § 1054(b)(1)(B)</u>. [*7]
Regulations enacted pursuant to this statutory provision
explain how compliance with the 133 1/3 percent rule is
determined:

(i) General rule. A defined benefit plan
satisfies the requirements of this subpara-
graph for a particular plan year if--

(A) Under the plan the
accrued benefit payable at
the normal retirement age
(determined under the
plan) is equal to the normal
retirement benefit (deter-
mined under the plan), and

(B) The annual rate at
which any individual who
is or could be a participant
can accrue the retirement
benefits payable at normal
retirement age under the
plan for any later plan year
cannot be more than 133
1/3 percent of the annual
rate at which he can accrue
benefits for any plan year
beginning on or after such
particular plan year and be-
fore such later plan year.

<u>26 C.F.R. § 1.411(b)-1(b)(2)</u>.

Plaintiff provides calculations demonstrating that if
an employee elects to take the Rule of 85 early retire-
ment benefit under the Plan, she may find that, under
certain circumstances, the rate of accrual for her pension
increases from one year to the next by more than the
maximum rate of 133 1/3 percent allowed by the statute.
(Amended Complaint PP 20-27.) Plaintiff therefore [*8]
claims that the Plan is unlawfully backloaded. As Plain-
tiff acknowledges, however, there is no question that the
Rule of 85 benefit under the Plan is an early retirement
benefit that an employee may elect to receive prior to
reaching the normal retirement age of 65. (See Corrected
Pappas Aff. Ex. A §§ 1.31, 1.39, 1.40, 5.2 & 6.1(d);
Amended Complaint P 13.)

The clear language of the statute provides that when
measuring a pension plan's compliance with the 133 1/3

percent test, "the fact that benefits under the plan may be
payable to certain employees before normal retirement
age shall be disregarded." <u>29 U.S.C. § 1054(b)(1)(B)(iii)</u>.
The applicable regulation governing compliance with the
133 1/3 test provides the same:

Early retirement benefits. The fact that
certain benefits under the plan may be
payable to certain participants before
normal retirement age is disregarded.
Thus, the requirements of <u>subdivision (i)</u>
of this subparagraph must be satisfied
without regard to any benefit payable
prior to the normal retirement benefit
(such as an early retirement benefit which
is not the normal retirement benefit (see §
1.411(a)-7(c)).

<u>26 C.F.R. § 1.411(b)1-(b)(2)(ii)(C)</u>. Plaintiff's convo-
luted [*9] arguments notwithstanding, it is plain that
early retirement benefits are disregarded for purposes of
measuring the Plan's compliance with the statute's appli-
cable anti-backloading provision. Since the statute and
the applicable regulation both clearly provide that early
retirement benefits such as the Plan's Rule of 85 benefit
are not subject to the 133 1/3 percent test, it follows that
Plaintiff's First Claim, alleging that the Rule of 85 bene-
fit violates the 133 1/3 percent test, fails to state an ac-
tionable claim. See <u>Engers v. AT & T, No. 98-3660
(SRC), 2007 U.S. Dist. LEXIS 47, 2007 WL 14585, at *
4 (D.N.J. Jan. 3, 2007)</u> (noting that the plain meaning of
<u>29 U.S.C. § 1054(b)(1)(B)(iii)</u> "instructs the reader to
disregard the payment of early retirement benefits" and
also that "<u>26 C.F.R. 1.411(b)1-(b)(2)(ii)(C)</u> clearly states
that the 133 1/3% rule does not apply to early retirement
benefits"). Accordingly, Defendants' Motion to Dismiss
the Amended Complaint's First Claim pursuant to <u>Fed.
R. Civ. 12(b)(6)</u> is GRANTED.

C. Plaintiff Lacks Standing to Raise the Second, Third,
Seventh, Eighth and Ninth Claims

A plaintiff seeking to invoke federal jurisdiction
must establish that she has standing to sue under Article
III of the Constitution [*10] by demonstrating: (1) that
she suffered an injury-in-fact; (2) a causal connection
between the injury and the objectionable conduct she
seeks to remedy; and (3) that injury will be remedied
by the requested relief. <u>Lujan v. Defenders of Wildlife,
504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d
351 (1992)</u>. "Without a plaintiff's satisfaction and dem-
onstration of the requirements of Article III standing, a
federal court has no subject matter jurisdiction to hear
the merits of a plaintiff's -- or, in this case, the class
plaintiffs' -- claim . . . ." <u>Central States Southeast and</u>

Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC, 433 F.3d 181, 198 (2d Cir. 2005).

1. The Second Claim

Plaintiff's Second Claim alleges that Defendants' Plan violates the 133 1/3 percent test provided for in the statute in yet another way. Plaintiff's Second Claim alleges that Defendants' Plan violates 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F), a regulation governing compliance with the statute. (Amended Complaint P 33.) The regulation provides that the 133 1/3 percent test is not satisfied if "the [*11] base for the computation of retirement benefits changes solely by reason of an increase in the number of years of participation." 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F).

Plaintiff points to the Plan's formula for calculating an employee's pension benefits and notes that it features an offset for Social Security benefits paid for by the employer on behalf of the employee. (Amended Complaint P 32; Corrected Pappas Aff. Ex. A § 5.1.) Defendants explain that under the Plan, the employer pays not only the full cost of employees' pension benefits but that it also pays for half the cost of employees' Social Security benefits. (Defs.' Mem. at 5.) The Summary Plan Description, dated 1980, provided to employees covered under the Plan gives the following explanation of the Social Security offset:

> The reason Social Security is used in figuring your pension is to reflect the cost which Avon pays for these benefits. The maximum offset for 40 years of Creditable Service is never more than that part of your Social Security paid for by Avon, since you and Avon share the cost of Social Security on a 50/50 basis all during your career. And Avon -- as noted -- pays the full cost of your Retirement Plan benefits [*12] as well.

> Please note that the Social Security offset has no effect on the benefits you receive from Social Security. You get this added income entirely on top of your pension. And if Social Security payments increase after you retire, these higher government payments will simply add to the total income you receive.

(Corrected Pappas Aff. Ex. B.) Defendants assert that because of the Social Security contribution the employer makes, the Plan includes "a lawful reduction for Social Security in the value of the pension benefits, called the 'Social Security offset,' based on or made 'to reflect Avon's contribution for these benefits.'" (Defs.' Mem. at 6.)

Plaintiff does not allege that the use of a Social Security offset in Defendants' Plan is unlawful. Plaintiff takes issue, however, with the fact that the Plan discontinues the Social Security offset in calculating benefits once an employee has rendered "50 (previously 40) years of credited service." (Amended Complaint P 32.) According to Plaintiff, the Plan's discontinuation of the Social Security offset after fifty years of service means that an employee's pension benefit will increase by more than 133 1/3 percent between her fiftieth and [*13] fifty-first years of service. Therefore, Plaintiff alleges, "[b]y discontinuing the Social security offset based solely upon an increase in years of service, the Plan changes the base of the computation" in violation of 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F). (Id. P 34.)

Defendants move to dismiss Plaintiff's Second Claim on the grounds that (1) Plaintiff has not alleged that she was injured by the fact that the Plan discontinues the Social Security offset after the fiftieth year of service and (2) that, in any event, the operation of this particular provision of the Plan never violates the statutory 133 1/3 percent test. Defendant argues that "Plaintiff is not harmed by the discontinuation of the Social Security offset after 50 years of service, because she retired after only 32 years of service . . . ." (Defs.' Reply at 4, n.3.) Plaintiff indeed acknowledges that she retired with "31.833 years of credited service." (Amended Complaint P 14.) The obvious implication is that regardless of whether the Plan's discontinuation of the Social Security offset "changes the base of the computation," in violation of 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F), for some employees, at some point, the Social [*14] Security offset was never discontinued in the calculation of Plaintiff's pension. [1]

> 1 As noted by Defendants, the change in the rate of an employee's benefit accrual occasioned by the discontinuation of the Social Security offset has no bearing on the "base" used to compute an employee's pension under the Plan. For purposes of 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F), "the average monthly pay constitutes the 'base.'" Carollo v. Cement And Concrete Workers Dist. Council Pension Plan, 964 F. Supp. 677, 682 (E.D.N.Y. 1997). Thus "[a]lthough an employer may, of course, raise salaries after 25 years of service and thereby change the base, it may not change the base because of length of service." Id.

Plaintiff seeks injunctive relief, specifically, the reformation of Defendants' Plan, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (Amended Complaint

2007 U.S. Dist. LEXIS 68743, *

P 3.) That provision provides statutory standing to "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the [*15] terms of the plan." 29 U.S.C. § 1132(a)(3). However, "even where statutory standing pursuant to ERISA is satisfied, the elements of Article III standing must still be met, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" Banyai v. Mazur, No. 00 Civ. 980 (SHS), 2007 U.S. Dist. LEXIS 25275, 2007 WL 959066, at * 2 (S.D.N.Y. 2007) (quoting Raines v. Byrd, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). In order to support Article III standing, a "plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." Baur v. Veneman, 352 F.3d 625, 633 (2d Cir. 2003). "Moreover, the named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Id. (quoting Warth v. Seldin, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

Since Plaintiff worked for fewer than fifty years before retiring, the Social Security offset was never discontinued for the purposes of calculating [*16] her pension under the Plan. [2] Plaintiff therefore cannot allege any injury-in-fact as a result of the Plan's discontinuance of the Social Security offset after fifty years of service. Accordingly, since Plaintiff has failed to allege injury-in-fact, the Second Claim is DISMISSED for Plaintiff's lack of standing.

> [2] Additionally, Defendants demonstrate that it is mathematically impossible for the discontinuance of the Social Security offset to violate the statute's 133 1/3 percent test. The statutory test applies only to "the accrued benefit payable at the normal retirement age" or to the equivalent "normal retirement benefit." 29 U.S.C. § 1054(b)(1)(B) (emphasis added). Under the Plan, the normal retirement age is 65. (Amended Complaint P 17.) Given that the earliest that an employee could legally begin working is at age sixteen and "[b]ecause of the mathematical fact that the 50 years of service always expire after a participant is over age 65, Plaintiff has not and cannot state a claim that the discontinuation of the Social Security offset can ever unlawfully increase the rate of accrual of the benefit *payable at normal retirement age*," i.e. at age 65. (Defs.' Re-

ply at 12.) Thus even [*17] if Plaintiff could allege an injury-in-fact, her Second Claim would still fail to state an actionable claim.

## 2. The Third Claim

Plaintiff's Third Claim challenges section 5.1 of the Plan, alleging that it runs afoul of ERISA by providing that "upon the attainment of age 25, a participant's rate of accrual is reduced by 1.25 % of his Social Security Benefit, while providing for no Social Security offset before that age." (Amended Complaint PP 36-37.) The relevant provision of ERISA provides that:

> [A] defined benefit shall be treated as not satisfying the requirements of [the 133 1/3 percent test] if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

Defendant observes, however, that "Plaintiff has not been injured by this alleged violation because she was more than 25 years old when ERISA § 204(b)(1)(H) was enacted in 1986, and thus she never suffered a decrease in her rate of accrual when she turned 25." (Defs.' Reply at 13.) Moreover, Plaintiff began working for her employer under the Plan when she was thirty years old, in 1967. (Amended [*18] Complaint P 11.) Since Plaintiff cannot allege any injury-in-fact as a result of section 5.1 of the Plan, she lacks standing to assert the Third Claim, alleging that the Plan violates 29 U.S.C. § 1054(b)(1)(H)(i). Accordingly, the Third Claim is DISMISSED.

## 3. The Seventh, Eighth and Ninth Claims

The Seventh, Eighth and Ninth Claims are all premised on the allegation that the Plan's "method of annualizing a partial year of compensation" when calculating an employee's pension benefit violates 26 C.F.R. § 1.411(a)-7(c)(5). That regulation provides, in pertinent part:

> If a defined benefit plan bases its normal retirement benefits on employee compensation, the compensation must reflect the compensation which would have been paid for a full year of participation . .
> . .

26 C.F.R. § 1.411(a)-7(c)(5). Plaintiff alleges that section 1.5 of the Plan violates the regulation by providing that where an employee has worked for only part of a year in

"any of the last ten years of service," the compensation earned during that partial year is annualized according to a "composite" method that "will always yield a lower compensation" than would a method that annualizes "the partial year of compensation based [*19] on the salary rate in effect in the partial year." (Amended Complaint PP 62-63.)

Defendants contend that Plaintiff herself was not actually affected by section 1.5 of the Plan because her partial year of employment was calculated under a different section of the Plan that credited her with a full year's compensation for the partial year she worked in 1980. (Defs.' Reply at 16.) Plaintiff "became totally and permanently disabled on May 25, 1980" and thereafter received "long term disability benefits from Avon's Long Term Disability Plan" until her retirement in 1999. (Amended Complaint PP 11-12.) Plaintiff acknowledges that as a disabled participant in the Plan, "the amount of her benefits is not governed by Section 1.5, but by Section 5(7)." (Pl.'s Opp. at 32.) Defendant notes that, actually, as a result of an amendment to the Plan in 1994, the provision of the Plan that applies to the annualization of Plaintiff's partial year of service is section 1.10(d). (Defs.' Mem. at 26.) Defendants assert, without contradiction by Plaintiff, that pursuant to sections 1.10(d) and 1.41(b), the Plan "deemed her actual compensation in the year her absence began (i.e. her compensation in 1980, which [*20] was $ 22,241.24) to be her compensation for each year while she was on disability." (Id. at 27.) In calculating her pension benefit, Defendants' Plan thus credited Plaintiff with a full year's compensation for the last partial year that she worked. Defendants have therefore demonstrated that Plaintiff does not, and cannot, allege injury-in-fact based on the operation of section 1.5 of the Plan. Accordingly, because Plaintiff lacks standing to assert that section 1.5 of the Plan violates 26 C.F.R. § 1.411(a)-7(c)(5), the Seventh Claim is DISMISSED. The Eighth and Ninth Claims, which are derivative of the Seventh Claim, are also DISMISSED.

D. Defendants Have Demonstrated that the Fourth Claim is not Actionable

Plaintiff's Fourth Claim alleges that the Plan violates ERISA and the applicable regulations because the Rule of 85 early retirement benefit that she elected to receive provided her with a greater pension than she would have received had she elected to take the normal retirement benefit at age sixty-five. (Amended Complaint PP 44-45.) Using the same sample figures advanced by Plaintiff, Defendants demonstrate that, in fact, employees' pension benefits under the Plan are greater at [*21] the normal retirement age of sixty-five than they are at the earliest Rule of 85 early retirement age. (Defs.' Mem. at 19-23.) The reason that the calculations contained in the Amended Complaint are flawed, Defendants show, is

that Plaintiff incorrectly "assumes that because the Social Security offset is lowest at the point when a participant first becomes eligible for the Rule of 85, the benefit at the earliest date of eligibility for the Rule of 85 must be greater than the benefit payable at normal retirement age." (Defs.' Reply at 15.) This assumption:

> completely ignores the fact that although a participant's Rule of 85 subsidy continues to decrease as the employee approaches age 65, the retirement benefit would continue to increase, because each additional year of creditable service and compensation that the employee earns as she approaches the normal retirement age more than outweighs the diminishing subsidy to the Social Security offset."

(Id.) Although Defendants raised this point in their moving papers, neither Plaintiff's opposition nor her sur-reply provide an adequate response. The Court thus finds that Defendants have conclusively demonstrated that an employee's pension benefits [*22] received under the Plan at the normal retirement age of sixty five are greater than at any Rule of 85 early retirement age and that Plaintiff's Fourth Claim is based on an unfounded assumption. Accordingly, Defendants' Motion to Dismiss the Fourth Claim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

E. Plaintiff Concedes that the Fifth and Sixth Claims are Without Merit

Plaintiff's Fifth and Sixth Claims are based upon a change in the definition of the "Average Final Compensation" (the "AFC") used to calculate pensions under the Plan. (Amended Complaint PP 48-49.) The definition of the AFC in effect in the 1977 version of the Plan was changed in 1994. (Id.) Plaintiff alleges that the 1994 definition of the AFC, provided in section 1.10(d) of the Plan, "does not provide for annualizing a partial year of compensation" and therefore causes "the amount of pension to be smaller than under the prior definition" for employees who receive Long Term Disability under the Plan. (Id. P 51.) Plaintiff therefore requests that her pension be calculated based on the AFC formula provided in the 1977 version of the Plan. (Id. P 55.)

Defendants point out that under the challenged section 1.10(d) of the [*23] 1994 version of the Plan, Plaintiff actually receives a greater pension benefit than she would under the 1977 version. (Defs.' Mem. at 26.) In her opposition, Plaintiff concedes that "[i]n pleading the Fifth and Sixth Claims, Plaintiff overlooked Section 5(7) of the 1977 Plan, as correctly pointed out by Defendants in their Memorandum." (Pl.'s Opp. at 32, n.22.) Plaintiff

thus states that she "is not contesting the dismissal of those two Claims." (Id.) In light of Defendants' showing that Plaintiff is better off as a result of the 1994 change in the AFC's definition and because Plaintiff concedes the point, Defendants' Motion to Dismiss the Fifth and Sixth Claims pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. [3]

3 In her sur-reply, Plaintiff seeks leave to retract the concession she made with respect to the Fifth and Sixth Claims. (Pl.'s Sur-Reply at 2, n.3.) She appears to base the request on the contention that section 1.5 of the 1994 version of the Plan is "fully applicable to disabled Avon employees who, like Plaintiff, received long term disability benefits from Avon prior to retirement." (Id. at 2.) It is unclear to the Court what relevance that contention has to the Fifth and [*24] Sixth Claims, which challenge section 1.10(d) of the Plan. In any event, Plaintiff does not contest the point that the application of section 1.10(d) of the

1994 version of the Plan works to her benefit. The request to retract the concession is accordingly denied.

III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First, Fourth, Fifth and Sixth Claims pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Plaintiff's Second, Third, Seventh, Eighth and Ninth Claims are DISMISSED for Plaintiff's lack of standing. The Amended Complaint is DISMISSED. The Clerk of Court is directed to close the docket for this case. SO ORDERED.

Dated: New York, New York

September 14, 2007

DEBORAH A. BATTS

United States District Judge

# UNREPORTED CASE NO. 8

**PHIL MICELI, Plaintiff, v. AETNA LIFE INSURANCE COMPANY; and ADP TOTALSOURCE, INC., Defendants.**

**No. 05 C 4846**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2006 U.S. Dist. LEXIS 8270**

**March 1, 2006, Decided**

**CORE TERMS:** breach of fiduciary duty, breach of contract, law claims, preempted, medical bills, preempt, insurance policy, state law, breach of contract, entitle, refusal to pay, cancer

**COUNSEL:** [*1] For Phil Miceli, Plaintiff: Eric J. Parker, Michael S. Baird, Stotis & Baird, Chicago, IL.

For Aetna Life Insurance Company, Defendant: Leslie Dean Davis, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL.

For ADP Totalsource Inc, Defendant: Michael T. Graham, McDermott, Will & Emery LLP (Chicago), Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Court Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Phil Miceli, filed suit against Defendants, Aetna Life Insurance Company and ADP Totalsource, Inc., alleging a violation of the Employee Retirement Income Security Act ("ERISA") (Count I); breach of contract (Count II); and breach of fiduciary duty (Count III). Presently pending before the Court is ADP's Motion to Dismiss Counts II and III.

**BACKGROUND**

A reading of Plaintiff's Complaint supports the following summary of the alleged conduct of the parties.

On or about October 17, 2002, ADP issued a health insurance policy to Miceli that was underwritten by Aetna. Since the time the health insurance policy was issued, Miceli has remained current in his financial obligations to Defendants. On or about July 2, 2004, Miceli was diagnosed [*2] with cancer and began receiving treatment, which produced reasonable and customary medical bills. Defendants ADP and Aetna have refused to pay a significant portion of the medical bills stemming from Miceli's cancer treatments even though the unpaid bills are payable under Miceli's health insurance policy. As a result of Defendants' refusal to pay the medical bills, numerous hospitals and physicians have sought reimbursement directly from Miceli.

In light of Defendants' refusal to pay his medical bills, Miceli filed the instant Complaint. ADP filed a Motion to Dismiss Counts II and III of the Complaint.

**ANALYSIS**

ADP seeks to dismiss Counts II and III of Miceli's Complaint, contending that they are preempted by ERISA if they are pled under Illinois common law and, in the alternative, if Counts II and III arise under ERISA, that they are foreclosed by Supreme Court precedent.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted only [*3] if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). If there are no set of facts that would entitle the plaintiff to relief, dismissal is warranted. *See Stachowski v. Town of Cicero,* 425 F.3d 1075, 1078 (7th Cir. 2005) (*Stachowski*).

ERISA provides Miceli with the right to bring a civil action in order to recover his benefits. 29 U.S.C. § 1132. ERISA also, however, preempts certain claims and limits the ways a plaintiff can attempt to recover damages.

ERISA claims will usually preempt any state law claims that seek benefits under an ERISA plan as a remedy. 29 U.S.C. § 1144(a). Generally, if the state law claim is specifically related to the ERISA plan, ERISA will preempt any related state law claim. If the existence of an ERISA plan is a critical factor in establishing liability under state law, the state law claim relates to an ERISA plan and is preempted. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990). Furthermore, state law claims for [*4] breach of contract and breach of fiduciary duty are preempted by ERISA and should be dismissed when they relate to or have a connection with a plan governed by ERISA. See Collins v. Ralston Purina Co., 147 F.3d 592 (7th Cir. 1998); Plumb v. Fluid Pump Serv. Inc., 124 F.3d 849, 857 (7th Cir. 1997).

Miceli, apparently, is attempting to bring his breach of contract and breach of fiduciary duty claims under state law; the existence of the ERISA plan is, therefore, critical to establishing grounds for the claims. [1] Without the ERISA plan issued to Miceli, there simply would be no grounds for either a breach of contract or breach of fiduciary duty claim. As such, Miceli's claims of breach of contract and breach of fiduciary duty, as state law claims, are preempted and are properly dismissed at this time.

    1  Miceli's Complaint does not specifically indicate whether Counts II and III are brought under Illinois Common Law or ERISA.

If Counts II and III are to be considered as claims [*5] of breach of contract and breach of fiduciary duty under ERISA Section 502(a)(2) or 502(a)(3), he is barred from seeking relief under ERISA Section 502(a)(2). Any actions to enforce plan rights under § 502(a)(2) must be "brought in a representative capacity on behalf of the plan as a whole." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985). According to the Complaint, however, Miceli is only seeking compensatory damages for himself. Since § 502(a)(2) does not provide a remedy for individual beneficiaries, Miceli is barred from bringing either his breach of contract or breach of fiduciary duty claims under § 502(a)(2).

Alternatively, if Counts II and III are intended to claim a breach of contract and a breach of fiduciary duty under ERISA Section 502(a)(3), they would also be barred. Section 502(a)(3) is meant to act as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996) (Varity). Accordingly, in order to seek relief under 502(a)(3), Miceli must show that he cannot rely on another ERISA subsection [*6] for relief. See Varity, 516 U.S. at 515. If a plaintiff is unable to recover benefits due to him under his plan using a different subsection, fairness dictates that § 502(a)(3) may be used. If a plaintiff's alleged injury can be redressed through a § 502(a)(1) claim, however, a § 502(a)(3) claim is barred. See Varity, 516 U.S. at 515. In Count I, Miceli brings an ERISA claim under § 502(a)(1)(B) for wrongful denial of benefits. [2] As such, additional claims requesting identical relief are inappropriate; and Miceli cannot allege breach of contract and/or fiduciary duty under § 502(a)(3).

    2  Miceli does not specify, in Count I, which section of ERISA the claim is based. As argued by ADP and not denied by Miceli, it appears that the claim is brought under Section 502(a)(1)(B).

## CONCLUSION

For the foregoing reasons, Defendants's Motion to Dismiss Counts II and III is granted; and Counts II and III of Plaintiff's Complaint are dismissed with prejudice.

Dated: March 1, 2006

[*7] JOHN W. DARRAH

United States District Court Judge