

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTINE LEONARDO, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | No. 09 C 1588 |
| v. ) ) | The Honorable William J. Hibbler |
| HEALTH CARE SERVICE CORPORATION, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Justine Leonardo, a former participant in a health insurance plan (the Plan) administered by Defendant Health Care Service Corporation's (HCSC), brings this purported class action lawsuit pursuant to Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3). In her Amended Complaint, she alleges that HCSC failed to fairly adjudicate claims she made for benefits for "out-of-network services" by: (1) basing its decisions on information gleaned from skewed databases; and (2) failing to provide her with all of information relevant to those adjudications. She requests various forms of relief, including payment of underpaid benefits, restitution, disgorgement, and injunctive relief in the form of reformation of HCSC's claims adjudication procedures. HCSC now moves to dismiss her suit, arguing that it is an improper defendant with regard to portions of the Amended Complaint, and that the remainder of the Amended Complaint fails to state a claim. For the reasons set forth below, the Court DENIES HCSC's motion. In addition, the Court orders the parties to appear for an evidentiary hearing in order to resolve the issue of whether the HCSC is a proper defendant.

## BACKGROUND

During the relevant time period, Leonardo was employed by a law firm in Texas named Brent Coon & Associates. During her employ, she was a member of the Plan, the firm's group health coverage. Leonardo alleges that HCSC administered and funded the Plan. Thus, HCSC adjudicated and paid claims for benefits under the Plan.

The Plan provided different benefits for services provided by "in-network" providers and "out-of-network" providers. In-network providers were providers that contracted with HCSC to provide services at discounted rates. Out-of-network providers did not contract with HCSC for their rates and, thus, HCSC only paid benefits for services provided by these providers on the basis of an "Allowable Amount." Leonardo alleges that this "Allowable Amount" was based on the usual, customary and reasonable (UCR) amount charged for the services in question.

Leonardo's complaint is based in large part on the method HCSC used to calculate this "Allowable Amount." HCSC relied on data from databases compiled by a third party, Ingenix, Inc. Ingenix databases are purportedly a source for data regarding the prevailing charges for particular health care services. However, Leonardo argues that the databases are fundamentally flawed because Ingenix manipulates the data to skew the prevailing charges downward. In addition, HCSC relied on outdated Ingenix data. Thus, Leonardo contends, by relying on the Ingenix databases, HCSC underestimates the appropriate "Allowable Amount" and underpays benefits for out-of-network services.

In Count I, Leonardo makes a claim for those underpaid benefits under § 502(a)(1)(B) of ERISA. In Count II, she claims that HCSC breached its fiduciary duties by relying on the Ingenix data. Count II is also based on HCSC's failure to provide a fair and transparent claims

adjudication process, in part by failing to adequately disclose its reliance on the faulty Ingenix data.

Notably, Leonardo does not attach a copy of the Plan's terms, called the "Evidences of Coverage," to her complaint, nor does she name the Plan in her allegations, or as a defendant. Apparently, although Leonardo was provided with a copy of the Evidences of Coverage at the time of her employment with Brent Coon & Associates, she did not have a copy of the Plan when she filed her Amended Complaint. In her response brief, she explains that she requested a copy from HCSC's counsel prior to her filing, but that counsel did not provide a response to her request until after her filing. She attaches the document that HCSC eventually provided to her response brief. However, she expresses doubts about whether it is the proper plan document that governs the benefits at issue here, in part because the group number on the plan does not match other documents she has in her possession.

## *DISCUSSION*

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

## II. Claim for benefits under § 502(a)(1)(B)

HCSC challenges Count I of Leonardo's complaint on two grounds. First, the company argues that it is an improper defendant in a case under § 502(a)(1)(B) because the only proper defendant is the Plan itself. Second, it argues that Leonardo's complaint fails to state a claim because it does not identify specific plan provisions that entitle her to the benefits at issue. As detailed below, the Court cannot make a determination as to the proper defendant in this case based on the record before it at this stage in the proceedings. For related reasons, the Court rejects HCSC's second argument. The Court therefore denies HCSC's motion, and orders that the parties appear before the Court for an evidentiary hearing so that the Court can make a determination regarding who the proper defendant is in this case.

### A. Proper defendant

HCSC's primary argument is that the only proper defendant in a claim under § 502(a)(1)(B) is the plan itself, rather than the plan administrator, absent exceptional circumstances that it asserts are not present here. However, as part of that argument, the company claims that it is not even the plan administrator, but the claims administrator for the Plan, and that it does not pay out benefits for the Plan as Leonardo alleges. HCSC argues that these facts further undermine Leonardo's attempts to sue HCSC for its role in the allegedly unfair scheme. HCSC thus urges the Court to consider these facts despite the fact that they are drawn solely from the language in the document attached to Leonardo's response brief. HCSC claims that this is the proper, governing document.

The Court cannot consider the language in the document attached to Leonardo's response brief in deciding this motion. In the Amended Complaint, Leonardo alleges that HCSC is the plan administrator and that HCSC funds the Plan. As noted above, the Court must treat all well-

pleaded allegations as true. *Disability Rights Wisc.*, 522 F.3d at 799. HCSC correctly points out that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotation omitted). HCSC is also correct that "a plaintiff may plead [her]self out of court by attaching documents...that indicate that...she is not entitled to judgment." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (internal quotation omitted). However, Leonardo did not attach the document in question to her complaint, and she disputes that it is what HCSC claims it is. Thus, while Leonardo does frequently refer to the Plan documents in her complaint, the Court cannot determine whether she is referring to the document attached to her response brief. For this reason, the Court refuses to apply the "narrow exception" detailed above to the general rule that when additional evidence is introduced as part of the briefing on a motion to dismiss, "the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC*, 300 F.3d at 735. In this case, the Court excludes the document.

Having determined that it must exclude the document from consideration, the Court must next address HCSC's principal argument. HCSC posits that *Mote v. Aetna*, 502 F.3d 601, 610-11 (7th Cir. 2007), mandates that, barring two narrow exceptions, the Plan is the only proper defendant with regard to Count I of Leonardo's complaint. Leonardo does not, and cannot, dispute that this is one of the court's conclusions in *Mote*. *See id.* (finding that "[g]enerally, in a suit for ERISA benefits, the plaintiff is limited to a suit against the Plan"). Instead, Leonardo counters with two arguments for why *Mote* does not apply in this case.

First, Leonardo argues that *Mote* was overruled by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, --- U.S. ---, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). In *Glenn*, the Court affirmed the Sixth Circuit's decision to award benefits to the plaintiff in her case against the insurer and administrator of her plan. *Id.* at 2352. Leonardo argues that she should be allowed to proceed against HCSC because, like the defendant in *Glenn*, HCSC allegedly acted as the insurer and administrator of an ERISA plan and had "the discretionary authority to determine whether an employee's claim for benefits [was] valid." *See id.* at 2346. Leonardo also points to *Raybourne v. Cigna Life Insurance Co. of New York*, 576 F.3d 444 (7th Cir. 2009), a case that followed the holding in *Glenn*, as evidence that the Seventh Circuit no longer implements the rule outlined in *Mote*.

However, as Leonardo admits in the footnotes of her brief,[1] the "proper party" issue was not actually before the Supreme Court in *Glenn* or before the Seventh Circuit in *Raybourne*, nor was it addressed by either court. The Court does not find that *Glenn* overruled *Mote* simply because the Court affirmed the Sixth Circuit's decision to allow recovery against an insurer/administrator. The *Glenn* decision provides, at most, implied dicta on the issue. Leonardo's argument is made less persuasive by the fact that *Glenn* was on appeal from the Sixth Circuit, which may allow suits for ERISA benefits to be filed against plan administrators. *See Gadberry v. Bethesda Hosp., Inc.*, 608 F. Supp. 2d 916, 919 (S.D. Ohio 2009) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)). Neither does Leonardo's reference to

---

[1] Both parties made frequent, and probably excessive, use of footnotes in their briefs. In some cases, they seem to use footnotes to gloss over information that favors their opponent. In many cases, the footnotes contain crucial information and arguments. In almost every case, the litigants seem to use footnotes as a way to avoid surpassing the fifteen-page limit placed on their briefs. As illustrated by the format of this very paragraph, the Court is not opposed to the use of footnotes in principle. However, in the future, the Court encourages the parties to avoid gratuitous misuse of an instrument generally reserved for tangential details.

*Raybourne* salvage her argument, since the Seventh Circuit has in the past explicitly allowed a suit to proceed against a plan administrator in part because the administrator failed to raise the issue in the district court. *See Mote*, 502 F.3d at 611 (citing *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997)). There is no indication in the opinions of either the district court or the appellate court in *Raybourne* that the defendant in that case raised the issue. *See Raybourne*, 576 F.2d 444 (7th Cir. 2009); *Raybourne v. Cigna Life Ins. Co. of N.Y.*, No. 07 C 3205, 2008 WL 2782924 (N.D. Ill. June 24, 2008. Finally, this court has explicitly held in at least one other case that *Glenn* has not changed the Seventh Circuit's approach to the issue. *See, e.g., Munson v. C.H. Robinson Co.*, No. 09 C 495, 2009 WL 1586325, *1-*2 (N.D. Ill. June 8, 2009). Thus, Leonardo's first argument fails.

Leonardo also argues that this case falls into one of the narrow exceptions to the general rule laid out in *Mote*. More specifically, Leonardo argues that HCSC is so "closely intertwined" with the Plan that it is a proper defendant in a § 502(a)(1)(B) claim. *See Mote*, 502 F.3d at 611 (citing *Mein v. Carus Corp.*, 241 F.3d 581, 584-85 (7th Cir. 2001)). In support of this argument, she relies on the following four allegations: (1) HCSC made all decisions regarding benefits; (2) HCSC created the Plan's claims procedures; (3) HCSC created the Plan document and its terms; and (4) HCSC pays benefits under the Plan.

HCSC accepts that the Seventh Circuit has recognized an exception for administrators who are closely intertwined with plans they administer. However, it counters that courts have applied the exception to administrators only under circumstances not present here in order "to afford plaintiffs the right to sue in the face of uncertainty regarding the identity of the plan." *See Bullinger v. UNUM Life Ins. Co. of Amer.*, 544 F. Supp. 2d 729, 730 (C.D. Ill. 2008). HCSC points out that the Seventh Circuit decided not to apply the exception in *Mote* even though the

plan administrator underwrote the plan and made all decisions regarding benefits. *See Mote*, 502 F.3d at 610-11 (affirming *Mote v. Aetna Life Ins. Co.*, 2006 WL 3196916, *1 (N.D. Ill. Nov. 3, 2006)). The Seventh Circuit has allowed suits to proceed when the plan documents refer to the administrator and the plan interchangeably and when the administrator is the designated agent for legal process under the plan. *Riordan*, 128 F.3d at 551 (7th Cir. 1997); *Mein*, 241 F.3d at 585 (7th Cir. 2001). HCSC declares that neither factor is present here.

However, despite HCSC's claims, the Court cannot determine whether that is the case given the decision above to exclude the purported plan document from consideration. Moreover, given the confusion regarding the plan documents, this case may most closely resemble *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864 (7th Cir. 2001), where "the parties disagree[d] over the identity of the relevant plan." *Id.* at 872 n.4. Although the defendant in *Neuma* decided not to raise the issue of whether it was a proper party on summary judgment, the court considered the issue and decided not to dismiss the case on that basis. *Id.* In so deciding, the court relied in part on the aforementioned "lack of clarity in the record." *Id. Neuma* does not compel denial of the instant motion, but it does reinforce the point that the Seventh Circuit generally uses the "closely intertwined" exception as a means to allow suit in the face of confusion or uncertainty.

Leonardo does allege that HCSC played a crucial role in virtually every aspect of the Plan's terms, administration, and funding. In addition, the Court is presently unable to determine the Plan's identity on the basis of the record before it. Thus, the Court denies HCSC's motion to dismiss on the grounds that it is an improper defendant. The Court requires more information in order to determine whether this is the case and therefore orders that the parties appear for a hearing as to the Plan's identity and whether HCSC is closely intertwined with the Plan.

8

## B. Identification of specific plan provisions

HCSC also moves the Court to dismiss Leonardo's suit for her failure to identify the specific plan provisions that provide the benefits she seeks in her Amended Complaint. Defendants point out that plaintiffs can only recover "the benefits specified in the plan" under § 502(a)(1)(B). *See Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 825 (7th Cir.). HCSC cites to case law from other jurisdictions for the proposition that a plaintiff in a suit under § 502(a)(1)(B) must therefore "identify a specific plan term that confers the benefit in question" in order to avoid dismissal. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 174 (D.C. Cir. 2006). Leonardo does not seem to dispute that she must cite to a specific plan term in support of her claim, but argues instead that she satisfied this requirement.

In her Amended Complaint, Leonardo repeatedly cited to the Plan's provision of out-of-network benefits on the basis of an "Allowable Amount." She argues that HCSC failed to deliver these benefits as defined therein because it used unfair methods for calculating the "Allowable Amount," a term she interprets to be synonymous with "UCR charges." HCSC points out that the plan document Leonardo attaches to her response brief never makes use of the terms "usual, customary, and reasonable" or "UCR" and instead provides a definition for "Allowable Amount."

However, as noted above, the Court will not consider the document at this point. Given that the Court is unable to determine the contents of any plan documents, the Court cannot determine whether they belie Leonardo's allegations, as HCSC suggests. Thus, the Court must deny HCSC's motion on this ground. Moreover, the Court notes that Leonardo does make reference to the Plan's provision of out-of-network benefits for an "Allowable Amount" and does allege that HCSC failed to provide those benefits. The fact that Leonardo interprets the

"Allowable Amount" definition to be synonymous with "UCR," the apparent industry standard terminology, does not undermine the fact that she has identified a specific plan provision supportive of her claim for benefits.

### III. Breach of fiduciary duty under § 502(a)(3)

HCSC moves the Court to dismiss Count II of the Amended Complaint on different grounds. First, the company argues that the claim under § 502(a)(3) cannot go forward as it requests relief duplicative of that in Count I. Second, it argues that Leonardo's allegations are not supportive of a claim for breach of fiduciary duty.

#### A. Duplicative of relief requested in Count I

Section 502 of ERISA provides for various kinds of civil actions. *See* 29 U.S.C. § 1132. Leonardo brings Count I of her complaint pursuant to subsection (a)(1)(B) and Count II pursuant subsection (a)(3). Subsection (a)(1)(B) allows a beneficiary to file suit

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Subsection (a)(3), on the other hand, provides for the filing of a civil action

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). In *Varity Corp. v. Howe,* the Supreme Court addressed concerns that by interpreting subsection (a)(3) to allow individual beneficiaries to bring suit for a breach of fiduciary owed by plan administrators, the Court might leave "two incompatible legal standards for courts hearing benefit claim disputes depending upon whether the beneficiary claimed simply

'denial of benefits,' or a virtually identical 'breach of fiduciary duty[.]'" 516 U.S. 489, 513-14, 116 S. Ct. 1065, 1078, 134 L.Ed.2d 130 (1996) (internal quotation omitted). The Court found these fears to be baseless, in part because "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate,'" and would therefore not be the sort recoverable under (a)(3). *Id.* at 515, 116 S.Ct. at 1079; *see also LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 128 S. Ct. 1020, 1026, 169 L.Ed. 2d 847 (2008) (interpreting *Varity* to mean that "relief is not 'appropriate' under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy") (Roberts, C.J. and Kennedy, J., concurring).

The Seventh Circuit has interpreted this language in *Varity* to be an admonition "against using the action for breach of fiduciary duty under ERISA to litigate 'ordinary benefit claims.'" *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 695 (7th Cir. 2005) (quoting *Varity*). Consequently, the Seventh Circuit later found no reason to depart from the majority view among circuit courts "that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is unavailable under subsection (a)(3)." *Mondry v. Amer. Mutual Family Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). HCSC suggests that Count II of Leonardo's complaint requests relief that is available under subsection (a)(1)(B) and argues, therefore, that she should be unable to proceed under subsection (a)(3).

Leonardo asserts that the relief requested in Count II of the Amended Complaint is distinct from that requested in Count I. She emphasizes the requests for an injunction requiring HCSC to reform its claims procedures, disgorgement of wrongly earned profits, and restitution of assets belonging to the plaintiff. These forms of relief, she argues, are not designed "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms

11

of the plan, or to clarify [her] rights to future benefits under the terms of the plan" – the goals of an action under subsection (a)(1)(B). *See* 29 U.S.C. § 1132(a)(1)(B). Instead, she aims Count II of the Amended Complaint at HCSC's alleged systematic betrayal of its fiduciary obligations to beneficiaries through its use of a broken and unfair methodology.

HCSC argues that these forms of relief are encompassed by Leonardo's request for restitution and "other appropriate equitable relief" in Count I. The company suggests that by requesting restitution in Count I, Leonardo herself conceded that at least that form of relief is unavailable under subsection (a)(3). The company also supports its argument by citing to a number of cases that categorize disgorgement and reformation as equitable relief. However, the cases that HCSC cites to actually undermine both of its arguments.

HCSC is correct that at least two federal courts have held disgorgement to be "appropriate equitable relief" under ERISA. *See McDannold v. Star Bank*, 261 F.3d 478, 488 (6th Cir. 2001); *George v. Kraft Foods Global, Inc.*, 07 C 1713, 2008 WL 780629, *4 (N.D. Ill. Mar. 20, 2009). However, neither case holds that such relief is available under subsection (a)(1)(B). In fact, both cases cite to Supreme Court precedent allowing plaintiffs to pursue disgorgement under subsection (a)(3). *See McDannold*, 261 F.3d at 488 (citing *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250, 120 S.Ct. 2180, 2189, 147 L.Ed.2d 187 (2000)); *George*, 2008 WL 780629 at *4 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215, 122 S. Ct. 708, 715-16, 151 L. Ed. 2d 635 (2002)). These Supreme Court cases fall squarely in Leonardo's favor by indicating that disgorgement is precisely the type of relief appropriate under subsection (a)(3). *See Great-West*, 534 U.S. at 215, 122 S. Ct. at 715-16 (citing *Harris Trust*); *Harris Trust*, 530 U.S. at 250, 120 S. Ct. at 2189 (holding that a beneficiary may maintain an action under subsection (a)(3) against a third-party transferee of

12

tainted plan assets for disgorgement of proceeds and profits derived therefrom); *see also Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 214 (3d Cir. 2004) (relying on *Harris Trust* and *Great-West* in allowing (a)(3) suit for disgorgement to proceed directly against the ERISA plan). Moreover, these same cases also make clear that restitution may also be appropriate equitable relief in a suit brought under subsection (a)(3). *See Great-West*, 534 U.S. at 215, 122 S. Ct. at 715-16 (citing *Harris Trust*); *Harris Trust*, 530 U.S. at 250, 120 S. Ct. at 2189.

HCSC also cites two district court cases for the principle that a request for reformation of the plan procedures is a request for injunctive relief under ERISA. *See Kendall v. Employees' Ret. Plan of Avon Prods.*, No. 03 Civ. 2518(DAB), 2007 WL 2728430, *5 (S.D.N.Y. Sep. 14, 2007); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180 (S.D.N.Y. 2006). However, once again, neither case stands for the proposition that this sort of injunctive relief is appropriate under subsection (a)(1)(B) or that it is therefore unavailable under (a)(3). Instead, one of these cases clearly states that reformation was requested as relief under (a)(3). *See Kendall*, 2007 WL 2728430 at *5. The other case does not make clear whether the relief was awarded pursuant to (a)(3). *Citigroup*, 241 F.R.D. at 180. However, the court indicated in its next opinion in that case that it did order the reformation pursuant to (a)(3). *In re Citigroup Pension Plan ERISA Litig.*, 05 Civ. 5296(SAS), 2007 WL 4205855, *2 (S.D.N.Y. Nov. 20, 2007) (relying solely on (a)(3) in opinion describing the details of the mandated reformation).

In addition, contrary to HCSC's argument, this court recently allowed a counterclaim for reformation to proceed under subsection (a)(3). *Young v. Verizon's Bell Atl. Cash Balance Plan*, --- F. Supp. 2d ---, No. 05 C 7314, 2009 WL 3677350, *38-*39 (N.D. Ill. Nov. 2, 2009). In doing so, the court noted that while the Seventh Circuit has not expressly addressed the issue of whether ERISA plan reformation is appropriate relief under subsection (a)(3), it has allowed

suits for reformation to proceed. *Id.* at *38 (citing cases). The *Young* court also relied on a number of cases from other jurisdictions that expressly allow plan reformation under subsection (a)(3). *Id.* at *39 (citing cases).

Given that HCSC has failed to provide the Court with any precedent indicating that plan reformation, restitution, and disgorgement are duplicative of the relief available under subsection (a)(1)(B), the Court denies its motion to dismiss on these grounds. However, the Court does so with the caveat that, as the case proceeds, Leonardo may not pursue any such relief simply to duplicate her suit for the recovery of benefits under (a)(1)(B).

### B. Facts supportive of a breach of fiduciary duty claim

HCSC finally makes two arguments regarding the sufficiency of the factual allegations underlying Count II of Leonardo's Amended Complaint. First, HCSC argues that Leonardo fails to allege any intentional conduct in her claims, and rests on insufficient allegations of negligent misstatements, omissions, and disclosures. Second, the company argues that Count II is an inappropriate attempt to expand ERISA's disclosure requirements through the use of its provisions regarding fiduciary obligations.

#### 1. Allegations regarding misstatements, omissions, and disclosures

In support of its first point, HCSC references Seventh Circuit case law prohibiting claims based on alleged negligent misstatements about plan terms, *Frahm v. Equitable Life Assurance Soc'y of the U.S.*, 137 F.3d 955, 959 (7th Cir. 1998), or negligence in fulfilling the duty to provide accurate information to beneficiaries, *Vallone v. CNA*, 375 F.3d 623, 642 (7th Cir. 2004) (citing *Frahm*). Unlike this case, *Frahm* addressed claims that representatives of the plan administration inaccurately represented the terms of the plan in individual conversations with beneficiaries. *Frahm*, 137 F.3d at 957. However, the court made clear in *Vallone* that the form

14

or source of the misinformation provided to beneficiaries is irrelevant to the principle laid out in *Frahm*. *Vallone*, 375 F.3d at 641. Instead, the important point to be gleaned from *Frahm* is that a plan administrator does not breach a fiduciary duty unless it "set[s] out to deceive or disadvantage plan participants" or engages in some sort of "campaign of disinformation." *Id.* (quoting *Frahm*).

Despite HCSC's claims that *Frahm* and *Vallone* preclude Leonardo from bringing suit, though, Leonardo has alleged sufficient intentionality to proceed on her claims. Leonardo alleges that HCSC systematically failed to provide information regarding its knowing use of flawed Ingenix data that had been manipulated in order to lower reimbursement rates. Leonardo may not have used the word "intentional" in her complaint. Nonetheless, the Court must make all inferences in her favor, and the Court therefore finds that her allegations support a claim for breach of fiduciary duty. Furthermore, Leonardo is right to point out that Count II is not based entirely on allegations of disinformation or omissions by HCSC. Leonardo also complains that HCSC breached its duty of loyalty by knowingly using flawed data to routinely make out-of-network adverse benefit determinations.

### 2. Expansion of ERISA's disclosure requirements

HCSC supports its final argument by pointing to declarations by various other circuits that litigants may not use ERISA's fiduciary breach provisions to supplant and expand ERISA's detailed disclosure requirements. *See Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d Cir. 1997) (citing *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657-58 (4th Cir. 1996)); *Sprague v. Gen'l Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998). While not cited by HCSC, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995) also holds that while the ERISA provisions detailing what

information administrators must provide to beneficiaries "may not be a foolproof scheme...it is the scheme that Congress devised. And we do not think Congress intended it to be supplemented by a faraway provision in another part of the statute [addressing fiduciary duties.]"

Leonardo responds with the claims that: (1) ERISA's scheme does require HCSC to provide the information referred to in the Amended Complaint; and (2) Count II is appropriately brought under subsection (a)(3) because it is aimed at a systemic problem affecting all beneficiaries. In support of her first contention, Leonardo points to the disclosure requirements contained in ERISA § 503, 29 U.S.C. § 1133, and the section's implementing regulations, 29 C.F.R. § 2560.503-1. In support of her second contention, she cites to *Hill v. Blue Cross Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005), a case allowing suit under ERISA § 502(a)(3) against a plan administrator because there is a "difference between correcting the denial of individual claims on a beneficiary-by-beneficiary basis and altering, on a plan-wide basis, the methodology used to process claims for all beneficiaries" and the former can only be properly addressed by the sort of relief available under (a)(3).

HCSC counters that, assuming *arguendo* that Leonardo may sue under § 502(a)(3) for a systemic violation of the requirements of § 503, case law makes clear that those requirements apply only to plans, not plan administrators. *See, e.g., Groves v. Modified Ret. Plan for Hourly Paid Employees of the Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986) ("Section 503...imposes duties only upon plans and not upon administrators"). Essentially, HCSC is making an argument about the proper defendant similar to that which it makes regarding Count I. Although HCSC does not cite the case, the Seventh Circuit has directly addressed this issue. In *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir. 1996), the court noted that it had under some circumstances imposed liability on plan administrators

under § 503. *Id.* at 406 (citing *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 624 (7th Cir. 1987). The court then rejected the plaintiff's attempt to sue the plan administrator under § 503, however, stating that "on its face, [section 503] establishes requirements for plans, not plan administrators." *Id.* The court distinguished *Kleinhans* by pointing out that the plaintiff in *Kleinhans* alleged violations of a Department of Labor regulation that specifically referred to plan administrators, whereas the regulation in question in *Wilczynski* referred only to plans. *Id.* The regulation in question in *Wilczynski* is essentially the same regulation that Leonardo refers to in her response brief here, although it is now codified in a different subsection. *See id.* (quoting language now contained in 29 C.F.R. § 2560.503-1(h)).

Moreover, even if Leonardo's allegations could be read to fall under other provisions contained in § 2560.503-1 that do reference plan administrators, it is not clear that HCSC is a proper defendant. The issue of whether the plan administrator is a proper defendant was not directly addressed by the court in *Kleinhans* and, thus, as discussed above with regard to Count I, the case does not necessarily stand for the proposition that a plan administrator is a proper defendant. While the court did not explicitly overrule *Kleinhans* in *Wilczynski*, it did note that allowing suit against a plan administrator under § 503 flies in the face of the statute's express language. 810 F.2d at 624. If that is the case, the Court need not give deference to regulations that allow such a suit. *Chevron U.S.A.., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Leonardo's claims about the systemic nature of the violations also do nothing to save her claim, because the case law she cites does not reference § 503 or its implementing regulations.

Nonetheless, as discussed above, should the Court dismiss the portion of Count II that is based on HCSC's failure to disclose, Leonardo would be left in an awkward situation given that

17

she is presently unable to identify the Plan. Thus, given the Seventh Circuit's acceptance of exceptions to the analogous proper defendant rule under ERISA § 502(a)(1)(B), the Court denies HCSC's motion in this regard as well. The Court thereby preserves Leonardo's right to sue pending a hearing regarding the Plan's identity and the proper defendant.

## CONCLUSION

For the above reasons, the Court DENIES Defendant's motion to dismiss. The parties are ordered to appear for an evidentiary hearing to resolve the issue of whether Defendant is the proper party under Count I and portions of Count II.

IT IS SO ORDERED.

1/20/10
Dated

Hon. William J. Hibbler
United States District Court