# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUSTINE LEONARDO, on behalf of herself and all others similarly situated, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>HEALTH CARE SERVICE CORPORATION, <br><br>　　　　Defendant. | No. 09 C 1588 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Justine Leonardo, a former participant in a health insurance plan (the Plan) administered at least in part by Defendant Health Care Service Corporation (HCSC), brings this purported class action lawsuit pursuant to Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3). In her Amended Complaint, she alleges that HCSC failed to fairly adjudicate claims she made for benefits for "out-of-network services" by: (1) basing its decisions on information gleaned from skewed databases; and (2) failing to provide her with all of the information relevant to those adjudications. She requests various forms of relief, including payment of underpaid benefits, restitution, disgorgement, and injunctive relief in the form of reformation of HCSC's claims adjudication procedures. HCSC previously moved to dismiss her suit, arguing that it was an improper defendant with regard to portions of the Amended Complaint, and that the remainder of the Amended Complaint failed to state a claim. The Court originally denied that motion, but ordered the parties to appear for an evidentiary hearing in order to resolve the issue of whether HCSC was a proper defendant. *Leonardo v. Health Care Serv. Corp.*, 09 C 1588, 2010 WL

1

317520, *1 (N.D. Ill. Jan. 20, 2010). For the reasons stated below, the Court now grants that motion in part based on the evidence presented at the hearing on February 16, 2010. However, the Court also denies that motion in part because HCSC is a proper defendant to one portion of Leonardo's claim under ERISA § 502(a)(3) for breach of fiduciary duty. The Court also gives Leonardo leave to file an amended complaint as specified below.

## *BACKGROUND*

The following facts are drawn from Leonardo's complaint and are mostly a restatement of the facts laid out in the Court's previous opinion. *See id.* at *1-*2. During the relevant time period, Leonardo was employed by a law firm in Texas named Brent Coon & Associates. During her employ, she was a member of the Plan, the firm's group health coverage. Leonardo alleges that HCSC administered and funded the Plan. Thus, HCSC adjudicated and paid claims for benefits under the Plan.

The Plan provided different benefits for services provided by "in-network" providers and "out-of-network" providers. In-network providers were providers that contracted with HCSC to provide services at discounted rates. Out-of-network providers did not contract with HCSC for their rates and, thus, HCSC only granted claims for benefits for services provided by these providers on the basis of an "Allowable Amount." Leonardo alleges that this "Allowable Amount" was based on the usual, customary and reasonable (UCR) amount charged for the services in question.

Leonardo's complaint is based in large part on the method HCSC used to calculate this "Allowable Amount." HCSC relied on data from databases compiled by a third party, Ingenix, Inc. Ingenix databases are purportedly a source for data regarding the prevailing charges for particular health care services. However, Leonardo argues that the databases are fundamentally

flawed because Ingenix manipulates the data to skew the prevailing charges downward. In addition, HCSC relied on outdated Ingenix data. Thus, Leonardo contends, by relying on the Ingenix databases, HCSC underestimates the appropriate "Allowable Amount" and underpays benefits for out-of-network services.

In Count I, Leonardo makes a claim for those underpaid benefits under § 502(a)(1)(B) of ERISA. In Count II, she claims that HCSC breached its fiduciary duties by relying on the Ingenix data. Count II is also based on HCSC's failure to provide a fair and transparent claims adjudication process, in part by failing to adequately disclose its reliance on the faulty Ingenix data.

Notably, Leonardo does not attach a copy of the Plan's terms, called the "Evidences of Coverage," to her complaint, nor does she name the Plan in her allegations, or as a defendant. Apparently, although Leonardo was provided with a copy of the Evidences of Coverage at the time of her employment with Brent Coon & Associates, she did not have a copy of the Plan when she filed her Amended Complaint. In her response brief, she explained that she requested a copy from HCSC's counsel prior to her filing, but that counsel did not provide a response to her request until after her filing. She attached the document that HCSC eventually provided to her response brief. However, she expressed doubts about whether it was the proper plan document that governs the benefits at issue here, in part because the group number on the plan did not match other documents she had in her possession.

The Court recognized that there was validity to HCSC's argument that Leonardo could only properly bring some of her claims against the Plan. *Id.* at *4. However, due to the confusion over the Plan's identity, the Court refused to dismiss HCSC as a defendant until the parties provided evidence that would allow the Court to resolve that confusion. *Id.* at *5 (citing

*Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864 (7th Cir. 2001). The Court held an evidentiary hearing for that purpose on February 16, 2010.

At that hearing, HCSC proffered witness testimony and documentary evidence establishing that the document it originally provided to Leonardo was in fact a Plan document, that the Plan was in fact that Brent Coon & Associates Group Health Plan, and that HCSC was just the claims administrator for the Plan. The witness explained why there were two different numbers used to identify the Plan. By the end of the hearing, even Leonardo seemed to concede that HCSC was not the Plan.

Notably, the witness and documentation produced at the evidentiary hearing also established that, in its role as claims administrator, HCSC exercised a good deal of discretion in making claim determinations. The Plan specifically conferred upon HCSC "the initial authority to establish or construe the terms and conditions of the health benefit plan and the discretion to interpret and determine benefits in accordance with the health benefit plan's provisions." In exercising that discretion, HCSC used its own internal guidelines and protocols. However, the Plan had the authority to make the final determination in any case. In other words, the Plan could overrule HCSC's discretionary decisions.

## *DISCUSSION*

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks,

brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

## II. Claim for benefits under § 502(a)(1)(B)

In its previous opinion, the Court followed *Mote v. Aetna Life Insurance Co.*, 502 F.3d 601, 610-11 (7th Cir. 2007), in holding that the Plan is generally the only proper defendant to a claim for benefits under ERISA § 502(a)(1)(B), such as the claim Leonardo lays out in Count I of her complaint. *Leonardo*, 2010 WL 317520, at *3. The Court rejected Leonardo's argument that *Mote* was overruled by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, --- U.S. ---, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), or by the Seventh Circuit in *Raybourne v. Cigna Life Insurance Co. of New York*, 576 F.3d 444 (7th Cir. 2009). 2010 WL 317520, at *3-*4.

However, the Court also found that, based on the limited information before it concerning the identity and language of the Plan, it was unable to determine whether this case fell into a narrow exception to the general rule in *Mote* for plan administrators that are "closely intertwined" with the Plan. *Id.* at *4-*5. The Court found that the exception allowed a suit to move forward "in the face of confusion or uncertainty." *Id.* at *5 (citing *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir.2001) (allowing suit to proceed against a party other than the plan where "the parties disagree[d] over the identity of the relevant plan").

Following the evidentiary hearing, there is no longer any confusion or uncertainty in this case. The Court is able to identify the Plan and it is not HCSC. Leonardo now concedes that point. For this reason, the Court finds that the general rule as expressed in *Mote* applies and

5

Leonardo must bring Count I against the Brent Coon & Associates Group Health Plan. The Court grants HCSC's motion to dismiss Count I, but gives Leonardo leave to file an amended complaint naming the proper party.

### III. Breach of fiduciary duty under § 502(a)(3)

In Count II of her complaint, Leonardo also brings claims under ERISA § 502(a)(3) for a breach of fiduciary duty. The claims are based on a variety of allegations about HCSC's claims processing practices.

For one, Leonardo claims that HCSC, during claims processing, made various misstatements and failed to make certain required disclosures to Leonardo (and the purported class members). In its previous opinion, the Court rejected HCSC's contention that Leonardo had not alleged a sufficient level of intentionality to support those claims. *Id.* at *8-*9. But, the Court found legitimacy in HCSC's argument that Leonardo could not use § 502(a)(3) to expand the reach of the ERISA disclosure provisions in § 503, which apply only to plans. *Id.* at *9-*10. Thus, now that the Court is able to identify the Plan, the Court grants HCSC's motion to dismiss the portions of Count II that essentially allege systemic violations of § 503 and its implementing regulations. Once again, Leonardo may file an amended complaint naming the proper defendant.

Count II also includes allegations that HCSC breached a fiduciary duty by relying on the Ingenix data, both because it was flawed and because it contravened the Plan's language. HCSC's original motion seemed to ignore these allegations. At the evidentiary hearing, Leonardo pointed out that none of the evidence presented by HCSC addressed the issue either. For this reason alone, the Court could deny HCSC's motion to dismiss. However, Leonardo did present evidence regarding HCSC's exercise of discretion, and argued that this discretion rendered HCSC a fiduciary to the Plan's beneficiaries. Because Leonardo raised the issue, and

6

because it presents a somewhat complicated question in light of Seventh Circuit precedent, the Court addresses it here.

Leonardo is correct that a person who has "discretionary authority or discretionary responsibility in the administration of [a] plan" is a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A)(iii). However, in *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1124-25 (7th Cir. 1994), the Seventh Circuit limited the liability of claims administrators as fiduciaries. In *Klosterman*, the court ruled on summary judgment that the claims administrator in that case was not a fiduciary, finding significance in the fact that the claims administrator did not have the authority to make final decisions in the adjudication of doubtful or contested claims, or of claims that were the subject of legal action. *Id.* at 1124. In that regard, HCSC was in the same position in this case. Moreover, as here, the claims administrator in *Klosterman* did sometimes rely on information not provided by the Plan to make its decisions. *Id.*

Notably, though, the claims administrator in *Klosterman* apparently did so only on the relatively rare occasion when the computer program it developed to implement the Plan language could not provide the necessary determination. *Id.* In most situations, the claims administrator's decision was dictated by the rules set forth by the Plan. *Id.* Here, on the other hand, Leonardo's claims are based on allegations that HCSC regularly relied on information that was not provided by the Plan. HCSC allegedly relied on the flawed Ingenix databases for the adjudication of all out-of-network claims, not just in the rare case where the Plan language did not provide a bright line for adjudication. Perhaps more importantly, Leonardo alleges that HCSC's reliance on that information contravened the Plan's language, which distinguishes this case from *Klosterman*, where the administrator's decisions were always guided by the framework of rules established by the employer's plan. *See id.* The testimony at the hearing confirmed that, despite the Plan's

7

ultimate authority to overrule claims adjudications, HCSC operated with discretion as it interpreted plan language and made use of internal protocols and guidelines that it may or may not have disclosed to the Plan.

In sum, Leonardo claims that the vast majority of out-of-network claims were adjudicated on the basis of HCSC's discretionary decision to follow an internal protocol of looking to flawed data that contradicted the terms of the Plan. The Court finds these allegations distinguishable from the facts in *Klosterman*. While the Court cannot determine the exact level of discretion that HCSC exercised, Leonardo has alleged enough to proceed past a motion to dismiss. Thus, the Court denies HCSC's motion to dismiss Leonardo's remaining claims under § 502(a)(3).

While it is a minor point, the Court finds additional support for distinguishing *Klosterman* in that Leonardo's claims involve the routine under-payment of benefits rather than the non-payment of a large claim for benefits. Realistically, this may have had a meaningful effect on the likelihood that a determination is appealed and whether the Plan would overrule it on appeal. However, the Court hesitates to make such inferences, especially in light of the effect the evidentiary hearing has had on this case. In other words, the Court is in the somewhat awkward position of ruling on a motion to dismiss when the record includes more than the pleadings. In fact, in her First Amended Complaint, Leonardo alleges that HCSC is both the insurer and the administrator of the entire plan. In light of everything now before the Court, that is clearly not the case. Based on the evidence and arguments counsel presented at that hearing, Leonardo seems to be in a better position to describe the extent of HCSC's discretion now than she was when she filed her First Amended Complaint. Thus, the Court gives Leonardo leave to amend her complaint to address the evidence presented at the hearing.

## *CONCLUSION*

For the above reasons, the Court: (1) GRANTS Defendant's motion to dismiss Count I; (2) GRANTS Defendant's motion to dismiss Count II insofar as it concerns alleged violations of ERISA's disclosure requirements; (3) DENIES Defendant's motion to dismiss Count II insofar as it concerns HCSC's alleged use of flawed data in contravention of the Plan language; and (4) gives Plaintiff leave to amend her complaint to name the proper party as a defendant where appropriate and to adjust her allegations in accordance with the evidence presented at the hearing.

IT IS SO ORDERED.

8/9/10
Dated

Hon. William J. Hibbler
United States District Court